```
 1                IN THE UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF ILLINOIS
 2                         EASTERN DIVISION

 3   COUNTY OF COOK,                    )  Docket No. 14 C 2031
                                        )
 4                  Plaintiff,          )
                                        )
 5        v.                            )  Chicago, Illinois
                                        )  April 24, 2014
 6   HSBC NORTH AMERICA HOLDINGS,       )  9:00 o'clock a.m.
     INC., et al.,                      )
 7                                      )
                    Defendants.         )
 8
                  TRANSCRIPT OF PROCEEDINGS - MOTION
 9               BEFORE THE HONORABLE JOHN Z. LEE

10   APPEARANCES:

11   For the Plaintiff:         HARRIS PENN LOWRY LLP, by
                                MR. JAMES M. EVANGELISTA
12                              400 Colony Square
                                Suite 900
13                              1201 Peachtree St. NE
                                Atlanta, Georgia 30361
14
                                JAMES D. MONTGOMERY &
15                              ASSOCIATES, LTD., by
                                MS. MICHELLE M. MONTGOMERY
16                              One North LaSalle Street
                                Suite 2450
17                              Chicago, Illinois 60602

18   For the Defendants:        BUCKLEY SANDLER LLP, by
                                MR. BRETT J. NATARELLI
19                              123 North Wacker Drive
                                Suite 1450
20                              Chicago, Illinois 60606

21

22              ALEXANDRA ROTH, CSR, RPR
                   Official Court Reporter
23              219 South Dearborn Street
                        Room 1224
24              Chicago, Illinois 60604
                    (312) 408-5038
25
```

1 (Proceedings had in open court:)

2 THE CLERK: 14 C 2031, County of Cook versus HSBC Bank
3 North America Holdings.

4 MS. MONTGOMERY: Good morning, your Honor. Michelle
5 Montgomery, counsel for the plaintiff, local counsel for
6 plaintiff.

7 MR. NATARELLI: Good morning, your Honor. Brett
8 Natarelli of Buckley Sandler on behalf of the HSBC defendants.

9 THE COURT: Who's on the phone?

10 MR. EVANGELISTA: Jim Evangelista in Atlanta with
11 Harris Penn Lowry, on behalf of the plaintiff.

12 THE COURT: Okay. We are here on defendants' motion
13 for extension of time to answer or otherwise plead. Mr.
14 Evangelista or Ms. Montgomery, I don't know which of you will
15 be addressing this. My initial question when I saw the motion
16 and the objection was, what's the basis for the objection?

17 MS. MONTGOMERY: The basis for the objection -- well,
18 we do not object to an extension of time and an alignment of
19 the briefing schedules of the HSBC parties. And actually, Mr.
20 Evangelista had conversations with other counsel at your law
21 firm to try to work out, you know, an extension date. And when
22 we couldn't come to an agreement, we received a motion where
23 they want to actually align the briefing schedules with another
24 case, with the Bank of America case. And that we do object to.
25 We feel that this motion is an end run around a 42(a)

1 motion for consolidation.
2     (Brief interruption.)
3         MS. MONTGOMERY: Excuse me.
4         And that if -- and that by aligning the two briefing
5 schedules with the Bank of America case, which is a different
6 case with HSBC, they are in effect trying to consolidate the
7 cases without actually bringing a motion to you for
8 consolidation.
9         THE COURT: Okay.
10         MR. EVANGELISTA: Judge, this is Jim Evangelista. If
11 I might add one other thing, that they -- they lacked good
12 cause for an extension solely to align their case with the Bank
13 of America case. That's their -- their -- you know, the burden
14 is on them to show they have good cause for this extension.
15 And our objection is, they don't have good cause. Their only
16 cause is because they want to align it with that case.
17         They argue that it's judicially efficient. But if you
18 get to the meat of the matters as to what makes something
19 judicially efficient to consolidate, they don't make -- meet
20 those requirements.
21         MR. NATARELLI: Your Honor, that's not our only basis.
22 It's a large complaint. It's a big case. It's 110 pages long.
23 There are 326 allegations. We have dealt with a similar case
24 in Atlanta, different city, different circuit, different law.
25         The only real objection I think from the plaintiffs to

