**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| COUNTY OF COOK, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) CIVIL ACTION NO.: 1:14-cv-02031 |
| | ) |
| HSBC NORTH AMERICA HOLDINGS | ) District Judge John Z. Lee |
| INC.,  HSBC FINANCE CORPORATION, | ) |
| HSBC MORTGAGE  CORPORATION (USA), | ) Magistrate Judge Sheila M. Finnegan |
| HSBC MORTGAGE  SERVICES INC., | ) |
| HSBC USA INC., HSBC BANK USA, | ) |
| NATIONAL ASSOCIATION, BENEFICIAL | ) |
| COMPANY LLC, DECISION ONE | ) |
| MORTGAGE COMPANY, LLC, | ) |
| HFC COMPANY LLC | ) |
| | ) |
| Defendants. | ) |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

JAMES D. MONTGOMERY, SR.
JAMES D. MONTGOMERY, JR.
JOHN K. KENNEDY
DANIEL A. DAILEY
MICHELLE M. MONTGOMERY

**JAMES D. MONTGOMERY &**
**ASSOCIATES LTD.**
One North LaSalle Suite 2450
Chicago, IL 60602
Phone: (312) 977-0200
Fax: (312) 977- 0209
ddailey@jdmlaw.com

JAMES M. EVANGELISTA
(admitted *pro hac vice*)
JEFFREY R. HARRIS
(admitted *pro hac vice*)
DARREN W. PENN
(admitted *pro hac vice*)
DAVID J. WORLEY
(admitted *pro hac vice*)

**HARRIS PENN LOWRY LLP**
400 Colony Square, Suite 900
1201 Peachtree Street, NE
Atlanta, GA 30361
Phone: (404) 961-7650
Fax: (404)961-7651
jim@hpllegal.com

*Special Assistant State's Attorneys*

Table of Contents

Table of Authorities .................................................................................................. iii

Introduction ............................................................................................................... 1

Facts .......................................................................................................................... 1

Argument ................................................................................................................... 2

    A.  The Complaint is Timely ................................................................................... 2

        1.  The Two-Year Statute Of Limitations Period Has Not Begun To Run ............................ 2

        2.  The Common Law "Continuing Violation Doctrine" Is Essentially Irrelevant ................ 4

    B.  Plaintiff Has Standing To Pursue Its FHA Claim ............................................. 6

        1.  Plaintiff Adequately Pled Article III Standing – Which Is All That Is Required ............... 6

        2.  Defendants' Article III Standing Analysis Is Flawed And Misleading ........................... 10

        3.  *Lexmark* Supports Plaintiff's Standing ............................................................... 13

    C.  The County States A Valid FHA Claim ......................................................... 15

        1.  HSBC Does Not Challenge The County's Direct Targeting Claim ............................... 16

        2.  The FHA Permits Claims Alleging Disparate Impact ............................................... 16

        3.  The Complaint States An FHA Claim Based On Disparate Impact ............................... 17

        4.  The Complaint States An FHA Claim Based On Disparate Treatment ........................... 19

    D.  HSBC's Nationwide Equity-stripping Scheme Precludes Dismissal Of Any Defendant .... 19

Conclusion ............................................................................................................... 20

Table of Authorities

**Cases**

*Atunnise v. Mukasey,* 523 F.3d 830 (7th Cir. 2008) ...................................................... 3

*Barnhart v. Sigmon Coal Co., Inc.,* 534 U.S. 438 (2002)............................................. 3, 5

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007).............................................. 16, 18

*Brooks v. Ross,* 578 F.3d 574 (7th Cir. 2009).............................................................. 16

*City of Birmingham v. Citigroup, Inc., et al.,* No. 2:09-CV-00467-KOB, 2009 WL 8652915
   (N.D. Ala. Aug. 19, 2009)............................................................................ 10, 12

*City of Chicago v. Matchmaker Real Estate Sales Ctr., Inc.,* 982 F.2d 1086 (7th Cir. 1992)........ 9

*City of Los Angeles v. Bank of America Corp. et al.,* No. 2:13-CV-9046,
   2014 WL 2770083 (C.D. Cal. June 12, 2014) ...................................... 1, 4, 5, 9, 12, 13, 15, 18

*City of Los Angeles v. CitiGroup Inc., et al.,* No. 2:13-CV-9009,
   2014 WL 2571558 (C.D. Cal. June 9, 2014) ...................................... 1, 4, 5, 10, 12, 15, 19, 20

*City of Los Angeles v. Wells Fargo, et al.,* No. 2:13-CV-9007,
   2014 WL 2206368 (C.D. Cal. May 28, 2014) ................................. 1, 4, 5, 10, 12, 3, 15, 19, 20

*City of Memphis v. Wells Fargo Bank, N.A.,* 2011 WL 1706756
   (W.D. Tenn. 2011) ................................................................................ 10, 11, 12, 19

*DT Apt. Grp., LP v. CWCapital, LLC,* 2012 WL 6693192 (N.D. Tex. 2012)............................. 14

*Daveri Dev. Grp., LLC v. Vill. of Wheeling,* 934 F.Supp. 2d 987 (N.D. Ill. 2013) .......... 17, 18, 19

*DeKalb Cty. et al. v. HSBC N. Am. Holdings, Inc. et al.,* No. 1:12-CV-03640-SCJ,
   2103 WL 7874104 (N.D. Ga. Sept. 25, 2013) ................................... 1, 5, 10, 11, 12, 15, 19

*Engel v. Buchan,* 710 F.3d 698 (7th Cir. 2013).......................................................... 15, 16

*Equal Rights Ctr. v. Equity Res.,* 788 F. Supp. 2d 707 (D. Md. 2011)......................................... 15

*Equal Rights Ctr. v. Post Prop's, Inc.,* 633 F.3d 1136 (D.C. Cir. 2011)...................................... 15

*Erickson v. Pardus,* 551 U.S. 89 (2007) ................................................................. 16

*Estate of Davis v. Wells Fargo Bank,* 633 F.3d 529 (7th Cir. 2011)........................................... 6

*Fair Hous. Council, Inc. v. Vill. of Olde St. Andrews, Inc.,* 210 F. App'x 469 (6th Cir. 2006) .... 4

*Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91 (1978) ................................ 6, 7, 9, 12, 13

*Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564 (1982) ........................................................ 3, 5

*Hammond v. Sys. Transp., Inc.,* 11-CV-1295, 2012 WL 3234865 (C.D. Ill. Aug. 6, 2012) .......... 5

*Hargraves v. Capital City Mortgage Corp.,* 140 F. Supp. 2d 7 (D.D.C. 2000), on
    reconsideration in part, 147 F. Supp. 2d 1 (D.D.C. 2001) .................................................... 2, 6

*Havens Realty Corp. v. Coleman,* 455 U.S. 363 (1982) ................................. 2, 4, 5, 6, 8, 9, 13, 15

*Hoffman v. Option One Mortg. Corp.,* 589 F. Supp. 2d 1099 (N.D. Ill. 2008) ........................... 17

*Hous. Opp. Proj. for Excellence, Inc. v. Wedgewood Condo. Ass'n, Inc.,* 2012 WL 4193969
    (S.D. Fla., Sept. 19, 2012) .................................................................................................... 15

*HUD v. Blackwell,* 908 F.2d 864 (11th Cir. 1990) .................................................................... 8, 13

*Iqbal v. Twombly,* 556 U.S. 662 (2009) ....................................................................................... 16

*Jafri v. Chandler LLC,* 970 F. Supp. 2d 852 (N.D. Ill. 2013) ....................................................... 4

*Laufman v. Oakley Bldg. & Loan Co.,* 408 F. Supp. 489 (S.D. Ohio 1976) ............................... 15

*Levy v. Trent Motel Assoc., L.P.,* 2011 WL 3903647 (E.D. Pa. Aug. 26, 2011) ......................... 15

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 134 S.Ct. 1377 (2014) .................... 13, 14

*Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992) ................................................................. 7, 9

*Martinez v. Freedom Mortgage Team, Inc.,* 527 F. Supp. 2d 827 (N.D. Ill. 2007)..................... 16

*Maya v. Centex Corp.,* 658 F.3d 1060 (9th Cir. 2011) ................................................................ 12

*Mayor & City Council of Baltimore v. Wells Fargo Bank, N.A.,* 631 F. Supp. 2d 702
    (D. Md. 2009)................................................................................................................... 9, 10, 11

