**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

COUNTY OF COOK,

        Plaintiff,

v.

HSBC NORTH AMERICA HOLDINGS INC.,
ET AL.,

        Defendants.

Case No.:     1:14-cv-2031

District Judge John Z. Lee

Magistrate Judge Sheila M. Finnegan

**<u>REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

Page(s)

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 3

I. THE COUNTY'S CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS. ......... 3

    A. The County's Claim Is Untimely On Its Face. ............................................................. 3

    B. The County Concedes That The Continuing Violation Doctrine Does Not Apply. ..... 5

II. THE COUNTY DOES NOT HAVE STANDING. ............................................................. 8

    A. The County Does Not Have Standing Under Article III. .............................................. 8

    B. The County Does Not Have Statutory Standing Under *Lexmark*. ............................. 11

III. THE COUNTY HAS NOT STATED A CLAIM FOR RELIEF. .................................... 13

    A. The County Has Not Pled A Disparate Treatment Claim ........................................... 13

    B. The County Has Not Pled A Disparate Impact Claim ................................................ 14

IV. NON-ORIGINATING ENTITIES SHOULD BE DISMISSED. ..................................... 15

CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Wright*,
    468 U.S. 737 (1984) ................................................................................. 8

*Alschuler v. Dep't of Hous. & Urban Dev.*,
    686 F.2d 472 (7th Cir. Ill. 1982) ............................................................ 11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................... 10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................... 10

*City of Birmingham v. Citigroup Inc.*,
    No. CV-09-BE-467-S, 2009 U.S. Dist. LEXIS 123123 (N.D. Ala. Aug. 19, 2009) ................. 8

*City of Los Angeles v. Bank of Am. Corp.*,
    No. CV 13-9046 PA (AGRx), 2014 U.S. Dist. LEXIS 85957 (C.D. Cal. June 12, 2014) . 6, 7, 10-11

*City of Los Angeles v. Citigroup Inc.*,
    No. 2:13-cv-9009-ODW(RZx), 2014 U.S. Dist. LEXIS 79684 (C.D. Cal. June 9, 2014) . 5, 6, 7, 10

*City of Los Angeles v. Wells Fargo & Co.*,
    No. 2:13-cv-9007-ODW(RZx), 2014 U.S. Dist. LEXIS 72818 (C.D. Ca. May 28, 2014) .... 6, 7, 10

*City of Memphis v. Wells Fargo Bank, N.A.*,
    No. 09-02857-STA, 2011 U.S. Dist. LEXIS 48522 (W.D. Tenn. May 4, 2011) .............. 10, 14

*City of Miami v. Bank of Am. Corp.*,
    No. 1:13-cv-24506-WPD (S.D. Fla. July 9, 2014) .......................................... passim

*City of Miami v. Wells Fargo & Co.*,
    No. 1:13-cv-24508-WPD (S.D. Fla. July 9, 2014) ....................................... 2, 8, 11

*City of Miami v. Citigroup Inc.*,
    No. 1:13-cv-24510-WPD (S.D. Fla. July 9, 2014) ...................................... 2-3, 8, 11

*Daveri Dev. Grp., LLC v. Vill. of Wheeling*,
    934 F. Supp. 2d 987 (N.D. Ill. 2013) ...................................................... 14

*DeKalb Cnty. v. HSBC N. Am. Holdings*,
    No. 1:12-cv-03640-SCJ, 2013 U.S. Dist. LEXIS 185976 (N.D. Ga. Sept. 24, 2013) ....... passim

*Douglas v. Cal. Dep't of Youth Auth.*,
    271 F.3d 812 (9th Cir. 2001) ........................................................................ 7-8

*EEOC v. Chi. Miniature Lamp Works*,
    947 F.2d 292 (7th Cir. 1991) ........................................................................ 13

*Estate of Davis v. Wells Fargo Bank*,
    633 F.3d 529 (7th Cir. 2011) ...................................................................... 4, 5

*Fair Hous. Council, Inc. v. Vill. of Olde St. Andrews*,
    210 F. App'x 469 (6th Cir. 2006) ................................................................... 4

*Federer v. Midland Mortg. Co.*,
    No. 1:12-cv-2492-TWT, 2012 U.S. Dist. LEXIS 166188 (N.D. Ga. Nov. 21, 2012) ............... 5

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (U.S. 1982) ............................................................................... 4

*Jafri ex rel. Madigan v. Chandler LLC*,
    970 F. Supp. 2d 852 (N.D. Ill. 2013) ............................................................... 4

*Jorman v. Veterans Admin.*,
    500 F. Supp. 460 (N.D. Ill. 1980) ................................................................. 12

*Keri v. Bd. of Trs. of Purdue Univ.*,
    458 F.3d 620 (7th Cir. 2006) ......................................................................... 6

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    134 S. Ct. 1377 (2014) ............................................................................ 2, 11

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ............................................................................... 8, 10

*Mayor of Baltimore v. Wells Fargo Bank, N.A.*,
    677 F. Supp. 2d 847 (2010) ........................................................................... 9

*Mayor of Baltimore v. Wells Fargo Bank, N.A.*,
    No. JFM-08-62, 2011 U.S. Dist. LEXIS 44013 (D. Md. Apr. 22, 2011) .......................... 2, 9

*Mayor of Baltimore v. Wells Fargo Bank, N.A.*,
    No. JFM-08-62, 2011 U.S. Dist. LEXIS 111248 (D. Md. Sept. 28, 2011) ......................... 9

