IN THE UNITED STATED DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COUNTY OF COOK<br><br>    Plaintiff,<br><br>v.<br><br>HSBC NORTH AMERICA HOLDINGS INC., ET AL.,<br>    Defendants. | Case No.:    1:14-cv-02031<br>District Judge John Z. Lee<br>Magistrate Judge Sheila M. Finnegan |

**PLAINTIFF'S SURREPLY TO DEFENDANTS' RESPONSE**

HSBC's Reply Brief ("HSBC Rep.") continues to mischaracterize the Complaint, as well as both the County's arguments in its Opposition Brief ("Opp'n") and the applicability of legal precedent specifically the non-binding decisions from the Southern District of Florida. HSBC's need to do this, while ignoring the heart of Plaintiff's opposing arguments, reflects that an accurate description of the Complaint and the law, eviscerates HSBC's motion to dismiss.

First, contrary to HSBC's repeated mischaracterization, the County reemphasizes that the Complaint is not just "based on mortgage loans originated between 2003 and 2007." HSBC Rep. at 1,3.[1] Rather, as already explained in great detail, the County's FHA claim is based on HSBC's ongoing intentional, discriminatory housing practice of a nationwide equity-stripping scheme, which continues unabated to this day through HSBC's continued servicing and foreclosure of predatory and discriminatory mortgage loans. Opp'n at 1-3, 6-8, 11-12, 15. Thus, the inherently continuing nature of the County's FHA claim, ***as the County has pled it***,

---

[1] HSBC's entire statute of limitations argument is premised on this false assertion, thereby enabling HSBC to misleadingly argue that the discriminatory housing practice at issue ended when the bulk of HSBC's predatory mortgage origination activities alone began to subside in early 2008. But this is simply not the discriminatory housing practice that Plaintiff has alleged.

1

definitively distinguishes the County's Complaint from the claims asserted in the recent decisions rendered by the Southern District of Florida -- dismissing the *Miami* complaints -- and relied on by HSBC in its Reply Brief.[2]

In each of the *Miami* cases, Miami's claims were based only on the continued making of mortgage loans on a discriminatory basis. Miami did not allege the type of broad equity stripping scheme alleged by Cook County here that, by its very nature, is ongoing and continues into the future through, among other things, HSBC's continued mortgage loan servicing and foreclosure activities.[3] Even though HSBC ignores this critical distinction, it is incumbent upon this Court to properly describe the nature of the discriminatory housing practice at issue, i.e., in the manner alleged by the County and not as mischaracterized by HSBC.[4]

Second, HSBC also mischaracterizes both the County's allegations and arguments by stating that the County "concedes that the continuing violation doctrine does not apply." The County does not concede that the continuing violation doctrine does not apply under any

---

[2] *City of Miami v. Bank of America Corp.*, No. 13-24506-CIV, 2014 WL 3362348, (S.D. Fla. July 8, 2014) (Dimitrouleas, J.); *City of Miami v. Wells Fargo & Co.*, No. 13-24508-CIV, 2014 WL____, (S.D. Fla. July 9, 2014) (Dimitrouleas, J.) (adopting and incorporating the order in Bank of America decision); *City of Miami v. Citigroup, Inc.*, No. 13-24510-CIV, 2014 WL____, (S.D. Fla. July 9, 2014) (Dimitrouleas, J.) (same).

[3] As noted in the County's Opposition Brief, the inherent continuing nature of HSBC's equity stripping scheme also is distinguishable, for the same reasons, from the cases filed by the City of Los Angeles. *See City of Los Angeles v. Bank of America Corp., et al.*, No. 2:13-cv-9046, 2014 WL 2770083 (C.D. Cal., June 12, 2014); *City of Los Angeles v. CitiGroup Inc., et al.*, No. 2:13-cv-9009, 2014 WL 2571558 (C.D. Cal., June 9, 2014); *City of Los Angeles v. Wells Fargo, et al.*, No. 2:13-cv-9007, 2014 WL 2206368 (C.D. Cal., May 28, 2014). Oddly, even though the *Los Angeles* complaints were virtually identical to the *Miami* cases, the *Miami* court dismissed the *Miami* cases for lack of statutory standing, holding the direct opposite of the courts in the *Los Angeles* cases and completely ignoring the *DeKalb* case that also was decided under eleventh circuit case law. *See, e.g., Bank of America Corp.*, 2014 WL 3362348.

