IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COUNTY OF COOK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO.: 1:14-cv-2031 |
| | ) |
| HSBC NORTH AMERICA HOLDINGS, INC., ET AL., | ) HONORABLE JOHN Z. LEE |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL**

Plaintiff Cook County, Illinois ("the County") respectfully files this Opposition to Defendants' Motion to Certify Order for Interlocutory Appeal [Dkt. No. 81]. For the reasons set forth below, Defendants' motion is meritless and should not be granted.

**INTRODUCTION**

On September 30, 2015, this Court denied Defendants' motion to dismiss [Dkt. No. 76], sustaining Cook County's Fair Housing Act ("FHA") Complaint against Defendants. The Court correctly applied the plain language of the FHA and binding Supreme Court and Seventh Circuit precedent to determine that the County had both Article III and statutory standing to maintain this action.[1]

---

[1] Defendants' implicit contention is that the Court did not comply with the "statutory standing doctrine articulated in the Supreme Court cases *Thompson* and *Lexmark*[,]" when it held that "standing under the Fair Housing Act extends as far as Article III allows, and thus is not limited by" *Thompson* and *Lexmark*. Def. Mem. at 5. In actuality, the Court conducted precisely the type of zone of interest test *Lexmark* describes; the Court analyzed the plain statutory language of the FHA, *i.e.*, the definition of "aggrieved person," and the binding precedent explaining Congress's intention that the class of persons authorized to bring suit under the FHA must be broadly construed. Order, 14-17. In doing so, the Court correctly concluded that Congress

1

Dissatisfied with this result, Defendants seek 1292(b) certification of a non-controlling, non-dispositive, mixed question of fact and law, where there is no legitimate ground for difference of opinion on the law. As such, Defendants do not meet the rigorous standards required under 1292(b). An immediate appeal would not materially advance the ultimate termination of the litigation, but instead would serve only to delay or distract these proceedings. Indeed, the question Defendants seek to certify depends upon a mischaracterization of Cook County's injuries alleged in the Complaint – Defendants simply ignore the alleged organizational harms and non-economic injuries that provide alternative bases for standing.

Not only is the proposed question for certification not dispositive of anything, but Defendants misinterpret and misapply settled law,[2] while failing to distinguish binding precedent in *Gladstone, Realtors, v. Vill. of Bellwood*, 441 U.S. 91 (1979), *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), and *Gorski v. Troy*, 929 F.2d 1183 (7th Cir. 1991), that make

---

intended that any "aggrieved person" who meets Article III's requirements should have standing under the FHA.

[2] Defendants' reliance on *Texas Dep't of Housing & Community Aff. v. Inclusive Communities Proj.*, 135 S. Ct. 2507 (2015) (Def. Mem. at 2) to support their ill-conceived argument is simply unavailing. If anything, the Supreme Court's recent decision in *Inclusive Communities* **supports** the County's standing here. The County has alleged the same kinds of injuries that the plaintiff there alleged. The Supreme Court did not find that the plaintiff in *Inclusive Communities* lacked standing, even though every court that considers a case—including the Supreme Court—has a duty to review the plaintiff's standing even if the parties do not raise it. The district court, in determining that the plaintiff there had standing noted both that "[t]he doctrine of standing involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise" and that in the context of an FHA claim"[o]nly Article III standing is required." 749 F. Supp. 2d 486, 495 (N.D. Tex. 2010). The only logical reading of this is that statutory standing—*i.e.* whom Congress intended to authorize to bring suit--is coextensive with Article III under the FHA. Had the Supreme Court intended to impose some burden beyond Article III standing requirements on FHA plaintiffs, it only makes sense that it would have taken the very plain opportunity *Inclusive Communities* provided to do so. That the Supreme Court declined even to mention standing in its opinion can therefore only mean that the Supreme Court never intended to unsettle long-standing precedent in the FHA arena holding that a plaintiff who satisfies Article III's requirements falls within the class of plaintiffs Congress has authorized to sue and therefore has standing to bring an FHA claim.

2

crystal clear Cook County's standing to bring a claim under the FHA for its own economic and non-economic injuries, including its organizational harm.

In short, Defendants fail to meet the standard for interlocutory review and their motion must be denied.

## ARGUMENT

Defendants have posed the following inappropriate question for appeal:

*Whether claims for economic damages asserted by municipalities under the FHA alleging diminution in property tax revenue and increased expenditures for government services are sufficiently within the FHA's zone of interests to confer standing consistent with* Lexmark *and* Thompson?

