IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COUNTY OF COOK,<br><br>      Plaintiff,<br><br>    v.<br><br>HSBC NORTH AMERICA<br>HOLDINGS, INC., et al.,<br><br>      Defendants. | No. 14 C 2031<br>Judge John Z. Lee |

### MOTION OF PLAINTIFF COOK COUNTY TO COMPEL
### PRODUCTION OF DOCUMENTS

Plaintiff County of Cook, by counsel, moves pursuant to FED. R. CIV. P. 34(b) for an order compelling defendants HSBC North America Holdings, Inc., et al., to comply with the County's document-production requests. In support of this motion, the County states as follows.

### BACKGROUND

The County filed suit, alleging that defendants engaged, and continue to engage, in a discriminatory equity-stripping scheme that violates the Fair Housing Act (FHA), 42 USC §§ 3601-19. In particular, the County alleges that defendants discriminatorily targeted minority homeowners for predatory subprime loans, which defendants then serviced and foreclosed upon. In addition, the County asserts that defendants' servicing and foreclosure practices discriminated against racial minorities.

On March 4, 2016, the County served four document-production requests on defendants. The four requests seek defendants' mortgage loan origination,

servicing, and foreclosure data, along with documentation sufficient to enable interpretation of the data. The requests read as follows:

> **Request No. 1:**
> Produce documents sufficient to identify the software, databases, data fields, and back-up systems during the Relevant Period utilized by HSBC's 1-4 family residential mortgage lending and servicing operations (regardless of whether for first or second lien loans, for purchase money, or for a home equity loan or line of credit), including for HSBC's loan marketing, origination, underwriting, securitizations, servicing and default servicing operations.
>
> **Request No. 2:**
> Produce documents sufficient to identify the software, databases, data fields, and back-up systems during the Relevant Period utilized by HSBC for its financial and performance analysis of 1-4 family residential mortgage loans (regardless of whether for first or second lien loans, for purchase money, or for a home equity loan or line of credit) and related mortgage servicing and default servicing operations.
>
> **Request No. 3:**
> Produce documents sufficient to identify the software, databases, data fields, and back-up systems during the Relevant Period utilized by HSBC for compliance monitoring and analysis, and, internal and external compliance reporting functions pursuant to the Home Mortgage Disclosure Act ("HMDA"), the Home Ownership and Equity Protection Act ("HOEPA"), the Fair Housing Act ("FHA"), the Homeowners Protection Act of 1998 ("HPA"), homeownership counseling requirements under the Housing and Urban Development Act of 1968, and the relevant rules of the Office of the Comptroller of the Currency including the anti-predatory-lending rules in 12 CFR 7, 12 CFR 34, and 12 CFR 160.110 and the standards for national banks' residential mortgage lending practices in appendix C to 12 CFR 30 and 12 CFR 160.
>
> **Request No. 4:**
> For each 1-4 family residential mortgage loan (regardless of whether for first or second lien loans, for purchase money, or for a home equity loan or line of credit) made to a borrower residing in Cook County that was originated, funded, purchased, and/or serviced by HSBC at any time during the Relevant Period, produce in csv (comma separated value) format and with data field descriptors all

2

> electronically collected or maintained mortgage loan data, including loan application information, loan origination terms and pricing, loan underwriting criteria and actions, loan performance and profitability, loan servicing and default servicing data, foreclosure information, loan refinance or modification information, Loan Application Register ("LAR") data, loan servicing transfer information, unique loan identification numbers, MERS number (if applicable), property addresses and borrower names.

Ex. A.

Defendants have not timely complied with the County's requests, and the parties' meet-and-confer efforts regarding the requests have proved unsuccessful. Specifically, on April 7, 2016, defendants served objections to the requests, but stated that they would produce relevant, non-privileged information. Ex. B. On April 14, 2016, counsel for the County inquired as to the status of defendants' document production and was told that the requested information would be forthcoming shortly. Ex. C. Then, on April 18, 2016, defendants produced limited data regarding 439 loans defendants originated from 2009 to present. Ex. D. During a telephonic meet-and-confer, the County communicated to defense counsel that this production was deficient in that it only pertained to loan origination, not servicing or foreclosure; only spanned the years 2009 to present, even though the County's requests sought data from 2003 to present. Cf. Ex. E. The County further communicated that the limited data produced, which was sourced solely from defendants' loan application registry file, was itself insufficient because lacking the data points necessary to conduct a disparate-impact analysis. Cf. Ex. E. In response, defense counsel claimed that the County's requests were not "sufficiently specific to identify the information sought," and argued, "Discovery is not a test of

what we or our clients think you want or what we would ask for if we were in your position." Ex. E.  Then, after a status conference before this Court, defendants changed course and supplied a list of 27 "proposed data points" that defense counsel selected.  Ex. F.  This proposal is unacceptable because insufficient to identify the discriminatory loans and properties at issue; the components and features of such loans; the specific underwriting decisions and compensation factors leading to the creation of such loans; and the specific discriminatory servicing and foreclosure practices on such loans.  The County contends that its four requests for production are proper, and seeks complete responses thereto.  The parties are at an impasse and this Court's intervention is required.