1 combining the briefing schedules is that they are afraid they
2 will be burdened by having two motions to dismiss to respond to
3 at one time. I think that can be easily addressed. We have
4 absolutely no objection to having a longer briefing schedule on
5 those motions, so that plaintiffs have time to file the
6 responses they need to file.
7 We are not trying to jam anybody else. We're just --
8 if more time is the right thing here based on the size of the
9 complaint and the fact that two similar cases are pending
10 before your Honor. And there is a date of June 3 already set
11 in that case.
12 THE COURT: Mr. Evangelista, is that your concern?
13 MR. EVANGELISTA: There -- we have several concerns.
14 One is that these are -- that these are two separate cases.
15 They involve very different facts as to the underlying causes
16 of the discrimination at issue and, therefore, the causation at
17 hand. And they don't -- they haven't shown good cause as to
18 why they need an additional two weeks beyond what we're
19 offering other than to say they want to align their briefing
20 with the Bank of America.
21 THE COURT: But, Mr. Evangelista --
22 MR. EVANGELISTA: Yes.
23 THE COURT: -- so what if they want to align the
24 briefing for the two cases? I mean, they are not -- they are
25 not consolidated, right? And so they are both before me. You

1   know, I don't even know if they are arguably related. I
2   haven't really considered that issue. Although, I think that I
3   know that on the civil cover sheet it's noted that they are
4   related. But I am not bound by whatever the parties say in
5   this civil cover sheet. It's -- I am in control of my docket
6   and try to figure out how to best manage cases.
7         And so I guess I am trying to understand the -- what
8   the concerns are with regard to basically limited parallel
9   tracking in light of the fact that it seems to me that at least
10   some of the legal issues that will be raised by motion to
11   dismiss -- I am assuming you are contemplating a motion to
12   dismiss, is that correct?
13         MR. EVANGELISTA: That's right, your Honor.
14         THE COURT: Presumably one of the grounds will be
15   standing or lack thereof.
16         And so given the fact that those issues are, you know,
17   somewhat related between the two cases, you know, what, Mr.
18   Evangelista, is the concern purely with the proposal that the
19   briefing on the motion to dismiss, which will be filed in two
20   separate cases, that they proceed at the same time? I don't
21   understand what -- I don't understand why the parties can't
22   come to some sort of agreement on something as simple or minor,
23   frankly, as a two-week time period.
24         I am just kind of nonplussed by that. Perhaps you can
25   explain that to me.

1         MR. EVANGELISTA: Well, your Honor, the -- their
2    responses would have been due May 2. We actually offered them
3    two weeks from -- excuse me. April 25 was their first -- their
4    first response would be due. We offered them during our meet
5    and confer to May 9, which was two weeks. They wanted until
6    the same date that Bank of America was due and didn't move
7    anything off their offer.
8         We even say we would go -- we put in our papers that
9    we would go all the way to the 16th of May. So we've come --
10   given them an additional three weeks from when their first
11   response was due. And they are not moving off of any -- making
12   any sort of effort to meet us half way.
13        So that's -- so one concern is, we filed our papers,
14   served them on the defendants. And under the federal rules we
15   are entitled to our response within the time allowed. And we
16   made an offer voluntarily to give them additional time to allow
17   them to coordinate on their side.
18        Their only response was, that wasn't good enough
19   because they wanted to coordinate what they were doing with the
20   Bank of America defendants in another case. So from our
21   perspective, we went more than half way to meet them. They
22   didn't move anything. And we think that if we filed within a
23   certain time and served within a certain time under the federal
24   rules, fairness is that, you know, they have to comply with the
25   federal rules. And we're willing to give them even more time

1  beyond that.

2  They -- we asked them, what was their basis for
3  filing -- wanting to file their papers at the same time that
4  the Bank of America defendants were filing. And they said, so
5  that they could align their briefing. And we -- if we wanted
6  everyone to align their briefing in the two cases, we would
7  have filed everybody and served on everybody at the exact same
8  time. We did not do that. We gave Bank of America an
9  extension of time. And we served HSBC defendants without an
10 extension of time but granted them an additional extension of
11 time nonetheless.

12 So from our concern, our prejudice and why it's not --
13 you know, why we don't think it's fair and appropriate is, one,
14 it's -- it is circumventing the way we filed the case, the way
15 we served the defendants in both different -- in both cases,
16 and set up the timing that we're entitled to as the plaintiff
17 in choosing our cases.

18 We're happy with -- you know, with giving reasonable
19 accommodations, but not circumventing the way we filed our
20 cases and doing it in a way that's achieving a -- an alignment.
21 It is achieving the result of -- a consolidation result, you
22 know, without actually filing a consolidation motion, and not
23 be able to meet those requirements.