*Mayor & City Council of Baltimore v. Wells Fargo Bank, N.A.,* 677 F. Supp. 2d 847
    (D. Md. 2010)................................................................................................................. 10, 11, 12

*Mayor & City Council of Baltimore v. Wells Fargo Bank, N.A.,* CIV. JFM-08-62, 2011 WL
    1557759 (D. Md. Apr. 22, 2011)............................................................................................ 10, 11

*Mazzocchi v. Windsor Owners Corp.,* 2012 WL 3288240 (S.D.N.Y. Aug. 6, 2012).................. 15

*Metro. Housing Dev. Corp. v. Vill. of Arlington Heights,* 558 F.2d 1283 (7th Cir. 1977)..... 16, 18

*New West L.P. v. City of Joliet,* 491 F.3d 717 (7th Cir. 2007) ...................................................... 9

*Nikolich v. Vill. of Arlington Heights,* 870 F.Supp.2d 556 (N.D. Ill. 2012) ............................... 19

*Options Ctr. for Indep. Liv. v. G&V Dev. Co.,* 229 F.R.D. 149 (C.D. Ill. 2005)...................... 8, 13

*Patriotic Veterans, Inc. v. Indiana,* 736 F.3d 1041 (7th Cir. 2013)............................................ 3, 5

*Samaritan Inns, Inc. v. Dist. Of Columbia,* 114 F.3d 1227 (D.C. Cir. 1997)................................ 8

*Simovits v. Chanticleer Condo. Ass'n.,* 933 F. Supp. 1394 (N.D. Ill. 1996).................................. 4

*Smith v. City of Jackson,* 544 U.S. 228 (2005) ........................................................................... 17

*Thompson v. N. Am. Stainless, L.P.,* 131 S.Ct. 863 (2011) ................................................... 13, 15

*Tingley v. Beazer Homes Corp.,* No. 3:07-CV-176, 2008 WL 1902108
   (W.D.N.C. Apr. 25, 2008)................................................................................................. 10, 11

*Trafficante v. Metropolitan Life Ins. Co.et al.,* 409 U.S. 205 (1972) .......................................... 13

*Tyus v. Urban Search Mgmt.,* 102 F.3d 256 (7th Cir. 1997) ..................................................... 6, 9

*United States v. N. Trust Co.,* 372 F.3d 886 (7th Cir. 2004) ...................................................... 4, 5

*U.S. v. Glaser,* 14 F.3d 1213 (7th Cir. 1994).............................................................................. 17

*U.S. v. Valistrieri,* 981 F.2d 916 (7th Cir. 1992) ........................................................................ 14

*Vill. Of Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252 (1977)............................ 8, 9

*Village of Bellwood v. Dwivedi,* 895 F.2d 1521 (7th Cir. 1990)..................................................... 9

*Wal-Mart Stores, Inc. v. Dukes,* 131 S.Ct. 2541 (2011) ............................................................. 18

*Wallace v. Chicago Hous. Auth.,* 321 F. Supp. 2d 968 (N.D. Ill. 2004)..................................... 2, 4

*Warth v. Seldin,* 422 U.S. 490 (1975)........................................................................................... 7

*Whitley v. Taylor Bean & Whitacker Mortgage Corp.*, 607 F. Supp. 2d 885 (N.D. Ill. 2009)..... 16

*Zamudio v. HSBC N. Am. Holdings, Inc.,* 2008 WL 517138 (N.D. Ill. 2008).............................. 17

**Statutes**

42 U.S.C. §3602 ................................................................................................................ 8, 11, 14

42 U.S.C. §3605 ................................................................................................................... 16

42 U.S.C. §3613.............................................................................. 2, 3, 4, 5, 8, 11, 13, 14, 16

42 U.S.C. §3614................................................................................................................... 17

**Other Authorities**

*HUD and Treasury Joint Report on "Curbing Predatory Home Mortgage Lending,"*
  54 Consumer Fin. L.Q. Rep. 218, 227 (2000)................................................................................ 2

*24 C.F.R. § 100.500* ............................................................................................................... 17

**Rules**

Fed. R. Civ. P. 12(b) ............................................................................................................ 15

Fed. R. Civ. P. 12(d) ............................................................................................................... 5

Fed. R. Civ. P. 56(d) ......................................................................................................... 5, 20

## INTRODUCTION

Plaintiff respectfully requests this Honorable Court to deny HSBC's motion to dismiss. Each of HSBC's arguments is without merit as they are contrary to the applicable federal statutes, case law and charging allegations in the Complaint. HSBC must mischaracterize the Complaint, rely on distinguishable precedent, and attempt to misdirect the Court through evasive analysis of the legal issues, to construct its legal arguments. Indeed, the Northern District of Georgia denied HSBC's motion to dismiss in a nearly identical case. Likewise, several recent courts' decisions in similar cases have denied motions to dismiss which rested on the same legal grounds that HSBC asserts here.[1] This case parallels those recent cases such that this Court should simply deny HSBC's motion for the reasons discussed herein.

## FACTS

An overview of the theory of this case is provided in the Introduction to Cook County's 108 page, highly particularized Complaint that goes far beyond the minimum pleading requirements necessary to establish its Fair Housing Act ("FHA") claim. *See* Cmplt., ¶¶1-26. In short the Complaint details the multifaceted elements of HSBC's intentional, discriminatory housing practice of a nationwide "equity-stripping" scheme, which it conducted through: (1) a pattern and practice of predatory and discriminatory mortgage lending (including "reverse redlining," "steering," and the targeting of FHA protected borrowers for high cost or subprime mortgage loans that Defendants knew were likely to fail); (2) the continued and interrelated servicing of those mortgage loans; and (3) HSBC's other activities that are integral to the

---

[1] *DeKalb Cty. et al. v. HSBC N. Am. Holdings, Inc., et al.*, No. 1:12-CV-03640-SCJ, 2013 WL 7874104 (N.D. Ga., Sept. 25, 2013), and *City of Los Angeles v. Bank of America Corp., et al.*, No. 2:13-cv-9046, 2014 WL 2770083 (C.D. Cal., June 12, 2014); *City of Los Angeles v. CitiGroup Inc., et al.*, No. 2:13-cv-9009, 2014 WL 2571558 (C.D. Cal., June 9, 2014); *City of Los Angeles v. Wells Fargo, et al.*, No. 2:13-cv-9007, 2014 WL 2206368 (C.D. Cal., May 28, 2014). Copies of these decisions are attached as Exhibits A - D, respectively, to the Declaration of Daniel A. Dailey ("Dailey Decl.") submitted herewith.

scheme, including sales of mortgage securitizations, concealment of its actions, and the ultimate foreclosures on defaulted loans.[2]  The Complaint also alleges that HSBC's scheme did not end, but instead will continue well into the future until the last act in the scheme occurs – through the payoff, or the default and foreclosure, of every predatory and discriminatory mortgage loan HSBC originated, funded and/or serviced as part of its scheme.

## ARGUMENT

### A.    The Complaint Is Timely

#### 1.  The Two-Year Statute Of Limitations Period Has Not Begun To Run

The FHA provides that "[a]n aggrieved person may commence a civil action in an appropriate United States district court or State court not later than *2 years after* the occurrence or *the termination of an alleged discriminatory housing practice . . . whichever occurs last*." 42 U.S.C. §3613(a)(1)(A) (emphasis added).[3] This statutory language is entirely dispositive of the legal issue now before the Court. There are no other relevant conditions or exceptions stated in the plain language of this statute and, of course, none may be added by the courts or the parties.[4] *See Atunnise v. Mukasey*, 523 F.3d 830, 836 (7th Cir. 2008) (noting "the canon that

---

[2] Equity-stripping is an abusive form of "asset based lending" that violates the FHA if conducted on a discriminatory basis. *See HUD and Treasury Joint Report on "Curbing Predatory Home Mortgage Lending"*, 54 Consumer Fin. L.Q. Rep. 218, 227 (2000); *Hargraves v. Capital City Mortgage Corp.*, 140 F. Supp. 2d 7, 20-21 (D.D.C. 2000), *on reconsideration in part*, 147 F. Supp. 2d 1 (D.D.C. 2001) (denying summary judgment for defendant on FHA claim where plaintiffs alleged predatory lending practices, "including exorbitant interest rates, lending based on the value of the asset securing the loan rather than a borrower's ability to repay ("equity-stripping," in other words is issuing a loan "designed to fail" and profiting by acquiring the property through default, rather than by receiving loan payments), repeated foreclosures, and loan servicing procedures in which excessive fees are charged").