*MCI WorldCom Network Servs., Inc. v. Atlas Excavating, Inc.*,
    No. 02 C 4394, 2006 U.S. Dist. LEXIS 88956 (N.D. Ill. Dec. 6, 2006) ....................... 5-6

*Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights*,
 558 F.2d 1283 (7th Cir. 1977) ............................................................. 12

*Moskowitz v. Trs. of Purdue Univ.*,
 5 F.3d 279 (7th Cir. 1993) ................................................................... 8

*Nasser v. Homewood*,
 671 F. 2d 432 (11th Cir. 1982) ............................................................ 11

*Savory v. Lyons*,
 469 F.3d 667 (7th Cir. 2006) ............................................................... 7

*Simovits v. Chanticleer Condo. Ass'n*,
 933 F. Supp. 1394 (N.D. Ill. 1996) ..................................................... 4

*Trafficante v. Metro. Life Ins. Co.*,
 409 U.S. 205 (1972) ............................................................................ 12

*United States v. Midwest Generation, LLC*,
 720 F.3d 644 (7th Cir. 2013) ............................................................... 4

*Wallace v. Chi. Hous. Auth.*,
 321 F. Supp. 2d 968 (N.D. Ill. 2004) .................................................. 4

*Wards Cove Packing Co. v. Antonio*,
 490 U.S. 642 (1989) ............................................................................ 14

*Whisby-Myers v. Kiekenapp*,
 293 F. Supp. 2d 845 (N.D. Ill. 2003) .................................................. 11

*Wis. Right to Life, Inc. v. Schober*,
 366 F.3d 485 (7th Cir. 2004) ............................................................... 8

**Statutes**

42 U.S.C. § 3601 ..................................................................................... 12
42 U.S.C. § 3613(a)(1)(A) ...................................................................... 1

## INTRODUCTION

The County's argument in opposition to HSBC's Motion to Dismiss misrepresents applicable law at the core of this case and does not meaningfully address the two principal deficiencies in the Amended Complaint ("Complaint" or "FAC"). *First*, the allegations in the Complaint are based on mortgage loans originated between 2003 and 2007, yet the County did not file its claim under the Fair Housing Act ("FHA") until 2014. The FHA imposes a two-year statute of limitations, 42 U.S.C. § 3613(a)(1)(A). The parties agree that the continuing violation doctrine does not apply. Indeed, the County expressly disavows its applicability, asserting that the continuing violation doctrine is "essentially irrelevant" in view of allegations that a violation is "continuing" through a "scheme" that will not conclude until the last "loan made as part of the scheme is repaid and closed, or is foreclosed upon." (Opp'n 3, 4.) It is well-settled, however, that a claim filed under the FHA more than two years after an allegedly discriminatory loan was originated is untimely. (Mot. 5.) A cause of action for discriminatory lending simply does not exist for the life of the loan. Moreover, even if the County had sought to rely on the continuing violation doctrine, it would not apply because the County was aware of the facts forming the basis of its claim for years outside the limitations period.

*Second*, the County fails to meet its Article III obligation to identify the properties secured by allegedly discriminatory loans that defaulted and resulted in injury to the County. (*Id.* at 10-12.) The County instead argues that it can satisfy Article III's standing requirement without pleading a particularized injury fairly traceable to Defendants' conduct. (Opp'n 6.) However, the United States Supreme Court, the Seventh Circuit, and courts throughout the federal judiciary considering similar cases have been clear that a particularized and traceable injury must be pled. Indeed, even the recent Central District of California decisions on which the County relies, which allowed cases against three lenders to proceed past motions to dismiss,

1

specifically noted that the City of Los Angeles collectively identified more than 5,000 properties.

The County here identifies zero.  And while the County states that a court in the Northern

District of Georgia will "allow" plaintiffs represented by the same counsel of record to amend

their virtually identical complaint to identify properties, in fact the court *required* them to do so.

With the same lack of candor, the County represents that a court in the District of Maryland

allowed a similar case to proceed once plaintiffs had sufficiently pled allegations "like . . . intent

and knowledge." (*Id.* at 10.)  In fact, the adequacy of allegations "like intent and knowledge"

were never at issue the first two times the court dismissed that case, and the court allowed it to

proceed only after plaintiffs amended their complaint to both (i) identify alleged injury-causing

properties and (ii) allege that such properties would have been occupied (and therefore would not

have caused injury) but for the alleged wrongful lending practices. *See Mayor of Baltimore v.*

*Wells Fargo Bank, N.A.*, No. JFM-08-62, 2011 U.S. Dist. LEXIS 44013, at *3 (D. Md. Apr. 22,

2011).  Without any alleged injury locations, the County cannot even begin to establish the fairly

traceable causal chain to connect its damages to HSBC's alleged misconduct.

The County's claim is so marginally related to the FHA that it also does not have

statutory standing to sue under the standard recently clarified in *Lexmark Int'l, Inc. v. Static*

*Control Components, Inc.*, 134 S. Ct. 1377 (2014).  The County's purely economic injury is

outside the zone of interest of the FHA, and is neither alleged to have been nor could have been

proximately caused by Defendants' conduct.  (Mot. 13-16.)  Just over one week ago, a federal

district court dismissed with prejudice claims filed by the City of Miami against lenders based on

a virtually identical theory of liability for this principal reason.[1]  The FHA protects victims of

---

[1] *See* Order Granting Motion to Dismiss, *City of Miami v. Bank of Am. Corp.*, No. 1:13-cv-24506-WPD
(S.D. Fla. July 9, 2014), ECF No. 71 (attached as Ex. A); Order Granting Motion to Dismiss, *City of*
*Miami v. Wells Fargo & Co.*, No. 1:13-cv-24508-WPD (S.D. Fla. July 9, 2014), ECF No. 49  (attached as
Ex. B.) (incorporating by reference reasoning in *City of Miami v. Bank of Am. Corp.*); Order Granting

discrimination in housing transactions and integration in housing patterns, not the County's tax receipts and budgets for government services. In addition, innumerable intervening forces disrupt the County's attenuated theory of causation, including divorce, job loss, an economic downturn, criminals, bad weather, and—as the County alleges more than 20 times in the Complaint itself—the conduct of "other industry participants." (*See* FAC ¶¶ 4, 11, 19, 176, 178-80, 196, 200, 213, 223, 231, 237, 249, 267, 250, 282, 298.)