[4] *See, e.g., Ledbetter v. Goodyear Tire & Rubber Co.,* 550 U.S. 618, 127 S.Ct. 2162, 2167, 167 L.Ed.2d 982 (2007) (stressing "the need to identify with care the specific [discriminatory] practice that is at issue."); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002) (recognizing that it is important to look at the nature of the claim); *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 3801-81 (1982) (reflecting the importance of properly characterizing the nature of plaintiff's FHA claim for purposes of the FHA statute of limitations analysis).

circumstances. Instead, the County's Opposition Brief posits that the *common law* continuing violation doctrine could apply, but *only if* the Court first determines that the Complaint is untimely under the plain language of the FHA. *See* Opp'n at 5.

HSBC states that "the County appears to rely strictly on its novel theory that a 'scheme' alleged to extend in perpetuity is immune to statutes of limitations." HSBC Rep. at 5. This suggests the corollary representing the theme of HSBC's entire statute of limitations defense; namely, that an intentional discriminatory scheme should be immune from the repercussions of the FHA so long as a defendant artfully crafts the scheme to exceed the two-year period from the first act in the scheme. Both assertions are unavailing. Nowhere does the County ever take the position that HSBC's scheme "extend[s] in perpetuity" or that the scheme is "immune to statutes of limitations." And, surely, it is not the intent of the FHA to encourage craftier schemes. On its face, the limitations period under 42 U.S.C. §3613(a)(1)(A) is two years from the termination of HSBC's alleged scheme, at the latest, and will remain two-years under the statute. The fact that the limitations period *might not begin to run* until the last 30-year mortgage loan is repaid or is foreclosed upon is entirely the result of the 30-year term of the predatory loan products HSBC sold and the continuing nature of the equity stripping scheme alleged in the Complaint that is implemented, in part, through HSBC's continued mortgage loan servicing and foreclosure activities.[5]

Third, to the extent HSBC argues that the County must identify specific property addresses to establish the "fairly traceable" element of Article III standing, but that "[t]he County

---

[5] Given that the notes and the mortgage liens securing HSBC's mortgage loan products at issue create at least up to 30 years of contractual and other legal duties between HSBC and its borrowers, for which various statute of limitations periods might not being to run on any related claims until up to at least 30 years, it make no sense for HSBC to argue that it should not be accountable until its scheme, involving the same loans, actually terminates and the two year limitation period that begins to run following such termination actually expires.

3

asserts this is virtually impossible," HSBC Rep. at 11-11, n. 11, the County strongly disagrees. The County has never categorically stated that identifying specific property addresses is "virtually impossible. Rather, the County's position is that it ***should not be necessary at the pleading stage*** to identify property addresses when the purpose of the Complaint under Federal Rule 8 is to put HSBC on fair notice of the County's claim, which the County has done by other means that also establish proximate cause, including by alleging statistical data linking Defendants' predatory and discriminatory lending to the increased foreclosure rates in Plaintiff's high minority rate communities. *See, e.g.,* Cmplt ¶¶ 249-258. Identifying property addresses in the Complaint is particularly unnecessary where, as here, the Complaint also alleges that HSBC's foreclosure actions continue into the future and, therefore, it is not possible to identify every property that has been and *will be* affected, but that such information can and will be determined upon a reasonable opportunity for discovery. *See, e.g., Opp'n* at 8-9, n.16, 11-12. Moreover, HSBC should not be permitted to rely on a lack of specific property addresses at the pleading stage to deny the County's standing when the County also has specifically alleged:

- HSBC's concealment of its activities (including through its corporate structure, Cmplt ¶¶ 175, 180-194, circumvention of public lien recording processes and the foreclosure process using the Mortgage Electronic Registration Systems (MERS), Cmplt ¶¶ 180, 196-201;

- that the limited nature of publicly available HMDA data, Cmplt ¶¶ 49, 189-190) has made identification of pre-2013 foreclosures "virtually impossible from publicly available data," Cmplt ¶¶ 201; and

- that such property addresses can and will be identified in the course of discovery since HSBC alone is in possession of all the loan level data (including loan terms, minority status and property addresses) that it is required by law to keep, as well as all the loan servicing and foreclosure data it maintains. Cmplt ¶¶, 47-49, 69, 202, 204, 294.