Defendants thoroughly fail to meet their burden to show that this single, irrelevant question is appropriate for interlocutory review. *See Coopers & Lybrand v. Livesay*, 431 U.S. 463, 474-75 (1978) (the moving party bears the burden of showing the court that exceptional circumstances require granting the party's motion for interlocutory review pursuant to 28 U.S.C. § 1292(b)).

The standard for appeal pursuant to 28 U.S.C. §1292(b) is stringent and not permissive. *Arenholz v. Bd. of Trustees of the Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. (2000) ("Since the beginning of 1999, this court has received 31 petitions for interlocutory appeal under 28 U.S.C. §1292(b) and has granted only six of them"); *see also Dahlstrom v. Sun-Times Media, LLC*, 39 F. Supp. 3d 998, 1001 (N.D. Ill. 2014) (1292(b) motions are "rarely granted"). This ensures that requests for interlocutory appeal are granted **only** in "exceptional circumstances." *Pullman Const. Indus., Inc. v. Boockford & Co.*, 143 B.R. 497, 498 (N.D. Ill. 1992) (Aspen, J.). *See also Padilla v. DISH Network, LLC*, No. 12-cv-7350, 2014 WL 539746 at **5-6 (N.D. Ill. Feb. 11, 2014) (Dow, J.) (explaining that "interlocutory appeals are frowned on in the federal judicial system" and are "a gratuitous interruption of the district court proceedings" (internal quotations omitted)); *BA Leasing Parties v. UAL Corp.*, Nos. 03-C-2232, 03-C-2414, 2003 WL 22176068 at

*5 (N.D. Ill. Sept. 15, 2003) (Darrah, J.): *In re Bridgestone/Firestone, Inc. Prod. Liab. Litig.*, 212 F. Supp. 2d 903, 909 (S.D. Ind. 2002). Improperly granting a 1292(b) motion serves "merely to waste [the appellate court's] time and delay the litigation in the district court." *Arenholz*, 219 F.3d at 676. Interlocutory review of an otherwise non-final order is therefore inappropriate unless "there [is] a question of *law*, it [is] *controlling*, it [is] *contestable*, and its resolution promise[s] to *speed up* the litigation." *Id.* at 675 (emphasis in original); *OSF Healthcare Sys. v. Banno*, No. 08-1096, 2009 WL 1259048 at *1 (C.D. Ill. May 6, 2009). These "criteria are conjunctive"—"[u]nless *all* these criteria are satisfied, **the district court may not and should not certify** its order to us for an immediate appeal." *Arenholz*, 291 F.3d at 676 (emphasis in original and emphasis added). For the reasons set forth below, Defendants' present motion falls short of each and every one of these requirements.

I. **DEFENDANTS FAIL TO IDENTIFY A RELEVANT CONTROLLING QUESTION OF LAW.**

"The Seventh Circuit has a narrow understanding of 'question of law' when considering requests for certification." *Bridgestone/Firestone*, 212 F. Supp. 2d at 907. "Question of law" refers to "an abstract legal issue"—a "pure" question of law that "the court of appeals could decide quickly and cleanly without having to study the record." *Arenholz*, 219 F.3d at 677. An appeal therefore fails to present a "question of law" if the question "requires hunting through the record compiled" in the lower court. *Id.* Thus, a mixed question of law and fact, "which relies on misconstrued 'facts'" from a complaint does not present a "question of law" pursuant to section 1292(b). *OSF Healthcare Sys.*, 2009 WL 1259048 at *2. Moreover, the question presented for certification must not only be a "question of law," but also must be "controlling," *i.e.*, "its resolution [must be] quite likely to affect the further course of the litigation." *Padilla*, 2014 WL 539746 at *5; *see also Bridgestone/Firestone*, 212 F Supp. 2d at 911.

4

First, Defendants' sole question is not a "pure" question of law. The question incorrectly and misleadingly presumes that the County is seeking recompense only for the economic injuries it has sustained. The Complaint clearly shows that this is not the case. As this Court recognized, the County has also alleged intangible harm to the fabric of its neighborhoods and communities, including white flight, as well as organizational harm to its departments and authorities. Order at 8-9. The fact that Defendants must so blatantly misrepresent the actual factual allegations of the Complaint even to advance a question for interlocutory review demonstrates how fact intensive any question of the County's standing is. Defendants' proposed question at the very least would require application of settled law to the facts of the case to determine precisely what injuries the County (or any other plaintiff in any FHA case hereafter) has suffered and is therefore not a "pure" question of law.