## ISSUE PRESENTED

Whether defendants may withhold or limit production of the requested loan-level origination, servicing, and foreclosure data.

## ARGUMENT

This Court should compel defendants to fully comply with the County's document-production requests.  The requests are proper, and seek information crucial to the outcome of this case.  Defendants' various piecemeal proposals, of producing only a self-selected narrow subset of the needed data, or in time-based phases, cycles, or tranches, will only serve to delay the discovery process and could well deprive the County of information crucial to its claims.  Those proposals should be rejected.  Instead, this Court should compel defendants to comply with the County's requests.

4

I. **THIS COURT SHOULD COMPEL DEFENDANTS TO COMPLY WITH THE COUNTY'S FOUR REQUESTS FOR PRODUCTION WITHIN 30 DAYS.**

"Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." FED. R. CIV. P. 26(b)(1). If a party fails to answer an interrogatory or respond to a document request, the discovering party may move for an order compelling an answer to the interrogatory or compelling a response to the document request. See FED. R. CIV. P. 37(a)(2). Here, the County requested loan origination and servicing data from 2003 through 2016. The County is entitled to receive all loan-level data necessary for it and its experts to identify the discriminatory mortgage loans for which defendants are responsible (whether by origination or by loan purchases), the underlying residential properties securing such mortgages, defendants' specific discriminatory loan-level actions resulting in the creation of such loans, the specific harmful components and features of such loans, and defendants' specific discriminatory loan level servicing and foreclosure actions, all of which have resulted in injury to the County. Defendants have offered no justification for limiting their loan data in time or scope, but remain unwilling to commit to fully respond to the County's production requests.

II. **DEFENDANTS' VARIOUS COUNTERPROPOSALS, WHICH WILL DELAY AND UNFAIRLY LIMIT DISCOVERY, SHOULD BE REJECTED.**

Defendants' various counterproposals are highly inefficient and would make it impossible for the parties to complete fact discovery by the current deadline. To

5

start, defendants are proposing to produce only certain loan data and to do so over a period of 90 days. The County will then need to identify all the discriminatory loans and underlying properties at issue, and begin sourcing County records associated with those specific addresses, which can take up to 30-60 days to obtain. The County's counsel has been advised that running a single search for a complete list of properties will be more efficient than running multiple searches of multiple lists of properties. Even if defendants complete production of their loan level information by August 11, 2016 (best case scenario), the County would need 30-60 days thereafter to complete the search for and production of relevant information associated with those particular properties. Thus, production of the most crucial information in the case, and resulting damages, would not be complete until mid-October at best. It would be impossible to complete any remaining written discovery and fact-witness depositions within the approximately three months that would remain.

More troubling, defendants appear to be trying to arbitrarily limit the scope of the loan-level origination and servicing data to be produced. Defendants have demanded that the County identify the data fields it wants, while simultaneously failing to produce documents reflecting the full list of fields and descriptors that the County requested. Thus, defendants are insisting that the County narrow its request, without revealing the scope of data available, thereby precluding any intelligent narrowing of the data sought. The County attempted to avoid this gamesmanship by its requests #1-3, which seek documents sufficient to understand

6

the data fields that defendants utilize, the data points defendants' record and maintain, and the databases where such data is stored. Yet, defendants have not even complied with these preliminary requests. Besides, the County's request #4 spelled out the categories of loan level data it sought, and the field descriptors relating to such data:

> For each 1-4 family residential mortgage loan… made to a borrower residing in Cook County that was originated, funded, purchased, and/or serviced by HSBC … produce in csv (comma separated value) format and <u>with data field descriptors … including</u> loan application information, loan origination terms and pricing, loan underwriting criteria and actions, loan performance and profitability, loan servicing and default servicing data, foreclosure information, loan refinance or modification information, Loan Application Register ("LAR") data, loan servicing transfer information, unique loan identification numbers, MERS number (if applicable), property addresses and borrower names.

(emphasis added).