24 THE COURT: It's not achieving consolidation at all.

25 MR. EVANGELISTA: In terms of scheduling, your Honor.

1 I apologize.

2 THE COURT: Right. But I mean, the basis of
3 consolidation is not about scheduling. Consolidation is about
4 whether or not the rulings in one case -- you know, whether or
5 not ruling in one case will be considered the ruling for all
6 cases that are consolidated. Consolidation means that both
7 cases become one case. And that's not the case here. I
8 recognize the plaintiff has decided to -- and probably rightly
9 so -- decided to pursue different groups of defendants in
10 different cases.

11 So let me ask the defendants this. You say that it
12 will be more efficient to try to address the motions to dismiss
13 in both cases at the same time. And Mr. Evangelista raises an
14 interesting point, which is, why do you think that will be more
15 efficient?

16 MR. NATARELLI: As your Honor indicated, a lot of
17 legal issues will be the same. We think, as the Court is
18 considering the arguments of both parties, which are going to
19 be arguments about standing and about statute of limitations,
20 respectfully I don't think it's going to be the case that the
21 Court is going to consider that legal issue, and then a month
22 later set aside and consider it again. There are similar
23 issues.

24 If we are talking about a week or two or three in the
25 difference in the briefing schedules, they're going to be

1  addressed together.  You know, we're not -- we're not here to
2  fight over a week or two weeks.  If the Court is inclined to
3  set a date in May so be it.
4        We just think June 3 makes a lot of sense.  It's the
5  date the plaintiffs agreed to in the Bank of America case.  The
6  Bank of America case was filed on the same day as the amended
7  complaint here.  It's the dates of service that caused the date
8  difference.
9        So we just think it would be more efficient to deal
10 with those issues together.  We certainly don't think the cases
11 could be tried together.  They're different defendants.
12 They're different issues.  But at least in the pretrial stages
13 here, particularly on motions to dismiss that will involve very
14 similar legal issues, it makes sense to have similar tracks.
15 And again, we're perfectly willing to adjust the schedule of
16 those tracks so that the plaintiffs have enough time to respond
17 to both.
18        THE COURT:  Okay.  Mr. Evangelista, just kind of
19 thinking ahead here.  With regard to discovery in these two
20 cases, do you anticipate that there will be any overlap of
21 discovery?
22        So, for example, in the depositions of the plaintiffs
23 or discovery with regard to the plaintiffs, do you envision any
24 sort of overlap or agreement between the parties to try to
25 efficiently move that along?  Or do you anticipate that they

1    will be completely proceeding on different tracks, and you will
2    just basically produce your witnesses twice or how many times
3    you think is necessary, depending on the number of cases?
4             MR. EVANGELISTA:  Yes, that's -- that's correct, your
5    Honor.  I would expect them to proceed on different tracks
6    because I do believe, from what I've seen in the briefing in
7    other cases by these defendants in other jurisdictions around
8    the United States, that they do have some differences in their
9    legal arguments.  HSBC has a particular difference in one of
10   its legal arguments.
11            And so I don't -- you know, I just see them proceeding
12   along different tracks.  And, you know, we -- we certainly
13   would not agree to consolidate discovery of our witnesses, you
14   know, for, you know, discovery purposes in the separate cases.
15   I don't think that that would be efficient or appropriate.
16            The one issue, if I may ask, is your Honor referring
17   to the suggestion in the defense counsel's papers, about
18   discovery of plaintiffs -- of particular plaintiffs, the timing
19   of when plaintiffs knew about the potential litigation for
20   purposes of the statute of limitations?
21            THE COURT:  No, I am just trying to think ahead here
22   because I am looking at both of these cases and trying to see
23   if there is an efficient way, what the most efficient way of
24   moving forward is.  And I recognize that at times kind of
25   proceeding or trying to do discovery in two different matters