[3] 42 U.S.C. §3613(a)(1)(A) was amended by Congress in the "Fair Housing Amendments Act of 1988," six years after *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380-81 (1982), to extend the limitations period to two years and to codify *Havens* holding that the FHA's limitations period would not begin to run on a continuing discriminatory housing practice until the later of the occurrence or the termination of the practice. *See, e.g., Wallace v. Chicago Hous. Auth.*, 321 F. Supp. 2d 968, 972-73 (N.D. Ill. 2004).

[4] Statutory construction begins with the plain meaning of the language of the statute itself. *Barnhart v.*

2

plain and unambiguous statutes must be applied as written").

This Court need only apply the language of §3613(a)(1)(A) to the specific allegations in the Complaint to conclude the Complaint was timely filed. Cook County alleges that HSBC's discriminatory housing practice has not terminated; that HSBC's interrelated predatory and discriminatory mortgage lending and loan servicing activities are still ongoing; and that its equity-stripping scheme will continue into the future until the last predatory and discriminatory mortgage loan made as part of the scheme is repaid and closed, or is foreclosed upon. *See, e.g.*, Cmplt., ¶¶ 3, 26, 108, 259, 281-82, 284, 301, 305-306, 320, 322-325. Because the Complaint alleges an ongoing discriminatory housing practice that has not yet terminated, the two-year limitations period will not begin to run until that practice actually terminates (i.e., until the last phase in the alleged equity-stripping scheme concludes). Thus, Plaintiff's FHA claim is therefore timely under the plain language of 42 U.S.C. §3613(a)(1)(A).

This result is not only required under the plain language of the FHA, but also under long-standing and binding legal precedent confirming that a complaint alleging continuing discriminatory housing practices is timely if the bad practices have not ended or, if the complaint was filed, within two years after the bad acts ceased.[6] Indeed, other courts have reached exactly

---

*Sigmon Coal Co., Inc.*, 534 U.S. 438, 450 (2002). "The inquiry ceases if the statutory language is unambiguous and the statutory scheme is coherent and consistent." *Id.* at 450. "[C]ourts [must] presume that the legislature says in a statute what it means and means in a statute what it says...." *Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1047 (7th Cir. 2013). Thus, this Court's "task is to give effect to the will of Congress, and where its will has been expressed in reasonably plain terms, [its] language must ordinarily be regarded as conclusive," even if the resulting effect on the defendants is "hard or unexpected." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 570, 575 (1982).

[6] *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380-81 (1982) ("[W]here a plaintiff . . . challenges not just one incident of conduct violative of the [FHA], but an unlawful practice that continues into the limitations period, the complaint is timely when it is filed within 180 days of the last asserted occurrence of that practice."); *Fair Hous. Council, Inc. v. Vill. of Olde St. Andrews, Inc.*, 210 F. App'x 469, 479-480 (6th Cir. 2006) (the FHA's two-year limitations period in §3613(a)(1)(A) does not begin to run until the alleged continuing discriminatory housing practice terminates); *Jafri v. Chandler LLC*, 970 F. Supp. 2d 852, 864-65 (N.D. Ill. 2013) (Feinerman, G.) ("limitations defense fail[ed] at the pleading stage" where

the same conclusion, including three very recent decisions in similar FHA cases brought by the City of Los Angeles.[7]

In sum, HSBC's statute of limitations defense must be denied because HSBC cannot demonstrate it is entitled the defense.[8]

## 2. The Common Law "Continuing Violation Doctrine" Is Essentially Irrelevant

When the County learned or could have learned of its FHA claim against these particular Defendants is simply not relevant because the Complaint was filed timely as a matter of law under §3613(a)(1)(A). The statute, on its face, does not impose any other requirements on Plaintiff.[9] *See, e.g., Barnhart,* 534 U.S. at 450; *Griffin,* 458 U.S. at 575; *Patriotic Veterans,* 736

---

face of complaint does not establish that the discriminatory housing practice terminated at least two years before plaintiff filed suit); *Wallace v. Chicago Hous. Auth.*, 321 F. Supp. 2d 968, 973 (N.D. Ill. 2004) (Castillo, J.) (permitting FHA claims based on disparate impact, segregation, and racial steering, that occurred prior to two-year limitations period because such practices were part of a continuing pattern and practice of discrimination); *Simovits v. Chanticleer Condo. Ass'n*, 933 F. Supp. 1394, 1404 (N.D. Ill. 1996) (Keys, A.) (denying laches defense and finding FHA complaint was timely because it was filed within two years of the last asserted occurrence of the alleged continuing discriminatory housing practice).

[7] Recently the United States District Court for the Central District of California rejected defendants' statute of limitations arguments in three separate FHA cases, finding that the alleged loan making activity extended into the two-year period before the respective complaints were filed. *City of Los Angeles v. Bank of America Corp., et al*, No. 2:13-cv-9046, 2014 WL 2770083 (C.D. Cal., June 12, 2014); *City of Los Angeles v. CitiGroup Inc., et al*, No. 2:13-cv-9009, 2014 WL 2571558 (C.D. Cal., June 9, 2014); *City of Los Angeles v. Wells Fargo*, et al, No. 2:13-cv-9007, 2014 WL 2206368 (C.D. Cal., May 28, 2014). Unlike Plaintiff's broader equity-stripping scheme at issue here, that by its very nature continues into the future, the Los Angeles complaints focus solely on defendants' alleged discriminatory and predatory mortgage lending practices that continued through the filing of those complaints. *See id.*

[8] Defendants have the initial burden to show that the allegations entitle them to the affirmative defense of statute of limitations. *See, e.g., United States v. N. Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004).

[9] To the extent HSBC proffers a variety of materials in Appendix A that are not alleged in the Complaint to support this contention, none of those materials reflect that Cook County had notice two years before the Complaint was filed that these HSBC Defendants engaged in the predatory and discriminatory housing practice alleged in the Complaint. Nevertheless, Cook County objects to the inclusion of such materials and, to the extent such materials are not excluded by the Court, Rule 12(d) requires that HSBC's motion be "treated as one for summary judgment under Rule 56." Fed.R.Civ.P.12(d); *see also, e.g., Hammond v. Sys. Transp., Inc.*, 11-CV-1295, 2012 WL 3234865 (C.D. Ill. Aug. 6, 2012). Thus, if the Court chooses to consider these materials, Plaintiff respectfully requests pursuant to Federal Rules 12(d) and 56(d) either that: (1) HSBC's motion to dismiss be converted to a motion for summary judgment and

F.3d at 1047, 1052-1053. The issue becomes relevant **only if** the County's claim is first found to be untimely under §3613(a)(1)(A) and the Court finds that the County must rely on equitable principles to toll or otherwise extend an expired limitations period.

HSBC's argument evades the initial required statutory analysis and improperly attempts to shift the initial burden to Cook County, *see Northern Trust Co.*, 372 F.3d at 888, by imposing equitable requirements that are not within 42 U.S.C. §3613(a)(1)(A). Thus, HSBC argues that the Complaint is untimely because the County cannot rely on the common law "continuing violation doctrine" to extend the limitations period (even though HSBC does not, and cannot, show that the County's FHA claim is untimely to begin with).[10] *See* HSBC Memo at 6-10.  HSBC's faulty argument relies on several false premises: (1) that the FHA's "statute of limitations begins to run on the date a borrower obtains an allegedly discriminatory loan";[11] and (2) that Plaintiff's claim (i) "alleges no discriminatory act within the past two years," (ii) only "is based on mortgage

_____

be denied on its face or (2) that Plaintiff "be given a reasonable opportunity to present all the material that is pertinent to the motion" following an opportunity for discovery because HSBC is in possession of the full mortgage loan level and loan servicing information that would definitively establish whether HSBC's equity-stripping scheme is continuing to this very day.