As to the remaining arguments set forth in HSBC's Motion to Dismiss, the County clings to bare minimum pleading standards and citations to its own Complaint. (Opp'n 15-19.) The County has not pled a disparate treatment claim under the FHA because it has not alleged that the Defendants acted with racial animus (Mot. 19), and has not pled a disparate impact claim because it has not alleged that Defendants had a specific policy or practice, other than general business operations, that resulted in discrimination (*Id.* at 18). Finally, the County has not pled a claim under the FHA against five of the named Defendants because they did not originate mortgage loans (and are not alleged to have done so), and the County has not alleged the relevant requirements for veil-piercing. (*Id.* at 19.) For all of these reasons, the County's untimely and deficient claim should be dismissed with prejudice.

## ARGUMENT

## I. THE COUNTY'S CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS.

### A. The County's Claim Is Untimely On Its Face.

The Complaint itself shows that the County's claim is untimely because it was filed in 2014 and is based on allegedly discriminatory mortgages originated between 2003 and 2007

---

Motion to Dismiss, *City of Miami v. Citigroup Inc.*, No. 1:13-cv-24510-WPD (S.D. Fla. July 9, 2014), ECF No. 64 (attached as Ex. C) (same).

(FAC ¶¶ 8-9, 17, 22, 45, 57, 135, 142, 185, 190, 216-17, 221, 242, 255-56, 302.)[2]  In an effort to

resurrect the claim, the County asserts that the statute of limitations has not begun to run because

of a purported "scheme" that "will continue well into the future," and that it will not begin to run

until the last loan "made as part of the scheme is repaid and closed, or is foreclosed upon."

(Opp'n 2, 3.)   In other words, the County's position is that a complaint based on loans originated

between 2003 and 2007 is just as timely now as it was five years ago, and would be equally

timely in the year 2037 and beyond, so long as at least one borrower continues to make

payments.

This turns the equitable principles underlying statutes of limitations upside down.  The

FHA's statute of limitations is not determined with reference to the life of a loan; it is determined

with reference to the date of origination.  (Mot. 5-6.)[3]  *See Estate of Davis v. Wells Fargo Bank*,

633 F.3d 529, 532 (7th Cir. 2011) (where complaint filed in 2007, "the formation of the

mortgage contract in September 1999 fell outside the statute of limitations" for FHA claim);[4]

---

[2] The County makes the hollow suggestion that "HSBC's alleged discriminatory housing practice clearly is not limited to HSBC's loan 'origination' activity in only '2003 through 2007,'" (Opp'n 6 n.12), but does not allege in the Complaint that HSBC originated any allegedly discriminatory loans after 2007.

[3] None of the authority cited by the County holds that the FHA's statute of limitations does not begin to run until a loan is foreclosed or paid in full.  Instead, the cases cited by the County address the application of the continuing violation doctrine, which the County simultaneously asserts is inapplicable to its claim. *See* Opp'n 3 n.6, citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380-81 (1982) (applying continuing violation doctrine to FHA claim); *Fair Hous. Council, Inc. v. Vill. of Olde St. Andrews*, 210 F. App'x 469, 480 (6th Cir. 2006) (applying continuing violation doctrine to FHA claim and explaining that "[t]he Fair Housing Act specifies that the two year limitations period begins to run at the termination of the alleged act of discrimination. . . . [T]he discriminatory act occurs during the sale or rental of [a housing] unit.  Thus, once a unit has been sold or rented, the discriminatory act is complete."); *Jafri ex rel. Madigan v. Chandler LLC*, 970 F. Supp. 2d 852, 865 (N.D. Ill. 2013) (holding that the complaint was timely on its face and noting that even in the continuing violation context, "enduring consequences of acts that precede the statute of limitations are not independently wrongful") (quoting *United States v. Midwest Generation, LLC*, 720 F.3d 644, 648) (7th Cir. 2013); *Wallace v. Chi. Hous. Auth.*, 321 F. Supp. 2d 968, 971 (N.D. Ill. 2004) (applying the continuing violation doctrine to FHA claim); *Simovits v. Chanticleer Condo. Ass'n*, 933 F. Supp. 1394, 1404 (N.D. Ill. 1996) (applying continuing violation principles from *Havens* to FHA claim).