Fourth, contrary to HSBC's bald assertion, the County clearly has not pled "purely economic injury" that would preclude standing under *Lexmark Int'l, Inc. v. Static Control*

4

*Components, Inc.*, 134 S.Ct. 1377 (2014). The County has expressly alleged non-economic injury, including damage to the fabric of the County's communities and constituents (including deterioration and blight), *see, e.g.,* Cmplt ¶¶ 5, 282, 285-286,311, leading to "white flight," which has an undeniable racial component as it further segregates affected communities and neighborhoods. *See* Opp'n at 8, n. 11, 15, n.24. The County also has expressly alleged the type of non-economic injuries to its departments and organizations, *see, e.g.,* Cmplt ¶¶ 292, 300, that provide an independent basis for standing, as the County's departments and organizations have had to reallocate resources away from their missions and purposes to address the foreclosures and home vacancies caused by HSBC's discriminatory housing practices.[6] Tellingly, HSBC entirely ignores these allegations, along with the Supreme Court's holding in *Gladstone, Realtors v. Vill. Of Bellwood*, 441 U.S. 91, 114-15 (1979), that economic injuries combined with noneconomic injuries are sufficient to confer standing on a governmental plaintiff to recover for both types of injury. Furthermore, the County's allegations of non-economic injuries also distinguish this case from the *Miami* actions and the Eleventh Circuit's decision in *Nasser v. Homewood*, 671 F.2d 432, 437 (11th Cir. 1982) upon which the court in the Miami cases relied, because the plaintiffs in all those actions asserted solely economic injuries.[7] As more fully

---

[6] *See, e.g., Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 262-63 (1977) (non-profit corporation had FHA standing to sue to build low income housing; finding that "economic injury is not the only kind of injury that can support a plaintiff's [FHA] standing"); *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-81 (1982) (non-profit community group had standing to bring FHA claim where the impairment of its ability to provide other services constituted "concrete and demonstrable injury"; expressly warning lower courts against a "wooden" application of the statute of limitations that "ignores the continuing nature of the alleged violations" because it would "undermine[] the broad remedial intent of Congress embodied in the Act.").

[7] Importantly, in the *Miami* actions, the plaintiff offered only generalized allegations of harm and statistics and studies that were not limited in any way to Miami. In contrast, the County here has offered statistical and empirical lending ***and foreclosure*** data specific to Cook County and reflecting the discriminatory nature of HSBC's actions. *See* Cmplt. ¶¶ 246, 249-258, 287-301, 304. These allegations are contrary to HSBC's related argument that the County has not established standing pursuant to

5

detailed in its Response to HSBC's Motion to Dismiss, the County has satisfied the requirements of both Article III and *Lexmark* to undeniably establish standing. *See* Opp'n at 6-15.

Fifth, HSBC's attempt to impose a discovery rule upon the County is entirely unavailing. HSBC Rep. at 7-8. HSBC cites no cases from this Court or the Seventh Circuit that applied a discovery rule to a continuing violation doctrine in the context of an FHA case. In fact, the only case HSBC cites to support its argument involved a Section 1983 claim brought by a prisoner who sought access to physical evidence for testing. *See Savory v. Lyons*, 469 F.3d 667, 673 (7th Cir. 2006). The court there was faced with an isolated incident—the date of notification of one prisoner's denial of access to testing—and not some broad scheme to deny prisoners general access to such testing. *Id.*[8] In fact, the court there took great pains to describe and distinguish the nature of that plaintiff's claim from a variety of other claims. *Id.* Notwithstanding HSBC's obfuscation, the plain language of 42 U.S.C. §3613(a)(1)(A) imposes no such discovery rule on plaintiffs, and it cannot be added into the FHA by the parties or the Court. *See, e.g., Griffin,* 458 U.S. at 570, 575; *Barnhart,* 534 U.S. at 450; *Patriotic Veterans*, 736 F.3d at 1047, 1052-53. Indeed, a number of federal courts have explicitly held that the discovery rule does not apply to FHA claims based on the plain language of the statute.[9]

---

*Lexmark* because it has not pled that its alleged injuries were proximately caused by a violation of the FHA.