Second, the proposed question is not a "controlling" question of law appropriate for interlocutory review. Whether a plaintiff who has alleged only non-economic harm has standing is simply irrelevant here where the County has alleged exactly the kind of non-economic harms Congress also intended the FHA to remedy. The County's allegations of both economic and non-economic injury are sufficient under *Gladstone* to confer standing. Order at 7-9.[3] Irrelevant questions, like the one Defendants pose, are inappropriate for certification as "an answer to [that question] would not speed up this litigation, because [it] would have no effect on the proceedings at all." *Padilla*, 2014 WL 539746 at *5.

---

[3] This Court has already rejected Defendants' previous attempts to misread the County's Complaint. *See* Order at 7-9. (stating that "[a]ccording to Defendants, the County only alleges a 'general decrease in tax revenue,' an 'increase in cost of government services,' a county-wide increase in the tax digest, and a generalized increase in 'out-of-pocket costs'" and pointing out that, in fact, "[i]n addition to economic harms, the County alleges noneconomic harms as well, including urban blight, community deterioration, and organizational harm").

Third, Defendants' proposed question is not complex because it merely requires application of the plain language of the statute and controlling Supreme Court and Seventh Circuit precedent finding that plaintiffs exactly like the County have standing to bring an FHA claim asserting economic and non-economic damages. The Supreme Court's pronouncement in *Trafficante v. Metro Life Ins. Co.*, 409 U.S. 205 (1972) that Congress intended to confer standing to the full extent permitted under Article III through its broad definition of "aggrieved person" confirms that Congress intended the statute's zone of interests to encompass plaintiffs whose alleged injuries met Article III's requirements. The Supreme Court then reiterated the FHA's broad reach in *Gladstone*, ruling that a municipality adequately pleads standing in an FHA action by alleging both economic and non-economic injury. *Gladstone*, 441 U.S. at 110-11.[4] The Seventh Circuit has, as it is bound to do, followed this controlling precedent. *Gorski v. Troy*, 929 F.2d 1183, 1188-89 (7th Cir. 1991) (examining and applying the FHA's definition of "aggrieved person," and recognizing that the Supreme Court has held that Congress intended that standing under the FHA be broadly construed) (7th Cir. 1991); *New W., L.P. v. City of Joliet*, 491 F.3d 717, 721 (7th Cir. 2007) (recognizing based on Supreme Court precedent that Article III standing is sufficient under the FHA).[5] Even *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 176 (2011), on which Defendants mistakenly rely to frame their proposed question, recognized that "the term 'aggrieved' in [the FHA] reaches as far as Article III permits."

---

[4] Defendants entirely fail to analyze and distinguish the Supreme Court's binding decision, despite the Supreme Court's admonishment that lower courts should not abandon direct precedent because of other non-binding decisions. *See Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 1490 U.S. 477, 484 (1989).

[5] Defendants fail to even to mention the Seventh Circuit's binding decisions in *Gorski* and *New W., L.P.*

Based on these controlling decisions from the Supreme Court, the Seventh Circuit could not answer the question whether the County has standing any differently than this Court already has. Therefore, Defendants' proposed question would have no bearing on the outcome of this case but merely delay or district the proceedings. For these reasons, Defendants' proposed question is not a "controlling" question of law, and their motion for interlocutory review should be denied.

## II. THERE IS NO SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION ON DEFENDANTS' SINGLE PROPOSED QUESTION.

This Court already has recognized that Defendants' standing argument is based largely on one contrary opinion of a sister court within this Circuit and several district court decisions in the Eleventh Circuit, which the Eleventh Circuit expressly overruled. Order at 17-19. Thus, this Court has essentially already found a lack of any substantial ground for difference of opinion as to whether the County has standing. To be thorough, however, the County shows the Court below why there is absolutely no substantial ground for difference of opinion.

Whether there is "a substantial ground for difference of opinion" must be narrowly construed. *See, e.g., Bridgestone/Firestone*, 212 F. Supp. 2d at 909-10. "[T]he fact that the disposition of an order was not to a party's liking does not create a substantial ground for a difference of opinion." *Carlson v. Brandt*, No. 97-C-2165, 1997 WL 534500 at *6 (N.D. Ill. Aug. 22, 1997) (Grady, J.). Instead, this Court's duty is to "examine the strength of the arguments in opposition to the challenged ruling," *Bridgestone/Firestone*, 212 F. Supp. 2d at 909-10, and determine whether Defendants have carried . . . the very heavy burden of demonstrating to this Court a "substantial likelihood that the Court will be reversed on appeal." *Padilla*, 2014 WL 539746 at *6. While "this analysis includes examining whether other courts have adopted conflicting positions regarding the issue of law proposed for certification[,]" the

7

existence of a handful of contrary decisions from other courts--which is, at best, what Defendants have presented to this Court—does not raise a question for which there is a "substantial ground for difference of opinion." *Bridgestone/Firestone*, 212 F. Supp. 2d at 909-10. *See also Pullman Const. Indus., Inc. v. Boockford & Co.*, 143 B.R. 497, 499 (N.D. Ill. 1992) ("Other courts . . . have ruled . . . in a way that is directly contrary to the May 20, 1992 ruling at issue here, but that alone is not enough"). "[I]t is beyond dispute that interlocutory appeal is unjustified, inefficient, and unnecessary when the movant has not set forth substantial conflicting decision regarding the claimed controlling issue of law." *Carlson*, 1997 WL 534500 at *6; *see also White v. Nix*, 43 F.3d 374, 378 (8th Cir. 1994).