Presumably in response to the Court's comments during the status hearing, defendants responded with a proposal on May 3, 2016, with 27 field descriptors. During a telephonic meet-and-confer that day, defendants represented that they chose the data fields based on what they argue the County needs to prove its case, not on the categories of data that the County identified in request #4. Not surprisingly, defendants' chosen fields are too narrow in their scope and would stymie or eliminate the County's ability to adequately determine and examine: (1) the full number of discriminatory loans at issue; (2) the specific harmful components and features of such loans; (3) defendants' specific discriminatory loan level actions resulting in the creation of such loans (e.g., through marketing data points, loan pricing and feature data points, broker compensation data points, and

7

underwriting data points); (4) the identification of the party-defendants directly and indirectly responsible for such loans; and (5) defendants' specific discriminatory loan level servicing and foreclosure actions resulting in property vacancies and foreclosures that damaged the County (e.g., through default activity data points, default servicing fee data points, loan modification/refinance application and denial or processing delay data points, foreclosure decision factor data points, property valuation factor data points, and strategic loan servicing transfer data points). The information necessary to advance this litigation, which is encompassed within the County's four requests for production, but not within defendants' proposal, includes minimally the following:

- Marketing information, such as loan application referral source, whether internal or external, by direct mail, website or call center;

- Broker and correspondent lender identification information;

- Loan pricing and rate information including origination points and fees charged, closing costs charged, the APR, defendants' cost of borrowing or the base rate, the note rate for fixed loans, the APR, and the various components of any ARM rate including the index rate, initial rate or teaser rate and each adjusted rate during servicing (including the adjustment range);

- Defendants' margin on originated and purchased loans;

- Broker and employee loan origination compensation information including yield spread premium and other incentive compensation relating to the loan price, product category, terms or features;

- Loan features such as a prepayment penalty or credit life insurance;

- Underwriting information including objective borrower credit criteria, the date and results of the initial decision by any automated underwriting system (such as Desktop Underwriter);

- Information relating to underwriting overrides of initial loan denials, including the reasons or factors supporting such underwriting denial overrides;

- Loan pricing or product category adjustments relating to any underwriting denial overrides;

- Information relating to loan servicing including borrower payment history and all fees and charges applied, including default or foreclosure related fees, along with the dates of such fees, the amount charged, and the description of the fee or charge;

- The applicable fixed or ARM interest rate at the time of default and any penalty default interest rate applied, along with the applicable dates of such increased interest rate changes;

- All information relating to borrower requested loan modifications and refinancing, as well as loan modifications under the HARP and HAMP programs, including information relating to the date and time of the borrower's initial modification or refinance request, the date of the application, the date of each action taken by defendants relating to such refinance or modification request, the final disposition of any such request, information relating to the reasons for denial of any such request;

- Information relating to the timing between borrower default and the initiation of foreclosure actions;

- Information relating to the reasons for initiation of the foreclosure, including any loss mitigation or property valuation information; and

- Information relating to the transfer of loans to other loan servicers including the date of such transfer and the identity of the transferee servicer, along with the reasons relating to such transfer.

\* \* \* \*

The County's four requests to produce are proper, and full compliance with them should be ordered. This data extraction is not a burdensome or expensive task; it simply requires defendants to collect and copy the data. Defendants' counterproposal to cherry-pick data fields and then produce that data over an extended time period on a piecemeal basis will unnecessarily delay and complicate the discovery process, and unfairly hamper the County's ability to litigate the merits.

## CONCLUSION

This Court should grant this motion and compel defendants to comply fully with the County's requests for production within 30 days.

    Respectfully submitted,

    **ANITA ALVAREZ,**
    **STATE'S ATTORNEY OF COOK**
    **COUNTY**

By:   /s/ John K. Kennedy
    **JAMES D. MONTGOMERY, SR.**
    **JOHN K. KENNEDY**
    **DANIEL A. DAILEY**
    JAMES D. MONTGOMERY & ASSOCIATES, LTD.
    One North LaSalle Street, Suite 2450
    Chicago, IL 60602
    (312) 977-0200

    **JAMES M. EVANGELISTA** (pro hac vice)
    **JEFFREY R. HARRIS** (pro hac vice)
    **DARREN W. PENN** (pro hac vice)
    **DAVID J. WORLEY** (pro hac vice)
    HARRIS PENN LOWRY LLP
    400 Colony Square, Suite 900
    1201 Peachtree Street, NE
    Atlanta, GA 30361
    (404) 961-7650
    Special Assistant States Attorneys.

## CERTIFICATE OF SERVICE

      I hereby certify that on the 4th day of May, 2016, I electronically filed the foregoing motion with the Clerk of Court of the United States District Court for the Northern District of Illinois by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

      /s/ John K. Kennedy, Attorney
      John K. Kennedy, Attorney