1   at one time or with one deponent could actually raise more
2   questions, more problems, than it solves.
3           So I was just trying to think ahead here.
4           MR. EVANGELISTA: And if I may add, your Honor,
5   particularly here because the discovery of the plaintiffs, of
6   the plaintiffs' knowledge and information, is primarily in our
7   opinion going to relate to damages. Much of the factual data,
8   the lending data, the behavior at issue, is going to be of the
9   defendants, which is going to be up front. So there is no
10  possible way, you know, that can be double tracked. You know,
11  damages discovery would -- we would expect to occur later down
12  the road in the litigation. And, you know, one of the issues
13  raised by defense counsel in their papers is that -- this issue
14  or notion about discovery of plaintiffs for purposes of the
15  statute of limitation. And I do believe when the Court
16  reads -- sees the motion papers that are going to be filed
17  here, that the Court will not have any concerns about the
18  statute of limitations issue.
19          So I don't think there is any benefit to aligning the
20  discovery in the two cases. I think it would be harmful to do
21  that because these are different cases. They share a similar
22  legal theory. They share a similar cause of action. And they
23  share some similar -- similar facts about what was going on in
24  the industry at the time. But other than that, these are very
25  different allegations of what were the core continuing

1 discriminatory housing violations at issue, and how the
2 defendants targeted the -- the members of the communities and
3 how their lending and servicing activities, you know,
4 disparately impacted or harmed them through foreclosures and
5 default.  Very, very different schemes, the same kind of scheme
6 at heart but very different facts underlining both of the
7 schemes.
8             So there is just a great chance of confusion in trying
9 to align all the discovery in these cases, and I think trying
10 to align the briefing on the motions to dismiss as well.  So to
11 us having a two-week difference in the briefing period, you
12 know, as a practical matter I think just helps make things
13 separate in everybody's minds as they are briefing, certainly
14 from the plaintiff's perspective.
15             And I'm sure the Court can handle its docket.  But
16 having multiple briefings on similar legal issues involving
17 very different facts, you know, has a potential to confuse
18 everybody in any hearings on the motion to dismiss, the
19 briefings on the motions to dismiss, the timing of all the work
20 that has to be done.  And a two-week delay in between the
21 period of two cases I think is very reasonable.  And quite
22 frankly, that's why we filed them and served the parties in the
23 way we did.
24             THE COURT:  All right.
25             MR. EVANGELISTA:  That would be some separation.

1  THE COURT: All right. So the -- I know that the
2  District Court in Georgia addressed the issue of standing.
3  Have there been any other courts to date that have addressed
4  the standing arguments in the context of these cases? I'm
5  assuming these aren't the only cases like this that have been
6  filed throughout the country.
7  MR. EVANGELISTA: Well --
8  THE COURT: Mr. Evangelista --
9  MR. EVANGELISTA: -- on --
10  THE COURT: Mr. Evangelista, I'll give you a chance to
11  respond, but let me ask defense counsel.
12  MR. NATARELLI: Yeah, your Honor. There have been
13  other cases that have addressed those issues. Some have
14  settled. Some have reached a ruling and reached decisions.
15  There was a case in Cleveland. There was a case in Memphis.
16  Buffalo had a case as well, Baltimore. So there are cases
17  where these issues have been --
18  THE COURT: Have any of those courts decided that
19  standing was absent here?
20  MR. NATARELLI: I believe so, your Honor. I don't
21  have those cases in front of me. It's been actually a couple
22  years since I looked closely at those issues. But I do believe
23  there were one or two cases where courts ruled at least at one
24  state in the case that a municipality -- I don't think they
25  were counties involved; I think they were cities -- didn't have

1  standing to bring the claims.  Although, I'm sorry --
2              THE COURT:  And I know that in Georgia the court did
3  find standing.  I have already taken a look at that.
4              With regard to the -- going back to what -- really
5  what brings us here, the defendants' motion for extension of
6  time, I am going to grant the motion.  I am going to provide
7  defendants until June 3 to file their responsive pleading.
8              Let me ask you this, Mr. Evangelista.  In light of
9  that, now that you know that you are going to get basically two
10 motions to dismiss, presumably -- but they are going to be
11 legal theories, right, because you can't argue any facts.  You
12 have to assume all the facts to be true if you are going to
13 mount particularly a facial challenge to standing.
14             MR. NATARELLI:  Judge, just one point on that, which
15 is, a number of the allegations do deal with government data,
16 government publications, government studies, things that are
17 publicly available.  So there may be more sort of judicially
18 noticeable facts that you would see in a typical case.  But
19 certainly that's right.  We're not going to be contesting
20 factual allegations that are outside of the public record.
21             THE COURT:  Mr. Evangelista, how much time -- counsel
22 here at least has offered to provide you with -- and Ms.
23 Montgomery with as much time really as you need to respond to
24 the motion.  At this point, do you have a sense of how much
25 time you are going to need?  Or do you want to wait until you