[10] HSBC employed this same briefing strategy in its motion to dismiss the *DeKalb* case, leading that court to confuse equitable elements of the common law "continuing violation doctrine" with the plain language of §3613(a)(1)(A) as applied to the allegations in the complaint, thereby focusing on whether plaintiff was entitled to extend the FHA's limitations period without ever determining that the complaint was untimely in the first instance.  *See DeKalb,* 2013 WL 7874104 at *9-*12. The *DeKalb* plaintiffs' recently filed a motion for partial summary judgment on this issue, which remains pending. Prior to that motion, however, the *DeKalb* court's merging of equitable elements into the statutory analysis apparently encouraged the defendants in each of the Los Angeles cases to use the same HSBC briefing tactic in their own motions to dismiss.  This led the parties' in those cases, and each of the *Los Angeles* court's decisions rejecting the statute of limitations defenses, to focus on the "continuing violation" concept discussed in *Havens* without a direct application of the plain language of §3613(a)(1)(A) to the actual charging allegations. *See Bank of America Corp.,* 2014 WL 2770083 at *9-*10; *CitiGroup Inc.,* 2014 WL 2571558 at *8-*10; *Wells Fargo*, 2014 WL 2206368 at *9-*10.  The briefs in the *DeKalb* and *Los Angeles* cases are a matter of public record that this Court may take judicial notice of.
[11] Defendants rely on the factually and legally distinguishable case *Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529 (7th Cir. 2011). *See* HSBC Memo at 5. Entirely unlike the Complaint here, *Davis* involved a single predatory mortgage loan, 633 F.3d at 532, and "the district court determined that continuing violation theories . . . were not applicable." *Id.*

loans originated between 2003 and 2007," and (iii) "must be based on mortgage loans that were originated on or after March 21, 2012."[12] As shown above, this is contrary to the County's allegations and both, the case decisions interpreting and the plain language, of the FHA's statute of limitations in similar cases.

**B.**   **Plaintiff Has Standing To Pursue Its FHA Claim**

　　**1. Plaintiff Adequately Pled Article III Standing -- Which Is All That Is Required**

Supreme Court precedent makes clear that standing under the FHA is very broad; it is limited only by the minimal constitutional requirements of Article III that a plaintiff "have suffered 'a distinct and palpable injury to himself' that is likely to be redressed if the requested relief is granted." *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 100, 110-11 (1978) (holding that a municipal government has Article III standing to pursue an FHA claim when it has alleged a loss in its tax base and revenue due to defendants' discriminatory housing practice); *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 376 (1982); *Tyus v. Urban Search Mgmt.*, 102 F.3d 256, 265 (7th Cir. 1997) (a plaintiff need not even prove a "tangible injury" to prevail on an FHA claim); *Hargraves v. Capital City Mortgage Corp.*, 147 F. Supp. 2d 1, 3 (D.D.C. 2001) ("'Prudential limits' on standing [under the FHA] do not apply, as the Act confers standing to the full extent permitted by Article III"). *Gladstone* resolves the standing issue because the Complaint here pleads the same types of injuries found by *Gladstone* to support a municipal government's FHA standing (in addition to many other injuries) and alleges that all of Plaintiff's injuries were caused by HSBC's discriminatory housing practice.[13]

_____

[12] *See* HSBC Memo at 5-6. Contrary to HSBC's repeated misrepresentations of the Complaint, *see* HSBC Memo at 1,3,5-6, HSBC's alleged discriminatory housing practice clearly is not limited to HSBC's loan "origination" activity in only "2003 through 2007." *See, e.g.,* Cmplt. ¶¶1-26, 141-175, 176-231, 259.

[13] Curiously, HSBC's entire argument on standing in Section II A of their Memo fails even to cite to, let alone discuss the substance of, the Supreme Court's controlling decision in *Gladstone*. At the same time,

Should there be even a shred of doubt, the allegations of the Complaint go far beyond *Gladstone* and the three minimal pleading elements identified by the Supreme Court to establish constitutional standing: (1) an injury in fact—an invasion of a legally protected interest, which is both "concrete and particularized" and "actual or imminent"; (2) a "causal connection between the injury and the conduct complained of" – i.e. the injury must be "fairly traceable" to the challenged conduct; and (3) the alleged injuries will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Plaintiff's hurdle to allege facts establishing standing is not high. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [courts] 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Id.* at 561. "For purposes of ruling on a motion to dismiss for want of standing, . . .[this Court] must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

Cook County has made concrete and particularized allegations regarding the numerous injuries-in-fact it has sustained directly resulting from HSBC's broad equity-stripping scheme.[14]

---

Defendants again grossly misrepresent the allegations in the Complaint, *see, e.g.,* HSBC Memo at 13 ("the County alleges that HSBC's alleged actions have **only** 'exacerbated the spiraling level of mortgage loan defaults…") (emphasis added), while also misrepresenting that Plaintiff's Complaint here is "virtually identical [to the] case brought by the City of Birmingham." *Id*. at 11. That Defendants must rely on such selective and deceptive factual and legal analysis to support their arguments should further emphasize for the Court the illegitimacy of those arguments.

[14] For example, the County alleges: (1) economic harm (such as out-of-pocket costs, losses in property lien recording fee revenue, and a reduction in the County's tax base and tax revenues resulting from an underlying decline in property values that can **be precisely determined through regression analysis**, Cmplt., ¶¶3,5, 282, 285, 290-298, (2) non-economic injuries to the fabric of the County's communities and constituents (including deterioration and blight) Cmplt., ¶¶5, 26, 282 & 285; and (3) a frustration of the purposes and missions of the County's various departments and authorities, requiring reallocation of their human and financial resources to address the home vacancies and foreclosures that HSBC's illegal actions have caused. Cmplt., ¶300. The County alleged average total estimated damages from each foreclosure to range up to $34,000, and was careful to expressly limit damages to those that are actually caused by and traceable to Defendants and that will be precisely determined upon discovery. *See, e.g.,*

These include allegations that the County faces *future harm* from the defaults and foreclosures resulting from HSBC's continuing equity-stripping scheme and seeks injunctive relief to prevent this future harm, Cmplt., ¶¶6, 26, 259, 284, 301, 306 & 325, which forms an independent basis for FHA standing. 42 U.S.C. §3602(i) & §3613(c).[15] Cook County also has alleged many specific facts supporting the unbroken causal link between HSBC's intentional discriminatory housing practice scheme of equity-stripping and the foreseeable, if not intended, resulting loan defaults, home vacancies and foreclosures in the County's communities.[16] As discussed below,

---

Cmplt., ¶¶299, 307-311.

[15] *See, e.g., Vill. Of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 262-63 (1977) ("[i]t has long been clear that economic injury is not the only kind of injury that can support a plaintiff's standing" under the FHA); *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982) (finding standing for organization that alleged non-monetary organizational harm to include impairment of ability to fulfill its purpose); *HUD v. Blackwell*, 908 F.2d 864, 872-73 (11th Cir. 1990); *Options Ctr. for Indep. Liv. v. G&V Dev. Co.,* 229 F.R.D. 149, 152 (C.D. Ill. 2005); *Samaritan Inns, Inc. v. Dist. Of Columbia*, 114 F.3d 1227, 1233 (D.C. Cir. 1997).

[16] These allegations include: (1) The intentional nature of HSBC's nationwide discriminatory housing practice of equity-stripping, *intentionally targeting* minorities and *knowingly* making predatory mortgage loans to them that were *destined to fail* as a result of the loan terms themselves and the predatory way the loans were underwritten, *see, e.g.* Cmplt., ¶¶4, 7, 44, 61-65, 68-69, 73, 75, 113, 118, 139, 173, 233-35, 237-39, 248, 316 & 318; (2) HSBC's top-down corporate driven policies and practices implementing its continuing scheme, supported by allegations of fact from numerous confidential witnesses, *see, e.g.* Cmplt., ¶¶74, 78-132, 141-180; (3) The further continuation of HSBC's scheme through additional loan making and the continued servicing of HSBC's predatory and discriminatory mortgage loans until they did fail or until they will fail in the future, *see, e.g.* Cmplt., ¶¶259-281; (4) HSBC's loan originations and wholesale loan purchases or funding of loans made by brokers in Plaintiff's communities, as reflected in the precise statistical, empirical and numerical loan data Plaintiff alleged, and the discriminatory impact of such lending in Plaintiff's communities, *see, e.g.* Cmplt., ¶¶ 14-15, 21-22, 24-26, 242-46 & 248-258; (5) explicit causal allegations, supported by Congressional and industry findings, that the terms of the predatory loans themselves, and the predatory manner in which the loans were made and underwritten, inevitably resulted in the historically unprecedented numbers of loan defaults and foreclosures that disparately affected minorities, particularly in Plaintiff's communities, *see, e.g.,* Cmplt., ¶¶ 8, 9, 15, 19, 50-58, 109, 112-113, 229-258, 282-89, 298 & 304; (6) HSBC's efforts to actively conceal their scheme from federal regulators and Plaintiff, impeding Plaintiff's ability to provide the specific property address information Defendants claim is necessary at the pleading stage, including through HSBC's creation and use of Mortgage Electronic Registration Systems (MERS), HSBC's use of their complex bank holding company legal structure, and HSBC's securitization activities, *see, e.g.* Cmplt., ¶¶16, 175, 180, 220, 224-26 & 229-231; (7) HSBC's own actions caused increased loan defaults, home vacancies and foreclosures on predatory and discriminatory loans they made in Plaintiff's communities, *see, e.g.* Cmplt., ¶¶19, 25 & 221-243; and (8) the U.S. liquidity and financial crisis in 2008, and the resulting economic decline

all these allegations distinguish Cook County's Complaint from the complaints filed in the early *Birmingham* and *Baltimore* cases. Finally, HSBC did not address the third prong in *Lujan* thus effectively concedes that a favorable outcome here (monetary damages and injunctive relief) will redress the County's injuries. Indeed, this element of standing is without reasonable dispute here.