[4] The County attempts to distinguish *Estate of Davis* on the bases that it involved a single loan and the court found that the continuing violation doctrine did not apply (Opp'n 5 n.11).  These points are not

4

*DeKalb Cnty. v. HSBC N. Am. Holdings*, No. 1:12-cv-03640-SCJ, 2013 U.S. Dist. LEXIS 185976, at *38 (N.D. Ga. Sept. 24, 2013) (where plaintiffs' claim related to mortgages originated between 2003 and 2007 and complaint not filed until 2012, defendants "carried their initial burden of making a showing that the statute of limitations is applicable"); *City of Los Angeles v. Citigroup Inc.*, No. 2:13-cv-9009-ODW(RZx), 2014 U.S. Dist. LEXIS 79684, at *23 (C.D. Cal. June 9, 2014) ("The Complaint was filed on December 5, 2013; thus only loans originating after December 5, 2011, lie within the statute of limitations."); Ex. A, *City of Miami v. Bank of Am. Corp.* at 11 (dismissing complaint as time-barred where there were "no allegations of specific loans in the Complaint that are alleged to have closed in the two years leading up to the date the suit was filed," and explaining that "[a]n FHA claim for extending a discriminatory loan begins to run from the date of the loan closing"); *Federer v. Midland Mortg. Co.*, No. 1:12-cv-2492-TWT, 2012 U.S. Dist. LEXIS 166188, at *8 (N.D. Ga. Nov. 21, 2012) ("Generally, under the FHA, the statute of limitations begins to run on the date the Plaintiff obtains a discriminatory loan.") (citing *Estate of Davis*, 633 F.3d at 532).[5] (Mot. 7-8.)

## B. The County Concedes That The Continuing Violation Doctrine Does Not Apply.

The County appears to rely strictly on its novel theory that a "scheme" alleged to extend in perpetuity is immune to statutes of limitations. *See supra* Sec. I.A. The County abandons the continuing violation doctrine as "essentially irrelevant." (Opp'n 4); *see, e.g.*, *MCI WorldCom*

---

helpful to its argument. If the County were correct that the statute of limitations does not begin to run until a loan is paid off or foreclosed upon, the continuing violation doctrine would have been irrelevant and the claim timely. The district court and Seventh Circuit held that the claim relating to the loan's origination was time-barred.

[5] The County's Opposition also does not address the absence in the Complaint of any allegations of discriminatory servicing (as opposed to poor servicing that would affect all borrowers equally). Even if the County had alleged discriminatory servicing within the limitations period—and it has not (Mot. 6-8)—such *servicing* activity would constitute discrete acts by Defendants separate and apart from the allegedly discriminatory *origination* activity that occurred between 2003 and 2007. (*Id.* at 8 n.7); *Estate of Davis*, 633 F.3d at 539.

*Network Servs., Inc. v. Atlas Excavating, Inc.*, No. 02 C 4394, 2006 U.S. Dist. LEXIS 88956, at

*9-10 (N.D. Ill. Dec. 6, 2006) ("a party's failure to respond to an opposing party's argument

implies concession") (citing *Keri v. Bd. of Trs. of Purdue Univ.*, 458 F.3d 620, 643 n.7 (7th Cir.

2006)).[6]

Instructively, none of the cases based on mortgages originated more than two years

before the filing of a complaint has been allowed to proceed without application of the

continuing violation doctrine. The County points to *DeKalb County* and the *City of Los Angeles*

litigation, asserting that "[t]his case parallels those recent cases such that this Court should

simply deny HSBC's motion." (Opp'n 1.) However, each of those cases avoided dismissal of

otherwise untimely claims *because of* the continuing violation doctrine. *See DeKalb Cnty.*, 2013

U.S. Dist. LEXIS 185976, at *38, 47 (holding that defendants had "carried their initial burden of

making a showing that the statute of limitations is applicable," but ordering limited discovery

regarding the timing of plaintiff's knowledge to evaluate the applicability of the continuing

violation doctrine); *City of Los Angeles v. Bank of Am. Corp.*, No. CV 13-9046 PA (AGRx),

2014 U.S. Dist. LEXIS 85957, at *27-28 (C.D. Cal. June 12, 2014) ("Plaintiff has sufficiently

alleged that the statute of limitations is met based on a continuing violations theory."); *City of*

*Los Angeles v. Wells Fargo & Co.*, No. 2:13-cv-9007-ODW(RZx), 2014 U.S. Dist. LEXIS

72818, at *24 (C.D. Cal. July 7, 2014) ("the City has not run afoul of the statute of limitations"

because of "the continuing violation doctrine"); *City of Los Angeles v. Citigroup Inc.*, 2014 U.S.

Dist. LEXIS 79684, at *23 (explaining that only loans originated within two years of the

complaint "lie within the statute of limitations," but plaintiff had invoked "the continuing

---

[6] While the County objects to the inclusion of the materials in Appendix A to Defendants' Motion to
Dismiss, (Opp'n 4 n.9), consideration of these materials is no longer necessary as the County has
conceded that the continuing violation doctrine does not apply. Regardless, all materials in Appendix A
are subject to judicial notice and may be considered on a motion to dismiss under Rule 12(b)(6). (Mot. 3
n.2); *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 605 (7th Cir. 2013).

violations doctrine" as to the rest).[7]

Presumably, the County does not invoke the continuing violation doctrine here because discovery would establish—as it did in *DeKalb County*—that the County had knowledge of the facts forming the basis of its claim and communicated with counsel of record regarding its claim more than two years before filing.[8] Courts in this Circuit do not apply the continuing violation doctrine where a plaintiff had awareness of the facts forming the basis for a claim outside of the limitations period. Because the Ninth Circuit has not applied such a requirement, the *City of Los Angeles* cases are unhelpful to the County. *Compare Savory v. Lyons*, 469 F.3d 667, 673 (7th Cir. 2006) (refusing to apply continuing violation doctrine where plaintiff knew of the facts forming the basis of his claim before the limitations period), *with Douglas v. Cal. Dep't of Youth*