[8] *Moskowitz v. Trustees of Purdue Univ.*, 5 F.3d 696, 703 (7th Cir. 2001), is similarly inapposite because like *Savory*, it did not involve an FHA claim, and it was brought by an individual plaintiff alleging one isolated incident of a violation of the ADEA and not a broad pattern of discriminatory conduct.

[9] *See, e.g., Walton v. Wells Fargo Bank, N.A.*, Civ. A. AW-13-428, 2013 WL 3177888 (D.Md. June 21, 2013) ("The discovery rule . . . does not apply to the unambiguous language of the FHA's statute of limitations provision"); *Miller v. Countrywide Bank, N.A.*, 571 F. Supp. 2d 251, 263 (D. Mass. 2008) (noting that the FHA does not incorporate "a discovery rule" in the limitations provision); *Moseke v. Miller & Smith, Inc.*, 202 F. Supp. 2d 492, 509-10 (E.D. Va. 2002) (rejecting application of "discovery rule" under FHA and dismissing design and construction claim as time barred because last alleged act was found to have occurred more than two years prior to lawsuit); *but see Jones v. Citibank, Fed. Sav. Bank*, 844 F. Supp. 437, 440 (N.D. Ill. 1994) (applying discovery rule in factually distinguishable context of single occurrence mortgage discrimination FHA claim, and sustaining plaintiff's claim under discovery

Finally, the County also points out its disagreement with HSBC's interpretations of the *DeKalb* and *Baltimore* decisions, *see* HSBC Rep. at 7 and 9, and respectfully refers the Court to a full reading of those decisions and the County's Opposition Brief, including at p. 19.[10]

Filed: July 28, 2014

Signed By: /s/Daniel A. Dailey
Special Assistant State's Attorney

JAMES D. MONTGOMERY, SR.
JAMES D. MONTGOMERY, JR.
MICHELLE M. MONTGOMERY
JOHN K. KENNEDY
DANIEL A. DAILEY

*Special Assistant State's Attorneys*

**JAMES D. MONTGOMERY &
ASSOCIATES LTD.**
One North LaSalle Suite 2450
Chicago, IL 60602
Phone: (312) 977-0200
Fax: (312) 977- 0209
ddailey@jdmlaw.com

JAMES M. EVANGELISTA
(admitted *pro hac vice*)
JEFFREY R. HARRIS
(admitted *pro hac vice*)
DARREN W. PENN
(admitted *pro hac vice*)
DAVID J. WORLEY
(admitted *pro hac vice*)

---

rule until plaintiff actually learned that defendant had denied such loan).

[10] HSBC also baldly states in its Reply that "discovery would establish—as it did in *DeKalb County*—that the County had knowledge of the facts forming the basis of its claim and communicated with counsel of record regarding its claim more than two years before filing." HSBC Rep. at 7, n.7. While this assertion is entirely irrelevant and incorrect as to Cook County, the *DeKalb* parties are not in agreement as to what HSBC claims that its discovery has "established" in that case. Indeed, HSBC has admitted in that case that it continues to service mortgage loans made to minority borrowers at issue in the *DeKalb* action, thereby conceding the continuing nature of its alleged nationwide equity stripping scheme at issue both here and in the *DeKalb* action.

*Special Assistant State's Attorneys*

**HARRIS PENN LOWRY LLP**
400 Colony Square, Suite 900
1201 Peachtree Street, NE
Atlanta, GA 30361
Phone: (404) 961-7650
Fax: (404)961-7651
jim@hpllegal.com