Furthermore, "[i]f a controlling appellate court has ruled on the question, then no substantial ground for difference of opinion exists, and there is no reason for immediate appeal." *Padilla*, 2014 WL 539746 at *5. Thus, Defendants' proposed question for certification cannot be appropriate for interlocutory review because the Supreme Court in *Gladstone* held that a municipality has standing when it claims to have suffered both economic and non-economic resulting harm from a defendant's alleged violation of the FHA. The Seventh Circuit has broadly defined standing to encompass plaintiffs like the County. *Gorski*, 929 F.2d at 1188-89; *New W., L.P.*, 491 F.3d at 721. This Court is bound by those rulings. The Seventh Circuit is likewise bound by the Supreme Court's prior rulings in FHA cases. Thus, Defendants' present motion could not possibly show "the existence of a difficult central question of law which is not settled by controlling authority." Def. Mem. at 5 (citations omitted). This case is therefore the antithesis of one "ripe for interlocutory review." *Id.*

Defendants fail to present any plausible argument in light of this controlling precedent, that there is a "substantial likelihood" that the Seventh Circuit would ignore its own prior

8

decisions and binding Supreme Court precedent and reverse this Court, which was following the precedent the Seventh Circuit and Supreme Court have established. Neither *Thompson* nor *Lexmark* determined a plaintiff's standing under the FHA and therefore could not have overruled the Supreme Court's prior decisions regarding standing under the FHA. *See Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 1490 U.S. 477, 484 (1989). Rather, *Lexmark* merely stands for the proposition that a plaintiff must fall within a statute's zone of interest, which, in the case of the FHA, is as broad as Article III as to those plaintiffs who fall within the very broad definition of "aggrieved person" pursuant to the plain language of the statute. This Court has already correctly determined, pursuant to binding precedent, both that Cook County is an "aggrieved person" under the FHA and that Cook County's claim meets the requirements of Article III. The Seventh Circuit could not reach a different conclusion.

Defendants' reliance on a handful of cases, some of which did not involve the FHA at all,[6] is insufficient to establish a substantial ground for difference of opinion. Defendants identify only five cases nationwide where a court has found, post-*Lexmark,* that an FHA plaintiff

---

[6] It is axiomatic that a statute's zone of interests must depend on the statute at issue. Thus, Defendants' citations to non-FHA cases are entirely inconsequential and cannot represent a substantial difference of opinion as to the FHA's zone of interests. Notably, one of the non-FHA cases cited by Defendants actually supports the County's standing here. In *Levy v. Trent Motel Assoc's, LP*, No. 11-776, 2011 WL 3803647, at * 4 (E.D. Pa. Aug. 26, 2011), the court analyzed a state statute that it determined was an "analogue" to the FHA and found that the plaintiff, who did not claim to be a member of a protected class, had standing, and recognized that "a plaintiff may have standing to assert a claim under the FHA if he has been injured as a result of a defendant's racially discriminatory acts towards others . . . [and] the injury falls within the zone of interests protected under the FHA." *Id.* at *6. Using this analysis, the court found standing because the defendants' racially discriminatory conduct towards potential black patrons of plaintiff's business injured the plaintiff. Thus, injury to the plaintiff resulting from racially discriminatory conduct towards others fell within the zone of interests of a state statutory "analogue" to the FHA.

failed to establish statutory standing.[7] As Defendants must acknowledge, the *only* court of appeals to consider a standing argument like Defendants' argument, *expressly overruled <u>three</u> of those decisions*, and found, as this Court has regarding the County, that the City of Miami had standing under *Lexmark* because the City met the broad definition of "aggrieved person" and satisfied Article III's requirements and therefore fell within the FHA's zone of interests. *See City of Miami v. Bank of America Corp.*, No. 14-14543, __ F.3d __, 2015 WL 5102581, at **11-13 (11th Cir., September 1, 2015).