1 first see the motion before we address the issue of the
2 schedule?
3     MS. MONTGOMERY: Well, your Honor, if I may, could
4 we -- just a minute, Mr. Evangelista.
5     Rather than align the two, we would be willing to even
6 give them an additional two weeks. We really would not like to
7 be on the same track, is what we are trying to avoid.
8     THE COURT: I think that, you know, frankly, it's --
9 if defense counsel is will to accommodate your request from
10 plaintiffs as far as briefing schedule goes, you can do that
11 internally, you know. There is nothing to prohibit you from
12 basically putting their motion to the side, asking for two
13 additional weeks on the back end, and then turning to it two
14 weeks later. I just think that at this point in time, for the
15 purposes of managing the two cases for me, for the Court, that
16 it makes sense to have both motions come in, and really to have
17 a similar briefing schedule for both cases. So keep that in
18 mind.
19     Why don't we do this: Why don't we wait until we see
20 both motions. Presumably you will -- since they will be filed
21 on the same day, make sure, defendants should make sure, that
22 both motions are noticed up for the same day before this Court.
23 And then we will call them at the same time. And then at that
24 point we can discuss the briefing schedule. And I am sure, Ms.
25 Montgomery and Mr. Evangelista, that the defendants as stated

1  here would be happy to accommodate the scheduling needs that
2  you would have.
3               All right.  So at this point then --
4               MR. EVANGELISTA:  Your Honor --
5               THE COURT:  -- I anticipate seeing everyone back here
6  the -- I am not going to be available the week of June 9.  But
7  you can notice it up for the week of June 16.
8               MR. NATARELLI:  Your Honor, we have a pending status
9  hearing on May 7.  I don't know if you want to strike that
10 while this -- this is proceeding, or how your Honor would like
11 us to proceed.
12              THE COURT:  I take it that the -- why don't we go
13 ahead and strike that.  So we will strike that initial status
14 hearing date for present purposes, particularly in light of the
15 fact that a basis for the motion is going to be really subject
16 matter jurisdiction, which is standing.
17              Okay.  Very good.  Thank you.
18              MR. NATARELLI:  Thank you, your Honor.
19              MR. EVANGELISTA:  Your Honor --
20              THE COURT:  Yeah.
21              MR. EVANGELISTA:  I'm sorry, you were going to -- if I
22 may just add one thing.  You were going to give me an
23 opportunity to answer the standing question.  I thought you
24 were originally directing that toward me.
25              THE COURT:  I think that -- I mean, I have read the --

1 I have read the District Court opinion in Georgia.  I
2 understand the standing issues.  Mr. Evangelista, I think that
3 at this point, you know, if you want to make a brief statement
4 that's fine, but I understand the two different sides.
5     MR. EVANGELISTA:  Got you.  No, it just -- you just
6 asked about if there were any other courts.
7     THE COURT:  Yes.
8     MR. EVANGELISTA:  Defense counsel had mentioned a
9 couple of other jurisdictions.  But the only jurisdictions that
10 have dealt with this that I'm aware of are Birmingham, Alabama,
11 the Baltimore and Memphis cases and Atlanta.  Cleveland and
12 Buffalo and some of the other cases did not involve FHA cases
13 but involved public nuisance claims, which are completely
14 unrelated.  And the only decision that denied standing was
15 Birmingham, and that was actually before the Baltimore and
16 Memphis decisions and the Atlanta decisions, which all followed
17 the Supreme Court specifically stating that municipalities had
18 standing under the FHA.  So Birmingham was wrong.
19     But they denied standing on a slightly -- on a
20 different basis involving whether or not plaintiffs adequately
21 alleged causation.
22     THE COURT:  All right.  Very good.  I am sure that the
23 parties will explore all those different avenues in their
24 motions.  And I look forward to reading them.
25     So thank you.

```
 1          MS. MONTGOMERY:  Thank you.
 2          MR. EVANGELISTA:  Thank you, your Honor.
 3     (Which were all the proceedings had at the hearing of the
 4      within cause on the day and date hereof.)
 5                            CERTIFICATE
 6          I HEREBY CERTIFY that the foregoing is a true, correct
 7  and complete transcript of the proceedings had at the hearing
 8  of the aforementioned cause on the day and date hereof.
 9
10   /s/Alexandra Roth                              5/6/2014
    _____            _____
11   Official Court Reporter                          Date
     U.S. District Court
12   Northern District of Illinois
     Eastern Division
13
14
15
16
17
18
19
20
21
22
23
24
25
```