Binding precedents from both the Supreme Court and the Seventh Circuit instruct that the Complaint goes far beyond the minimal Article III requirements to establish standing through the County's many allegations of concrete, particularized, and statutorily-cognizable injuries in fact that are "fairly . . .trace[able] to the action of the defendant." *See, e.g., Lujan*, 504 U.S. at 560-61; *Arlington Heights*, 429 U.S. at 262-63; *Gladstone*, 441 U.S. at 99, 110-11; *Havens*, 455 U.S. at 378-79; *City of Chicago v. Matchmaker Real Estate Sales Ctr., Inc*., 982 F.2d 1086, 1095 (7th Cir. 1992); *Village of Bellwood v. Dwivedi*, 895 F.2d 1521, 1526 (7th Cir. 1990); *New West L.P. v. City of Joliet*, 491 F.3d 717, 721 (7th Cir. 2007); *Tyus*, 201 F.3d at 265.  Indeed, four separate federal district courts recently faced with similar motions to dismiss, similar facts and the same legal issues now before this Court, have found that the municipal-government plaintiffs may pursue their FHA claims under Article III standing as set forth in *Gladstone* and its progeny.[17]

---

thereafter, on which Defendants predominately rely to assert an intervening cause of the foreclosure crisis in an attempt to break the causal chain, was in fact caused by HSBC's lending and securitization practices at issue here (in combination with the similar practices of certain other industry participants), *see, e.g.* Cmplt., ¶¶4, 19, 25 & 221-243).

[17] *Bank of America Corp.*, 2014 WL 2770083 at *4-*8 (finding city government had both Art. III and statutory standing under the FHA to assert claim based on defendants' predatory and discriminatory mortgage lending practices); *CitiGroup Inc.,* 2014 WL 2571558 at *4-*8 (same; also finding that "many of the independent actions that Defendants contend defeat causation could plausibly be produced by or the result of Defendants' challenged conduct."); *Wells Fargo*, 2014 WL 2206368 at *3-*8 (same); *DeKalb*, 2013 WL 7874104 at *6-*7 (finding county government plaintiffs had FHA standing to sue HSBC because they "alleged similar types of injuries" as in *Gladstone* and had satisfied the "fairly traceable[] component of standing in that the government and industry findings, as well as the empirical data contained in the Complaint raise the pleadings above the speculative level").

### 2. Defendants' Article III Standing Analysis is Flawed and Misleading

Defendants rely heavily on the *City of Birmingham v. Citigroup, Inc.*, *et al.,* No. 2:09-CV-00467-KOB, 2009 WL 8652915 (N.D. Ala. Aug. 19, 2009) ("*Birmingham*"), and an interim decision in the *Baltimore* litigation, *Mayor & City Council of Baltimore v. Wells Fargo Bank, N.A.*, 677 F. Supp. 2d 847 (D. Md. 2010) ("*Baltimore II*"). HSBC Memo at 11-12. But those cases are distinguishable on their face because they lacked the particularized-loss-causation allegations in Plaintiff's Complaint here. Indeed, the court in *Baltimore* subsequently held that the City of Baltimore had Article III standing because it had amended its complaint to include several additional factual allegations – like the intent and knowledge allegations already alleged in Cook County's Complaint here - that provided "the missing causal link." *Mayor & City Council of Baltimore v. Wells Fargo Bank, N.A.*, CIV. JFM-08-62, 2011 WL 1557759 at *3 (D. Md. Apr. 22, 2011) (*"Baltimore III"*).[18] In reaching that conclusion, the court in *Baltimore III* expressly distinguished the *Birmingham* case and the *Tingley* decision that the *Birmingham* case relied on because those "plaintiffs sought sweeping damages but presented only general and conclusory allegations of harm." *Id.* at *5, n.5.[19] *See also City of Memphis v. Wells Fargo Bank,*

---

[18] A copy of *Baltimore III* is attached as Exhibit E to the Dailey Decl.

[19] *Birmingham*'s legal analysis was inherently flawed. The *Tingley* case on which *Birmingham* relied did not involve an FHA claim and did not even consider *Gladstone*. *See Tingley v. Beazer Homes Corp.*, No. 3:07-CV-176, 2008 WL 1902108 (W.D.N.C. Apr. 25, 2008). Moreover, the court in *Birmingham* found *Tingley* to be "[t]he most factually analogous case the parties presented," *Birmingham*, 2009 WL 8652915 at *6, notwithstanding that the *Birmingham* court had been provided with a copy of the July 2, 2009 decision in *Mayor & City Council of Baltimore v. Wells Fargo Bank, N.A.*, 631 F. Supp. 2d 702 (D. Md. 2009) ("*Baltimore I*") (denying defendants' initial motion to dismiss and finding that Baltimore had standing under the FHA claim to pursue a claim that was identical to the claim asserted in *Birmingham*). A copy of *Baltimore I* is attached as Exhibit F to the Dailey Decl. Curiously, HSBC fails to disclose to this Court the *Baltimore I* or the *Baltimore III* orders, let alone inform this Court that both orders denied defendants' motions to dismiss or that *Baltimore III* explicitly distinguished the *Birmingham* decision and the complaints filed in *Birmingham* and *Tingley*. This is particularly curious as HSBC's legal counsel, the Buckley Sandler law firm and several of its attorneys admitted *pro hac vice* here, were substituted as

*N.A.*, 2011 WL 1706756 *5, *9 (W.D. Tenn. 2011) (similarly distinguishing *Birmingham* and the initial *Baltimore* complaint in denying defendants' motion to dismiss municipal governments' FHA claims).

Defendants also erroneously suggest that the Complaint does not adequately allege a "causal connection" between Plaintiff's injuries and HSBC's conduct because the Complaint does not specify property addresses where HSBC made loans and foreclosures have occurred. *See* HSBC Memo at 12-13.  But at this early stage of litigation, Cook County need not specify addresses of vacant or foreclosed properties as the Complaint's loss-causation allegations are more than adequate for a number of reasons. *See, e.g., DeKalb Cty.*, 2013 WL 7874104, at *7 (denying motion to dismiss and allowing plaintiffs to include list of properties on which actual damages are being sought in an amendment to the complaint after discovery, but not limiting damages to just foreclosures or vacancies on such properties); *Baltimore I*, 631 F. Supp. 2d 702 (denying initial motion to dismiss, even though complaint did not identify specific property addresses).