---

[7] The County asserts that the court in *DeKalb County* focused on the continuing violation doctrine "without ever determining that the complaint was untimely in the first instance." (Opp'n 5 n.8.) This is not true. The court explicitly held that defendants had "carried their initial burden of showing that the statute of limitations is applicable." *DeKalb Cnty.*, 2013 U.S. Dist. LEXIS 185976, at *38. The court drew that conclusion after observing that "Plaintiffs' allegations relating to discriminatory subprime mortgage lending begin in 2003 and end in 2007. There are no allegations of loans made" within the two years prior to the filing of the complaint. *Id.* The County also asserts that the court in *DeKalb County* "confuse[d]" the continuing violation doctrine with the statute of limitations, and that in turn, the courts' decisions in the *City of Los Angeles* litigation also incorrectly focused on the application of the continuing violation doctrine. (Opp'n 5 n.10.) To the contrary, the confusion is the County's and not the courts'. The plaintiffs in each of those cases—including the *DeKalb County* plaintiffs that are represented by counsel of record in this case—invoked the continuing violation doctrine. *See* Complaint ¶ 330, *DeKalb Cnty.*, No. 1:12-cv-03640-SCJ, ECF No. 1 (allegations constitute "a continuing violation of federal law"); Plaintiffs' Opposition to Motion to Dismiss at 7-8, 10, *id.*, ECF No. 17 (invoking numerous continuing violation cases and arguing that "[e]ven if the continuing violation doctrine somehow could be found not to apply, the doctrine of equitable tolling" applies); Complaint ¶ 196, *City of Los Angeles v. Bank of Am. Corp.*, No. CV 13-9046 PA (AGRx), ECF No. 1; Plaintiff's Opposition to Motion to Dismiss at 1, 12-16, *id.*, ECF No. 36 ("The City's FHA Cause of Action is Timely Because the Continuing Violations Doctrine Applies."); Complaint ¶ 137, *City of Los Angeles v. Citigroup Inc.,* No. 2:13-cv-9009-ODW(RZx), ECF No. 1; Plaintiff's Opposition to Motion to Dismiss at 1, 11-16, *id.*, ECF No. 34 ("The continuing violations doctrine applies."); Complaint ¶ 197, *City of Los Angeles v. Wells Fargo & Co.*, No. 2:13-cv-9007-ODW(RZx), ECF No. 1; Plaintiff's Opposition to Motion to Dismiss at 1, 15-22, *id.*, ECF No. 26 ("[T]he City's FHA cause of action is timely because…the continuing violations doctrine applies….").

[8] *See* Declaration of Duane D. Pritchett, Chief Assistant County Attorney for County of DeKalb, *DeKalb Cnty.*, No. 1:12-cv-03640-SCJ, ECF No. 39-1; Declaration of R. David Ware, County Attorney for County of Fulton, *id.*, ECF No. 39-2; Declaration of Deborah L. Dance, County Attorney for Cobb County, *id.*, ECF No. 39-3.

*Auth.*, 271 F.3d 812, 824 n.13 (9th Cir. 2001) (a notice requirement is not necessary for application of the continuing violation doctrine). Thus, even if the County had not expressly rejected the relevance of the continuing violation doctrine, the law is clear that a plaintiff "may not sit back and accumulate all the discriminatory acts and sue on all within the statutory period applicable to the last one." *Moskowitz v. Trs. of Purdue Univ.*, 5 F.3d 279, 281-282 (7th Cir. 1993).[9]

## II.    THE COUNTY DOES NOT HAVE STANDING.

### A.    The County Does Not Have Standing Under Article III.

The County has not pled a particularized injury that is fairly traceable to Defendants' conduct sufficient to satisfy Article III because the County has not identified a single property where Defendants' alleged unlawful lending practices resulted in harm to the County. (Mot. 10-13); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Allen v. Wright*, 468 U.S. 737, 751 (1984); *Wis. Right to Life, Inc. v. Schober*, 366 F.3d 485, 488 (7th Cir. 2004). As detailed in Defendants' Motion to Dismiss, other courts have dismissed virtually identical cases for failure to identify specific properties. (Mot. 11-13.)

In *City of Birmingham*, the court dismissed the city's claims for lack of standing, explaining that "[t]he loss of tax revenue from property taxes and the increase in spending, like the depreciation in home values, could have been caused by any number of factors having nothing to do with the Defendants' alleged 'reverse redlining.'" *City of Birmingham v. Citigroup Inc.*, No. CV-09-BE-467-S, 2009 U.S. Dist. LEXIS 123123, at *13 (N.D. Ala. Aug. 19, 2009).

---

[9] Even if the County had invoked the continuing violation doctrine, it would not apply here. (Mot. 6-10.) Indeed, the court held in dismissing virtually identical cases brought by the City of Miami that the continuing violation doctrine was inapplicable. *See* Ex. A, *City of Miami v. Bank of Am. Corp.*; Ex. B, *City of Miami v. Wells Fargo & Co.*; Ex. C, *City of Miami v. Citigroup Inc.* Moreover, the holdings in the *City of Los Angeles* cases that the continuing violation doctrine applies are distinguishable because in each of those cases the city also alleged discriminatory mortgage originations *within the limitations period*, while the County's allegations of discriminatory originations here are limited to 2003 through 2007.

The County addresses this holding in a footnote with the unadorned assertion that the court's "legal analysis was inherently flawed." (Opp'n 10 n.19.) It was not. The court carefully applied the requirements of Article III to the facts alleged and held that the city's injury was too attenuated—as the County's is here—to establish standing.