Neither of the remaining two cases on which Defendants rely represents a substantial ground for difference of opinion. One is plainly factually and legally distinguishable. *See DT Apt. Grp., LP v. CW Capital LLC*, No. 3:12-CV-0437, 2012 WL 6693192 at **15-16 (N.D. Tex. Dec. 26, 2012) (never even expressly determining whether plaintiff suffered an injury in fact sufficient to satisfy even Article III where plaintiffs sought to bring an FHA claim on behalf of their tenants instead of on their own behalf and were not challenging defendants' alleged racially discriminatory conduct to "remedy discrimination in housing," which the court recognized was "[t]he FHA's purpose"). The other case, *Cty. of Cook v. Wells Fargo & Co.*, No. 14 C 9548, 2015 WL 4397842 at **5-6 (N.D. Ill. July 17, 2015)), a contrary decision within this district, contravenes established precedent, as this Court already has explained. Order at 17-18.

### III. DEFENDANTS' PROPOSED QUESTION WILL NOT MATERIALLY ADVANCE THE TERMINATION OF THIS CASE.

Defendants' proposed question mischaracterizes the County's Complaint, asking the Seventh Circuit to decide whether a plaintiff who alleges *only* economic injury falls within the

---

[7] *City of Miami v. Bank of Am. Corp.*, No. 1:13-cv-24506, 2015 WL 3362348 (S.D. Fla. July 9, 2014); *City of Miami v. Citigroup Inc.*, No. 13-cv-24510 (S.D. Fla. July 9, 2014); *City of Miami v. Wells Fargo & Co.*, No. 13-cv-24508 (S.D. Fla. July 9, 2014); *Cty. of Cook v Wells Fargo & Co.*, No. 14-C-9548, 2015 WL 4397842 (N.D. Ill. July 17, 2015); *DT Apt. Grp., LP v. CW Capital, LLC*, No. 3:12-CV-0437, 2012 WL 6693192 (N.D. Tex. Dec. 26, 2012).

FHA's zone of interests. This would require the Seventh Circuit to opine on an issue that is irrelevant to, and not dispositive of, Cook County's FHA claim because the County plainly alleges **both** economic and non-economic injuries, as well as organizational harm. The Supreme Court already has ruled in *Gladstone* that a plaintiff like Cook County has standing to bring an FHA claim when it alleges both economic and non-economic harm, as Cook County has done here. The Seventh Circuit is bound by that ruling, which this Court correctly applied. Moreover, the Supreme Court has ruled in *Havens* that a plaintiff that alleges organizational injury, like Cook County also has done here, has standing to bring an FHA claim.

Construed in its broadest possible sense, Defendants' proposed question for appeal would merely require the Seventh Circuit to opine on whether *Lexmark* requires a zone of interests test in FHA cases. But again, an affirmative answer will not materially advance this litigation. Cook County's claim would go forward since Congress explicitly authorized a very broad class of "aggrieved persons" – like Cook County - to bring suit under the FHA's civil enforcement provision, all of whom necessarily fall within the statute's broad zone of interests. Interlocutory review of this issue therefore is inappropriate.

## CONCLUSION

For the reasons set forth above, the County respectfully requests that Court DENY Defendants' Motion to Certify Order for Interlocutory Appeal.

Dated: December 1, 2015     By:   /s/ James M. Evangelista
                                  Special Assistant State's Attorney

                                  James M. Evangelista (admitted *pro hac vice*)
                                  jim@hpllegal.com
                                  Jeffrey R. Harris (admitted *pro hac vice*)
                                  jeff@hpllegal.com
                                  Darren W. Penn (admitted *pro hac vice*)
                                  darren@hpllegal.com
                                  David J. Worley (admitted *pro hac vice*)

david@hpllegal.com
HARRIS PENN LOWRY LLP
400 Colony Square, Suite 900
1201 Peachtree Street, NE
Atlanta, GA 30361
Phone: (404)961-7650
Fax: (404)961-7651


James D. Montgomery, Sr.
jmontgomery@jdmlaw.com
John K. Kennedy
jkennedy@jdmlaw.com
Daniel A. Dailey
ddailey@jdmlaw.com
JAMES D. MONTGOMERY AND
ASSOCIATES, LTD.
One North LaSalle Street
Suite 2450
Chicago, Illinois 60602
Phone: (312)977-0200
Fax: (312)977-0209

*Special Assistant State's Attorneys*

## CERTIFICATE OF SERVICE

I hereby certify that on this day I served the above and foregoing PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL on all parties by causing a true and correct copy to be filed with the court's electronic filing system, which should automatically send a copy to all counsel of record.

Dated: December 1, 2015                                /s/ James M. Evangelista
                                                       James M. Evangelista