***First***, Plaintiff's basis for standing under the FHA is not limited to just those injuries caused by HSBC's discriminatory practices that have already occurred, but also arises from the additional future harm Plaintiff believes will occur as a result of the continuation of HSBC's scheme, *see* 42 U.S.C. §3602(i) and §3613(c). The County could not possibly identify addresses of foreclosure or vacancies that did not occur before the Complaint was filed, but certainly will identify "future" properties at trial after an opportunity for discovery. ***Second***, unlike the *Birmingham*, *Baltimore II* and *Memphis* cases relied on by HSBC, Cook County has further

---

Wells Fargo's legal counsel in both the *Baltimore* and the *Memphis* litigations shortly after *Baltimore I* was decided.  This Court may take judicial notice of these matters as they are reflected in the civil dockets of the Northern District of Alabama and the District of Maryland in the *Birmingham* and *Baltimore* cases, respectively.

established the plausibility of its FHA claim with detailed allegations of confidential-witness-information and extensive allegations of HSBC's deliberate intent and knowledge in perpetrating its scheme. *See, e.g.,* Cmplt., ¶¶ 4, 58, 61-64, 68, 70, 73-98, 121-123, 125-26, 130-31, 155-171, 173-75, 237 & 243. **Third**, unlike the *Birmingham*, *Baltimore*, *Memphis, Bank of America, Citigroup* and *Wells Fargo* cases, Cook County specifically alleges that HSBC actively sought to conceal property address and specific loan information from its federal regulators and Plaintiff as part and parcel of its equity-stripping scheme. Cmplt. ¶¶ 16, 175, 180-220, 224-26, 231 & 309.[20]

**Fourth**, the Complaint expressly limits Plaintiff's damages to only those damages HSBC actually caused through those loans HSBC originated, funded or serviced that will be identified in discovery – the County does not seek from HSBC all of its damages resulting from the entire foreclosure crisis as the original complaints in *Birmingham* and *Baltimore* did. *See, e.g.,* Cmplt. ¶¶294-96, 299 & 309. **Finally,** imposing any requirement on Cook County at the pleading stage to identify specific property addresses goes far beyond *Gladstone* and its progeny and would conflict with the FHA's "broad and inclusive" language that must be given "generous construction," *Trafficante*, 409 U.S. at 209, 212, particularly Plaintiff's statutory right for relief

---

[20] HSBC should not get any benefit in arguing the inadequacy of traceability of the County's economic damages because of a failure to identify property addresses where HSBC is alleged to have concealed such information as part of its scheme. Indeed, Cook County has alleged that the information necessary to determine precise property addresses, the specific characteristics of HSBC loans on those properties, the manner and extent those loans have been serviced, and the locations of resulting foreclosures is in HSBC's possession or control because HSBC is required to collect and maintain it for a variety of operational and legal reasons, *see, e.g.,* Cmplt., ¶¶ 47-49, 69 & 309; *see also* the Home Mortgage Disclosure Act ("HMDA"), 12 U.S.C. §2801 *et seq, as implemented by* 12 C.F.R. § 203, *et seq.* Thus Cook County also alleged that discovery of HSBC and Mortgage Electronic Registration Systems ("MERS") will be necessary to get all this information. Cmplt., ¶¶199, 202, 294 & 309-10. Plaintiff should be afforded the opportunity to conduct this discovery. *See, e.g., DeKalb Cty.*, 2013 WL 7874104, at *7; *Citigroup Inc.*, 2014 WL 2571558 at *7 (discussing *Maya v. Centex Corp,*, 658 F.3d 1060, 1072 (9th Cir. 2011) where court held it was error not to grant leave to amend where homeowners proffered expert report distinguishing effects of developer-defendants' actions from general economic influences).

from harm that is about to occur.[21]

### 3. *Lexmark* Supports Plaintiff's Standing

Contrary to HSBC's position, nothing in *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377 (2014), or *Thompson v. N. Am. Stainless, L.P.*, 131 S.Ct. 863 (2011), abrogated the Supreme Court's prior holdings in *Gladstone*, *Havens*, or *Trafficante*, requiring an aggrieved municipality to meet only the minimal Article III standing requirements to maintain an FHA claim. *Havens*, 455 U.S. at 372; *Gladstone*, 441 U.S. at 110; *Trafficante*, 409 U.S. at 209 (stating that the language of the FHA is "broad and inclusive and that Congress intended to define standing as broadly as permitted by Article III"). In fact, in two recent post-*Lexmark* decisions addressing this precise issue, federal district courts for the Central District of California found wholly unpersuasive the same "zone of interest" argument made by the Defendants here. *See Wells Fargo*, 2014 WL 2206368 at *7 ("Since the Court has already found that the city has adequately alleged Article III standing [for both economic and non-economic injury], the City's alleged injuries fall within the FHA's zone of interests"); *Bank of America Corp.*, 2014 WL 2770083 at *8 ("based on current precedent, to establish standing to bring a claim under FHA, a plaintiff is only required to satisfy Article III").

Second, even if this Court could possibly find that Plaintiff's Article III standing alone is insufficient, *Lexmark* held that the zone-of-interests test is not "especially demanding," that it "forecloses suit *only* when a plaintiff's interests are *so marginally related to or inconsistent with*

---

[21] The statutory language of the FHA reflects the wide discretion courts have under the FHA in fashioning any award of "actual and punitive damages," "injunctive relief," and/or "attorneys fees" to address any discriminatory housing practice a court determines "has occurred *or is about to occur*." 42 U.S.C. § 3613(c)(1) & (2) (emphasis added). Thus, the identification of specific property addresses cannot be necessary to establish traceability to satisfy Article III standing if courts have the authority to grant injunctive relief for a discriminatory housing practice that is "about to occur." *See, e.g., HUD v. Blackwell*, 908 F.2d 864, 872-73 (11th Cir. 1990); *Options Ctr. For Indep. Living v. G&V Dev. Co.*, 229 F.R.D. 149, 152 (C.D. Ill. 2005) (recognizing valid claims for non-economic injury).

***the purposes implicit in the statute*** that it cannot reasonably be assumed that" Congress authorized the plaintiff to sue, and that the benefit of any doubt must go to the plaintiff. 134 S.Ct. at 1389 (emphasis added). Thus, when applied here, the zone of interest test affirmatively supports Plaintiff's standing and lays bare HSBC's assertion that Plaintiff falls within the FHA's zone of interest only where Plaintiff either alleges "denial of the benefit of integrated housing" or direct discrimination against itself. HSBC Memo at 14-15, 16.[22]

Plaintiff also has alleged proximate causation sufficient to defeat HSBC's standing argument. To show proximate causation for an FHA claim in the Seventh Circuit, a plaintiff need only show that its injury is the "direct result" of the defendant's alleged discriminatory practice. *See U.S. v. Valistrieri*, 981 F.2d 916, 933 (7th Cir. 1992) (upholding award of damages for distress or mental anguish to plaintiff "testers," who never actually suffered a denial of integrated living, because their injuries were "direct result" of defendant's violation of the FHA). Importantly, Plaintiff is not seeking to "assert claims under the guise of another's FHA rights." *See DT Apt. Grp., LP v. CWCapital, LLC*, 2012 WL 6693192 at *16 (N.D. Tex. 2012). Defendants miss the point entirely because the County's injuries are separate and distinct from the borrowers' injuries, are not merely "collateral," and they flow directly in an unbroken chain of causation from HSBC's discriminatory housing practices.[23] Indeed, contrary to HSBC's

---

[22] Congress' establishment of a very broad zone of interest to fulfill the FHA's remedial purpose is clear from the operative provisions of the statute itself. The FHA defines an "aggrieved person" as "***any person who claims*** to have been injured by ***a discriminatory housing practice***; ***or believes*** that such person ***will be injured*** by a discriminatory housing practice ***that is about to occur***." 42 U.S.C. §3602(i) (emphasis added). Congress broadly defined a "discriminatory housing practice" as "an act that is unlawful under section 3604, 3605, 3606, or 3617 of this title." 42 U.S.C. §3602(f). Plaintiff affirmatively alleges that it is an "aggrieved person" under the FHA. Cmplt., ¶30. As an aggrieved person, Cook County is explicitly authorized to seek a broad range of remedies including actual and punitive damages, attorneys' fees and injunctive relief, including for injuries from HSBC's discriminatory housing practices that have occurred or are "about to occur." 42 U.S.C. §3613(a) & (c).

[23] HSBC's reliance on *Thompson, supra,* is both misplaced and misleading. The Supreme Court there limited its holding to a Title VII employment discrimination suit, not a suit under Title VIII, such as an

mischaracterization of the Complaint, Plaintiff explicitly alleges that HSBC's scheme has had segregative and discriminatory effects, including blight in Cook County, establishing the causation element.[24] Cmplt., ¶¶ 5, 133-139, 248-258, 285 & 311.

HSBC's entire standing argument, at best, lacks merit and therefore should be summarily dispensed with by this Court.