The County also misrepresents the holdings in the *Baltimore* litigation, asserting that that case was allowed to proceed on the third try because the city had amended its complaint to include "factual allegations—like the intent and knowledge allegations already alleged in Cook County's Complaint here—that provided 'the missing causal link.'" (*Id.* at 10.) This is not accurate. The *Baltimore* case was allowed to proceed on the third amended complaint only after the city both identified specific properties alleged to have caused its injury and alleged that they would not have been vacant but for the alleged discriminatory lending practices. *Mayor of Baltimore*, 2011 U.S. Dist. LEXIS 44013, at *3.[10] Indeed, in denying plaintiff's motion to reconsider its order requiring phased discovery (like the court ordered in *DeKalb County*), the court specifically stated that the city's original "systemic claims"—which, like the County's, focused on "generalized damages" rather than specific properties—were "noncognizable" and "not plausible." *See Mayor of Baltimore*, No. JFM-08-62, 2011 U.S. Dist. LEXIS 111248, at *5 (D. Md. Sept. 28, 2011).

---

[10] The County asserts that Defendants failed to disclose the procedural history of the *Baltimore* litigation to the Court. (Opp'n 10 n.19.) To the contrary, the Defendants accurately explained that the case was dismissed twice before being allowed to proceed after plaintiffs amended their complaint to allege specific properties that would not have been vacant but for discriminatory lending practices. (Mot. 12.) The County, in contrast, confuses the history of the *Baltimore* litigation, incorrectly referring to "*Baltimore I, II, and III*." In *Mayor of Baltimore*, a motion to dismiss the original complaint was denied after the city sought leave to file an amended complaint, 631 F. Supp. 2d 702 (2009); the case was then transferred to a different judge who dismissed the first amended complaint, 677 F. Supp. 2d 847 (2010); the second amended complaint also was dismissed, No. JFM-08-62, 2010 U.S. Dist. LEXIS 95812 (D. Md. Sept. 14, 2011); the third amended complaint was allowed to proceed after specific properties were identified that allegedly would not have been vacant but for alleged discriminatory lending practices, 2011 U.S. Dist. LEXIS 44013.

The County also incorrectly states that the court in *DeKalb County* will "allow" plaintiffs to amend their complaint to identify specific properties. (Opp'n 11.) This is not accurate. The court ordered limited discovery and a motion for summary judgment to resolve at the outset whether the complaint is time-barred based on the timing of plaintiffs' knowledge of the facts forming the basis of their claim. *See* Scheduling Order, *DeKalb Cnty.*, No. 1:12-cv-03640-SCJ, ECF No. 38 (attached as Ex. D). Defendants' motion for summary judgment is due in four days. Insofar as the case proceeds, plaintiffs will be *required* to identify specific properties they allege caused them injury. *DeKalb Cnty.*, 2013 U.S. Dist. LEXIS 185976, at *31.

The County further complains that it should not be required to identify specific properties because it has alleged that Defendants sought to conceal property addresses.[11] (Opp'n 11-12.) Other plaintiffs that, like the County, have relied on publicly-available HMDA data and whose theories of liability the County imitates, have not had such difficulty. *See City of Memphis*, No. 09-02857-STA, 2011 U.S. Dist. LEXIS 48522, at *30 (W.D. Tenn. May 4, 2011) (noting that plaintiffs identified specific properties "where allegedly predatory [] loans actually resulted in foreclosures and vacancies"); *City of Los Angeles v. Wells Fargo & Co.*, 2014 U.S. Dist. LEXIS 72818, at *14-15 (observing that plaintiff identified, through publicly available data, 1,447 specific properties alleged to have harmed plaintiff); *City of Los Angeles v. Citigroup Inc*, 2014 U.S. Dist. LEXIS 79684, at *3-4 (observing that plaintiff identified, through publicly available data, 1,200 specific properties alleged to have harmed plaintiff); *City of Los Angeles v. Bank of*

---

[11] The County asserts that it is "virtually impossible" to determine the HSBC loans at issue without discovery. (FAC ¶¶ 201-202.) It is not permissible, however, for a plaintiff to file a complaint against a random industry participant in order to conduct a fishing expedition. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Wagner v. Magellan Health Servs.*, 125 F. Supp. 2d 302, 307 (N.D. Ill. 2000) ("This is the quintessence of a fishing expedition, and cannot defeat a motion to dismiss."). To the contrary, a plaintiff must allege a concrete, particularized injury that is fairly traceable to the defendants named in the action. *See Lujan*, 504 U.S. at 560. The County here fails to meet that standard.

*Am. Corp.*, 2014 U.S. Dist. LEXIS 85957, at *16-17 (complaint identified specific properties and court noted that the distinction between the *Memphis* and *Birmingham* decisions was that the plaintiff in *Memphis* had identified specific properties). Without the identification of allegedly injury-causing properties, the County's theory of liability is a causal chain to nowhere.[12]

### B. The County Does Not Have Statutory Standing Under *Lexmark*.

The County also lacks statutory standing under *Lexmark* because its alleged injury (i) is not within the FHA's "zone of interest," which is limited to persons discriminated against and those denied the benefit of integrated housing, and (ii) was not proximately caused by a violation of the FHA. (Mot. 13-17); *Lexmark*, 134 S. Ct. at 1388. In dismissing with prejudice the *City of Miami* cases last week, the court explained that *City of Los Angeles v. Bank of America*, on which the County relies (Opp'n 13), was not persuasive because, unlike in the Ninth Circuit, controlling Eleventh Circuit precedent applies the zone of interest test to FHA claims. Ex. A., *City of Miami v. Bank of Am. Corp.* at 7 n.2. The same is true in the Seventh Circuit. *See Alschuler v. Dep't of Hous. & Urban Dev.*, 686 F.2d 472, 477 (7th Cir. Ill. 1982) (applying zone of interest test to the FHA); *Whisby-Myers v. Kiekenapp*, 293 F. Supp. 2d 845, 853 (N.D. Ill. 2003). The County argues in opposition that the FHA's zone of interest is broad enough to include all plaintiffs claiming that they are "aggrieved" by a violation. (Opp'n 13-14.)