## C.   The County States A Valid FHA Claim

The purpose of the Complaint, consistent with Federal Rule 8, is to fairly put HSBC on notice of the County's claim, which the County has done. *See, e.g., Bank of America*, 2014 WL 2770083 at *6-7; *Citigroup, Inc.*, 2014 WL 2571558 at *8; *Wells Fargo*, 2014 WL 2206368 at *4-5; *DeKalb Cty.*, 2013 WL 7874104 at *7. Here, HSBC's Rule 12(b)(6) motion challenges the sufficiency of the Complaint on the ground that the allegations do not establish a claim on which relief may be granted. *See, e.g., Engel v. Buchan*, 710 F.3d 698, 709 (7th Cir. 2013). Although a threadbare recital of the elements of a cause of action will not do, "legal conclusions can provide

---

FHA claim. *Thompson*, 131 S.Ct. at 870. Moreover, Defendants failed to apprise this Court of other decisions explicitly finding that *Thompson* does not preclude standing in FHA cases. *See, e.g., Equal Rights Ctr. v. Post Prop's, Inc.*, 633 F.3d 1136, 1138 (D.C. Cir. 2011); *Mazzocchi v. Windsor Owners Corp.*, 2012 WL 3288240 at *6 (S.D.N.Y. Aug. 6, 2012); *Levy v. Trent Motel Assoc., L.P.*, 2011 WL 3903647 (E.D. Pa. Aug. 26, 2011); *Equal Rights Ctr. v. Equity Res.*, 788 F. Supp. 2d 707 (D. Md. 2011). Second, although the court in *Hous. Opp. Proj. for Excellence, Inc. v. Wedgewood Condo. Ass'n, Inc.*, 2012 WL 4193969 (S.D. Fla., Sept. 19, 2012) applied *Thompson* to individual FHA plaintiffs (and found that they had standing because "aggrieved persons" under the FHA encompasses "more than merely the persons who are the object of discriminatory housing practices . . . [if] they could show they had suffered an injury because of the discriminatory practice"), the court did not apply Thompson to an organization that brought suit under the FHA "because the case law makes clear that it has standing to file suit for HSBC's violations of the Federal Fair Housing Act." *Id.* at *4 (citing *Havens*, 455 U.S. at 379).

[24] Increased urban blight and decay, caused by the explosion of foreclosures and vacancies, is widely recognized as leading to "white flight," thereby in turn further segregating affected communities and neighborhoods. *See, e.g., Laufman v. Oakley Bldg. & Loan Co.*, 408 F. Supp. 489, 497 (S.D. Ohio 1976) (discussing problems of residential housing segregation, racial slum formation, redlining and the interplay of "white flight" including "barriers to occupancy" such as "higher mortgage interest rates"); *DeKalb*, 2013 WL 7874104 at *16 (concluding that plaintiffs' complaint alleging injury of blight gives rise to a fair inference of causation….").

the framework of a complaint so long as they are supported by factual allegations." *Id.* (quoting

*Iqbal v. Twombly*, 556 U.S. 662, 679 (2009)). A plaintiff need not plead its evidence or even

allege specific facts, *see, e.g., Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Instead, the complaint

will survive so long as it contains "enough facts to raise a reasonable expectation that discovery

will reveal evidence" supporting the complaint's allegations. *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 556 (2007). In ruling on a motion to dismiss, the Court must accept the Complaint's

factual allegations as true. *See, e.g., Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

### 1. HSBC Does Not Challenge the County's Direct Targeting Claim

Defendants' motion to dismiss fails because HSBC does not challenge the extensive

allegations in the Complaint demonstrating that HSBC ***intentionally targeted*** minority borrowers

in Plaintiff's communities for predatory mortgage loans. Cmplt., ¶¶64, 68-70, 73 & 75-99. The

FHA indisputably permits "aggrieved persons" to bring private civil actions on the basis of

intentional discrimination in residential real estate related transactions in violation of 42 U.S.C.

§3605. 42 U.S.C. §3613; *see e.g., Whitley v. Taylor Bean & Whitacker Mortgage Corp.*, 607 F.

Supp. 2d 885, 901 (N.D. Ill. 2009) (Castillo, R.); *Martinez v. Freedom Mortgage Team, Inc.*, 527

F. Supp. 2d 827, 834-35 (N.D. Ill. 2007) (Shadur, J.).

### 2. The FHA Permits Claims Alleging Disparate Impact

HSBC concedes the fallacy of its own argument that disparate impact claims are "not

permitted under the FHA," HSBC Memo. 18, by admitting that "the Seventh Circuit has held

that the FHA permits disparate impact claims…." HSBC Memo at 18, n.16 (citing *Metro.*

*Housing Dev. Corp. v. Vill. of Arlington Heights*, 558 F.2d 1283, 1290 (7th Cir. 1977)). To evade

that binding precedent, HSBC mis-analogizes to a case interpreting the Age Discrimination in

Employment Act. *See* HSBC Memo. 18 (citing *Smith v. City of Jackson*, 544 U.S. 228 (2005)).

But the ADEA and the FHA address different evils and operate in different contexts; accordingly, whatever a plaintiff must prove in an ADEA claim, and whatever the appropriate defenses might be, this claim must be analyzed under the statute governing it.[25] Thus, HSBC's reliance on *Smith* should be of no moment. And even if it were, this Court has no authority to overlook Seventh Circuit precedent. *See, e.g., U.S. v. Glaser*, 14 F.3d 1213, 1216 (7th Cir. 1994). As HSBC admits, judges in this district have rightly adhered, post-*Smith*, to the Seventh Circuit's holding that claims based on disparate impact are actionable under the FHA. *See* HSBC Memo. 18, n.16 (citing *Zamudio v. HSBC N. Am. Holdings, Inc.*, 2008 WL 517138 (N.D. Ill. 2008) (Norgle, J.) (rejecting this exact same argument); *Hoffman v. Option One Mortg. Corp.*, 589 F. Supp. 2d 1099 (N.D. Ill. 2008) (Bucklo, J.) (same; collecting cases)).

### 3. The Complaint States An FHA Claim Based On Disparate Impact

A plaintiff proceeding on a disparate-impact theory states a valid disparate impact claim by identifying a facially race-neutral practice that disproportionately visited adverse effects on racial minorities. *See, e.g., Smith*, 544 U.S. at 241-43; *Daveri Dev. Grp., LLC v. Vill. of Wheeling*, 934 F.Supp. 2d 987, 1002 (N.D. Ill. 2013) (Lee, J.). The Complaint here alleges a variety of practices that, depending upon how implemented and the intent of the Defendants, can also be facially race-neutral.[26] The Complaint further alleges that each of these policies had

---

[25] The court in *Smith* relied heavily on legislative history in interpreting the ADEA, *see, e.g.*, 544 U.S. at 232, 238, 240-41 (referencing the Wirtz Report). The FHA's legislative history is plainly different, and that alone distinguishes *Smith*. Moreover, the agency vested with rule-making authority for the FHA, *see* 42 U.S.C. §3614a, interprets it to prohibit discriminatory effects, 24 C.F.R. § 100.500, and courts owe deference to that reasonable interpretation. *See, e.g., Smith*, 544 U.S. at 243 (Scalia, J., concurring) ("This is an absolutely classic case for deference to agency interpretation."). For these reasons, the textual links HSBC attempts to draw, *see* HSBC Memo. 18, are misplaced.

[26] These include: (1) equity-stripping, in which HSBC would issue loans based on the value of the real-estate asset collateralizing the loan irrespective of the borrower's ability to repay, Cmplt. ¶¶ 7, 12, 13, 72, 89, 111, 132 & 171; (2) a policy of steering credit-worthy borrowers to more costly loans, Cmplt. ¶¶ 7, 58, 97, 131, 173, 235-36, 318 & 238; (3) a discretionary-pricing policy, under which HSBC encouraged its employees and agents to arbitrarily impose fees and costs against its borrowers, Cmplt. ¶¶ 97-113,

discriminatory effects.[27] *See, e.g.,* Cmplt. ¶¶ 75, 97, 113, 119, 127, 133-139, 244-258. And, even though Plaintiff need not plead evidence, the Complaint alleges empirical data showing the discriminatory effects. *See, e.g.,* Cmplt. ¶¶133-40. Finally, the Complaint alleges that non-racial factors cannot account for the disproportionate effect on minorities. *See, e.g.,* Cmplt. ¶¶51, 52, 56. In light of these allegations, the Complaint alleges "enough facts to raise a reasonable expectation that discovery will reveal evidence" supporting an FHA claim based on a disparate-impact theory. *Bell Atlantic Corp.*, 550 U.S. at 556.[28] Indeed, numerous courts have recognized as much — an allegation that a lender's facially race-neutral practice caused discriminatory effects is sufficient to state a claim for relief under the FHA. *See, e.g., Bank of America*, 2014 WL 2770083 at *10-11; *Citigroup*, 2014 WL 2571558 at *10-11; *Wells Fargo*, 2014 WL 2206368 at *10. *DeKalb Cnty.*, 2013 WL 7874104 at *12-16; *City of Memphis*, 2011 WL 1706756 *11-15.