The court in *City of Miami* explained that the "policy behind the Fair Housing Act emphasizes the prevention of discrimination in the provision of housing," and the city's alleged "economic injury from the reduction in tax revenue . . . [and] expenditures" is not "affected by a racial interest." Ex. A., *City of Miami v. Bank of Am. Corp.* at 8 (citing *Nasser v. Homewood*, 671 F. 2d 432, 437 (11th Cir. 1982)). The law in this Circuit has assumed for nearly 40 years

---

[12] Even if the County had identified properties, its highly attenuated claim would nonetheless fail. Ex. A, *City of Miami v. Bank of Am. Corp.*; Ex. B, *City of Miami v. Wells Fargo & Co.*; Ex. C, *City of Miami v. Citigroup Inc.* (noting that City of Miami identified alleged injury-causing properties).

that interests protected by the FHA have a racial dimension. *See Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights*, 558 F.2d 1283, 1289 (7th Cir. 1977) (the purpose of the FHA is to "promote open, integrated residential housing patterns and to prevent the increase of segregation, in ghettos, of racial groups") (internal citations omitted); *Jorman v. Veterans Admin.*, 500 F. Supp. 460, 464 (N.D. Ill. 1980) ("The purpose of the Fair Housing Act is to provide 'fair housing throughout the United States,' by bringing about 'truly integrated and balanced living patterns.'") (quoting 42 U.S.C. § 3601 and *Trafficante v. Metro. Life Ins. Co*., 409 U.S. 205, 211 (1972)).  Because Miami's "merely economic" injuries, like those alleged here, were not "affected by a racial interest," the court held that the city's claim fell outside the FHA's zone of interest and the city lacked standing to sue.  Ex. A, *City of Miami v. Bank of Am. Corp.* at 8.  A municipal plaintiff with a budget shortfall is not "aggrieved" within the meaning of the FHA by the alleged violation of a hypothetical consumer's civil rights.

The County also has not pled that its alleged injuries were proximately caused by a violation of the FHA.  (Mot. 17.)  While the County admits that it must "show that its injury is the 'direct result' of the defendant's alleged discriminatory practice," (Opp'n 14), its allegations do not satisfy that standard.  As explained by the court in *City of Miami*:

> Plaintiff does not allege facts that isolate Defendants' practices as the cause of any alleged lending disparity.  Against the backdrop of a historic drop in home prices and a global recession, the decisions and actions of third parties, such as loan services, government entities, competing sellers, and uninterested buyers, thwart the City's ability to trace a foreclosure to Defendants' activity.  The independent actions of this multitude of non-parties break the causal chain.

Ex. A at 9-10.  This point is particularly salient here in view of allegations throughout the Complaint that "other industry participants" also caused the foreclosure crisis and the various other harms alleged.  (FAC ¶¶ 4, 11, 19, 176, 178-80, 196, 200, 213, 223, 231, 237, 249, 267, 250, 282, 298.)  The court in the *City of Miami* went on to explain:

> Even if this first step of proximate causation were shown, Plaintiff would then have to complete the causal connection in its claim by demonstrating that the foreclosures caused the City to be harmed. Instead, the City offers vague and generalized allegations of harm, statistics and studies that are either not limited to the City of Miami, not limited to Defendants' practices, or do not control for relevant credit factors that undoubtedly affect lending practices. Although statistical correlations are asserted, they are insufficient to support a causation claim. Moreover, Defendants are not responsible for the actions of intervening actors such as squatters, vandals or criminals that damaged foreclosed properties causing the City's municipal costs to rise.

Ex. A at 10. The same is true of the County's posited causal chain, which is inexorably interrupted by divorce, job loss, illness, and many of the other factors that typically precipitate foreclosures, as well as the criminals, rodents, weather, and other factors that are the actual proximate causes of its economic injury. Moreover, the County has alleged that it is "virtually impossible" to identify the HSBC properties purportedly at issue. (FAC ¶¶ 201-202.). An injury whose location is "virtually impossible" to identify provides an easy definition of one too remote to confer standing under any analysis of proximate causation.

## III.    THE COUNTY HAS NOT STATED A CLAIM FOR RELIEF.

### A.    The County Has Not Pled A Disparate Treatment Claim.

In order to maintain a claim for disparate treatment, the County must allege that HSBC's policies "intended to discriminate." (Mot. 18.); *EEOC v. Chi. Miniature Lamp Works*, 947 F.2d 292, 297, 299 (7th Cir. 1991) ("The disparate treatment model . . . requires an inquiry into the defendant's state of mind . . . [and proof that] the defendant subjectively intended to discriminate . . . on account of a protected trait. . . . Intent means a subjective desire or wish for these discriminatory results to occur.") The County alleges that "Defendants' underwriting policies were designed to . . . maximize the amount of Defendants' revenues," and that the alleged "broad scheme" was intended "to maximize profits." (FAC ¶¶ 115, 322.) In other words, HSBC is accused of subjectively desiring to generate revenue, not to discriminate. (Mot. 18.)