---

173-174; and (4) underwriting, appraisal, and override policies that encouraged the issuance of loans to borrowers who would not be able to repay their loans, Cmplt. ¶¶ 97-98, 114-32, 154, 158-69 & 173-74.

[27] HSBC's claim that the Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011), somehow renders HSBC's "discretionary pricing policy" non-discriminatory, HSBC Memo at 18, misconstrues that case and the allegations in the Complaint. The County's allegation is that HSBC "expressly authorized and encouraged" the imposition of arbitrary fees against borrowers, and that this practice had discriminatory effects even though it could be facially race-neutral. Cmplt. ¶¶ 101-02. That is profoundly different from a claim that a company vested its employees with too much discretion, and that the employees exercised their discretion in a discriminatory way. *See Dukes*, 131 S.Ct. at 2554. Regardless, *Dukes* turned on commonality for class certification, not the viability of an individual claim; indeed, *Dukes* reaffirms that "in appropriate cases, giving discretion to lower-level supervisors can be the basis of Title VII liability under a disparate-impact theory…." *Id.*

[28] We note that the Seventh Circuit has identified four factors for courts to consider in assessing disparate-impact-theory claims. *See Metro. Housing Dev. Corp.*, 558 F.2d at 1290 ("(1) how strong is the plaintiff's showing of discriminatory effect; (2) is there some evidence of discriminatory intent, though not enough to satisfy the constitutional standard of *Washington v. Davis*; (3) what is the defendant's interest in taking the action complained of; and (4) does the plaintiff seek to compel the defendant to affirmatively provide housing for members of minority groups or merely to restrain the defendant from interfering with individual property owners who wish to provide such housing."). We have not addressed these factors because they probe the sufficiency of the evidence, and cannot be applied at this stage of proceedings. *See, e.g., id.* (applying these factors after a trial on the merits); *Daveri*, 934 F.Supp.2d 987 (applying these factors after an evidentiary hearing).

#### 4. The Complaint States An FHA Claim Based On Disparate Treatment

The Complaint also states an FHA claim based on a disparate-treatment theory. "Disparate treatment involves a showing of intentional discrimination, provable via either direct or circumstantial evidence." *Daveri*, 934 F.Supp. 2d at 997 (quoting *Nikolich v. Vill. of Arlington Heights*, 870 F.Supp.2d 556, 562 (N.D. Ill. 2012) (Shadur, J.)). Here the Complaint alleges in great detail that HSBC deliberately targeted minorities and minority communities, including through reverse redlining, for subprime and high cost mortgage loans and explains mechanisms to do so. *See, e.g.,* Cmplt. ¶¶ 42-61, 75-98, 133-139, 323. The Complaint further alleges that HSBC disproportionately originated and funded these loan products with minority borrowers. *See, e.g.,* Cmplt. ¶¶ 75-98, 235-243, 244-258. It is firmly established that such practices, including reverse-redlining, constitute disparate treatment and support an FHA claim. *See, e.g., City of Memphis*, 2011 WL 1706756, n. 56 (collecting and citing 11 supporting cases).[29]

#### D. HSBC's Nationwide Equity-Stripping Scheme Precludes Dismissal of Any Defendant

Defendants essentially argue that only the entities that "originated" mortgage loans are proper party defendants, relying on an affidavit identifying those HSBC entities that "originated" mortgage loans in Cook County. HSBC Memo at 19-20, n.19. Once again Defendants blatantly ignore the charging allegations of the Complaint to support their argument.

The Complaint alleges a nationwide equity-stripping scheme involving much more than just mortgage loan "originations" and, therefore, necessarily involves the numerous HSBC

---

[29] Contrary to HSBC's assertion that the "County does not allege that similarly situated borrowers received dissimilar treatment," HSBC Memo at 19, note 17, the Complaint is chock full of such allegations comparing the treatment of, and impact on, minorities to similarly situated Caucasian borrowers. *See, e.g.,* Cmplt. ¶¶51, 74, 109, 112, 131, 173, 235, 286, 314-317.

entities under common control and ownership to conduct the scheme.[30] Plaintiff identifies the various parent-subsidiary relationships among the Defendants, Cmplt. ¶¶31-39, and alleges that Defendants operated as a common enterprise, Cmplt. ¶¶40, 313.  Moreover, the Complaint alleges that, in the context of HSBC's federally regulated, bank holding company structure, Defendants are subject to "safety and soundness" regulations to ensure compliance with federal lending and housing laws throughout their mortgage lending and servicing operations and to ensure the adequacy of HSBC's internal control and compliance mechanisms and management information and risk monitoring systems. Cmplt. ¶¶ 182-84.  At this stage of the litigation, these allegations provide adequate notice of Cook County's claims to each of the named HSBC defendants under Federal Rule 8(b).[31] *See, e.g., Citigroup*, 2014 WL 2571558 at *13; *Wells Fargo*, 2014 WL 2206368 at *12.

## CONCLUSION

For all the foregoing reasons, HSBC's 12(b) motion to dismiss should be denied.

Dated:  July 3, 2014

ANITA ALVAREZ,
STATE'S ATTORNEY FOR COOK COUNTY

---

[30] Thus, the Complaint includes the HSBC entities that also: (1) centrally established, approved and distributed HSBC's corporate mortgage loan terms, mortgage lending, pricing and underwriting policies and practices, and its related employee and broker compensation schemes. Cmplt. ¶¶16, 262, 271; (2) enabled concealment of HSBC's lending patterns from its regulators through transfers and distribution of mortgage loan applications among HSBC's regulated and non-regulated entities. Cmplt. ¶¶16, 181-187, 193-194; (3) knowingly funded and purchased predatory and discriminatory mortgage loans, including through HSBC's wholesale lending channels and network of mortgage brokers. Cmplt. ¶¶191-192; (4) packaged, securitized and sold pools of predatory and discriminatory mortgage loans it originated, funded and purchased Cmplt. ¶¶206-220; and (5) serviced the predatory and discriminatory mortgage loans it originated, funded and purchased. Cmplt. ¶¶259-81.

[31] For Defendants even to suggest that these entities should be dismissed "under Rule 56," *see* HSBC Memo at 19, n.19, is inappropriate at this point in the proceeding where Plaintiff has not had any opportunity to conduct any discovery as to the precise role, knowledge and control structures of each HSBC defendant entity involved in their alleged scheme. Rule 56(d). HSBC's "summary judgment" motion on this issue therefore should be denied.

By:    /s/ Daniel A. Dailey
           Special Assistant State's Attorney

James D. Montgomery, Sr.
jmontgomery@jdmlaw.com
James D. Montgomery, Jr.
james2@jdmlaw.com
John K. Kennedy
jkennedy@jdmlaw.com
Daniel A. Dailey
ddailey@jdmlaw.com
JAMES D. MONTGOMERY &
ASSOCIATES, LTD.
One North LaSalle Street
Suite 2450
Chicago, Illinois 60602
Phone: (312)977-0200
Fax: (312)977-0209

James M. Evangelista (admitted *pro hac vice*)
jim@hpllegal.com
Jeffrey R. Harris (admitted *pro hac vice*)
jeff@hpllegal.com
Darren W. Penn (admitted *pro hac vice*)
darren@hpllegal.com
David J. Worley (admitted *pro hac vice*)
david@hpllegal.com
HARRIS PENN LOWRY LLP
400 Colony Square, Suite 900
1201 Peachtree Street, NE
Atlanta, GA  30361
Phone: (404)961-7650
Fax: (404)961-7651

*Special Assistant State's Attorneys*

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I served the above and foregoing PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS on all parties by causing a true and correct copy to be filed with the court's electronic filing system, which should automatically send a copy to all counsel of record.

Dated:  July 3, 2014 /s/ Daniel A. Dailey
Daniel A. Dailey