13

The County mistakenly relies on *Daveri Dev. Grp., LLC v. Vill. of Wheeling*, 934 F. Supp. 2d 987 (N.D. Ill. 2013), and *City of Memphis*, 2011 U.S. Dist. LEXIS 48522. (Opp'n at 19.) *Daveri* is inapposite because, unlike the County here, the plaintiffs alleged discriminatory intent. Specifically, the *Daveri* plaintiffs had been denied a zoning permit to construct an apartment building for adults with mental disabilities, and alleged the reason for the permit denial was animus toward disabled persons. 934 F. Supp. 2d at 996. *City of Memphis* also is inapplicable because the adequacy of the disparate treatment claim under relevant pleading standards was not in issue. 2011 U.S. Dist. LEXIS 48522, at *48 n.56. Moreover, while the court cited other cases for the proposition that "the practice of reverse redlining" will support a claim for disparate treatment, *id.*, many of those cases only referred to disparate impact (not disparate treatment), and none considered whether reverse redlining is sufficient to state a disparate treatment claim *when the plaintiff alleges the defendant's motivation was something other than racial animus.*[13]

## B. The County Has Not Pled A Disparate Impact Claim.

The County also has not stated a disparate impact claim because it has not alleged any specific policy or practice resulting in discrimination. (Mot. 18.) The County asserts that it pled three facially neutral policies having discriminatory effects: HSBC utilized appraisals in underwriting, set market rates, and permitted the negotiation of rates and fees. (Opp'n 17 n.26.) These allegations relating to general lending practices do not identify a "specific or particular" practice causing disparate impact. *Wards Cove Packing Co. v. Antonio*, 490 U.S. 642, 657 (1989) (proof of racial disparity insufficient to show disparate impact absent identification of a "specific or particular" practice).

---

[13] The County wrongly asserts that "HSBC does not challenge the County's direct targeting claim." (Opp'n. 16.) Defendants did just that in asserting that the County had not adequately alleged disparate treatment. (Mot. 19.)

## IV.    NON-ORIGINATING ENTITIES SHOULD BE DISMISSED.

HSBC USA Inc., HSBC Finance Corporation, HSBC North America Holdings Inc., HFC Company LLC, and Beneficial LLC also should be dismissed because they did not originate mortgage loans, and corporate structure is not a stand-in for specific allegations of wrongdoing by a particular defendant.  (Mot. 19-20.)  The County responds in opposition that it has "provide[d] adequate notice" of its claims against the non-originating HSBC defendants, (Opp'n. 20), but the adequacy of "notice" is not the issue.  Moreover, while the County argues in conclusory fashion that Defendants had "common control and ownership," the Seventh Circuit's veil-piercing test requires far more detailed allegations to sustain such a theory.[14]  (Mot. 19-20.)

The County also argues that some non-originating HSBC entities "serviced the predatory and discriminatory mortgage loans" (Opp'n 20 n.30), but this argument fails for two reasons. First, as discussed above, the County has not alleged that Defendants engaged in discriminatory servicing, as opposed to poor servicing that would impact all borrowers equally regardless of race.  Second, the County has not alleged that HSBC USA Inc., HSBC Finance Corporation, HSBC North America Holdings Inc., HFC Company LLC, or Beneficial Company LLC serviced loans.[15]  The only entity alleged to service loans is HSBC Mortgage Services Inc. (FAC ¶ 33), which Defendants did not move to dismiss on the ground that it did not originate loans.

## CONCLUSION

For the foregoing reasons, and as set forth in Defendants' Memorandum of Law in Support of its Motion to Dismiss, Defendants respectfully request that Plaintiff's Complaint be dismissed in its entirety with prejudice.

---

[14] The County also asserts that banking regulations would apply to all entities in HSBC's corporate structure (Opp'n 20), but does not allege that any HSBC entity violated any banking regulation.

[15] The County alleges that HFC Company LLC and Beneficial Company LLC "originated and funded or purchased" mortgage loans, (FAC ¶¶ 34-35), but the Declaration of Phyllis Johnston demonstrates that this is incorrect.  *See* ECF No. 49-8.

Dated:  July 17, 2014

Respectfully submitted,

**HSBC NORTH AMERICA HOLDINGS INC.; HSBC FINANCE CORPORATION; HSBC MORTGAGE CORPORATION (USA); HSBC MORTGAGE SERVICES INC.; HSBC USA INC.; HSBC BANK USA, NATIONAL ASSOCIATION; BENEFICIAL COMPANY LLC; DECISION ONE MORTGAGE COMPANY, LLC; and HFC COMPANY LLC**

By:    /s/ Andrew L. Sandler
       Andrew L. Sandler (*pro hac vice*)
       Valerie L. Hletko (*pro hac vice*)
       Ann D. Wiles (*pro hac vice*)
       Mark E. Rooney (*pro hac vice*)
       BUCKLEYSANDLER LLP
       1250 24th St. NW, Suite 700
       Washington, D.C.  20037
       (202) 349-8000 (Telephone)
       (202) 349-8080 (Facsimile)
       asandler@buckleysandler.com
       vhletko@buckleysandler.com
       awiles@buckleysandler.com
       mrooney@buckleysandler.com

       Richard E. Gottlieb
       Brett J. Natarelli
       BUCKLEYSANDLER LLP
       123 N. Wacker Dr., Suite 1450
       Chicago, IL 60606
       (312) 924-9837 (Telephone)
       (312) 924-9899 (Facsimile)
       rgottlieb@buckleysandler.com
       bnatarelli@buckleysandler.com

       *Attorneys for Defendants*

16