<pre>
1                  IN THE UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF ILLINOIS
2                          EASTERN DIVISION

3    COUNTY OF COOK,                )  Docket No. 14 C 2031
                                    )
4                    Plaintiff,     )
                                    )
5          v.                       )  Chicago, Illinois
                                    )  May 18, 2016
6    HSBC NORTH AMERICA HOLDINGS,   )  2:00 o'clock p.m.
     INC., et al.,                  )
7                                   )
                     Defendants.    )
8
                  TRANSCRIPT OF PROCEEDINGS - MOTION
9                 BEFORE THE HONORABLE JOHN Z. LEE

10   APPEARANCES:

11   For the Plaintiff:          JAMES D. MONTGOMERY &
                                 ASSOCIATES, LTD, by
12                               MR. DANIEL A. DAILEY
                                 One North LaSalle Street
13                               Suite 2450
                                 Chicago, Illinois 60602
14
     For the Defendants:         BUCKLEY SANDLER LLP, by
15                               MR. ANDREW L. SANDLER
                                 MS. VALERIE L. HLETKO
16                               MR. MARK E. ROONEY
                                 1250 24th Street NW
17                               Suite 700
                                 Washington, DC 20037
18
                                 MANATT PHELPS & PHILLIPS, LLP, by
19                               MR. BRETT J. NATARELLI
                                 115 South LaSalle Street
20                               Suite 2600
                                 Chicago, Illinois 60603
21

22                    ALEXANDRA ROTH, CSR, RPR
                       Official Court Reporter
23                    219 South Dearborn Street
                             Room 1224
24                    Chicago, Illinois 60604
                          (312) 408-5038
25
</pre>

1     (Proceedings had in open court:)

2          THE CLERK:  14 C 2031, County of Cook versus HSBC

3   North America Holdings.

4          THE COURT:  Please step up, counsel.

5          Who's arguing on behalf of the defendants?

6          MR. SANDLER:  Andrew Sandler, your Honor.

7          THE COURT:  Please step up.

8          MR. DAILEY:  Good morning, your Honor.  Daniel Dailey

9   on behalf of Cook County.

10         THE COURT:  Good morning.

11         This is a hearing on plaintiff's motion to compel

12   production of documents, really information related to the

13   various loans at issue in this case.

14         I see that the defendants in their response attached

15   an Exhibit A that lists 73 data parameters that they have

16   agreed they will produce as part of their document production

17   in this case.  Counsel, have you had an opportunity to review

18   that list?

19         MR. DAILEY:  Yes, sir.

20         THE COURT:  Okay.  And let me ask you this:  Is that

21   list -- would that list sufficiently address the information

22   that you are seeking from the defendants?

23         MR. DAILEY:  No, sir, it would not.

24         THE COURT:  Why is that?

25         MR. DAILEY:  So that list encompasses some of the

3

1    categories stated in RFP 4.  Specifically it addresses the

2    issues regarding -- when I say, it, the list addresses fields

3    that are associated with the terms of the loans and the

4    characteristics of who were issued those loans.

5            However, if you look at RFP 4, it clearly spells out

6    that we are also looking for pricing.  We are looking for some

7    of the underwriting features.  It spells out the categories of

8    information, which you will not find listed in that list of 27

9    fields.

10           Most importantly, the last hearing defendants actually

11   knew and presented the declaration from our expert that was

12   filed in another case, which evidenced some of these broker

13   fields, some of these pricing fields, some of these

14   compensation fields, which are absolutely critical to the

15   entire nature of why these predatory loans when they are

16   identified were given to borrowers that were of minority

17   majority.

18           THE COURT:  So when you talk about fields regarding

19   loan pricing, what do you mean?

20           MR. DAILEY:  So we're talking about part of the

21   compensation factors that went into a specific loan.  For

22   example, a loan officer would get several additional points if

23   he provided a borrower with an ARM loan with a higher interest

24   rate.  Those fields will be captured in what defendants'

25   database would be that's originating or holding this

1    information.

2          If that information wasn't captured, and we believe it

3    is captured, we would know that because RFP 1 and 2 would have

4    sufficiently described what fields were being captured.  And so

5    we would have probably termed what we were looking for in --

6    when coming -- when dealing with the compensation fields for a

7    specific loan, however the defendants are termed or however

8    it's identified in their database.

9          THE COURT:  Okay.  Let me hear from the defendants.

10          MR. SANDLER:  Yes.  Your Honor, so on April 27, the

11    last hearing of the parties before you, what you told the

12    defendants, because you were somewhat frustrated by having to

13    deal with the data, and rightly so in this way:  Defendants,

14    give them what they need.

15          And so what we did is, on May 3 we provided them that

16    list of 73 data points, which, your Honor, I am representing to

17    you was our good-faith belief that that was what they needed,

18    understanding that they might choose to come back and ask for

19    more.  But what they said to us was, this is insufficient.

20    Give us everything.

21          Well, you know, there are -- there are 12 systems,

22    some active, some inactive.  We said, tell us what you think

23    you're missing.  And for the first time on May 4, a few hours

24    before they filed the motion to compel, they for the first time

25    say, okay, here are the other categories we need.

1      And within one half hour of getting that letter from

2   them -- and this is Exhibit B to the opposition -- we sent an

3   e-mail back saying, and I am quoting:  We received your letter

4   which identifies for the first time specific types of data the

5   county is requesting.  We will research availability and look

6   forward to continuing to meet and confer on these and other

7   issues.

8      It was absolutely our expectation that they -- we --

9   in good faith we picked the 73.  Counsel suggesting one or two

10  or three areas where maybe they would want more.  That's -- the

11  rules of procedure set forth a process for dealing with that.

12     And for them to say, we want everything, and we are

13  not going to discuss anything but everything, and then as their

14  motion to compel is getting ready to go out the door for the

15  first time say, oh, these are the categories, and then to file

16  that motion to compel when we immediately respond?  Okay, let's

17  talk about these.

18     Now, just to give you a sense of why this is a little

19  bit complicated.  We went back and looked at what all the data

20  was when they filed the motion to compel, seeking all of the

21  data, which is what your Honor very clearly told them they

22  needed to figure out and they wanted us to start with what they

23  needed.  There are 17,466 data points which technically would

24  be called for by their motion to compel.  Twelve -- these come

25  from 12 origination and servicing systems, seven of which are

1    active, five of which are inactive, because three of the six

2    lending entities no longer exist.

3            So we want them to have the data that they need to be

4    able to try to prove the case that we don't think they will be

5    able to prove.  But it's got to be reasonable.  We, per your

6    Honor's order, produced the 73 fields we thought were the right

7    fields.

8            And now the question is, we think this motion to

9    compel was plainly improper, given the state of the record on

10   the discussions between the parties.  We asked that the motion

11   to compel be denied.  And we also, your Honor -- I am hopeful

12   that we don't have to keep appearing before you on issues like

13   this.  We're prepared to talk to them about the other fields.

14   Our experience and the experience of other counsel has been

15   it's very difficult to do that.  In fact, in the B of A case

16   that's currently going on, Magistrate Judge Rowland in that

17   case has spent days and days going over with the same

18   plaintiff's counsel in their case against Bank of America what

19   data should and should not be produced.

20           We're happy to sit down and talk to them and try to

21   work things out.  Respectfully we submit that perhaps the best

22   course of action is to either ask, you know, Judge Rowland or

23   Judge Finnegan or whoever is appropriate as the Magistrate

24   Judge to perhaps work with the parties to try to work it out,

25   because I have been litigating these mortgage cases for couple

1  of decades.  Have never had so much trouble just getting to

2  here is -- you know, let's figure out what you need.  Let us

3  get you what you need so you can go try to prove your case.

4         So anyway, your Honor, that's the situation.  And, you

5  know, we -- motions to compel in circumstances like this are

6  just plainly improper, inconsistent with the rules, and

7  respectfully should not be countenanced.

8         THE COURT:  Do you have a copy of the letter that was

9  sent just prior to the filing of the motion to compel?

10        MR. SANDLER:  Yes.  It was an e-mail, your Honor.  And

11 I essentially read -- it's exhibit -- I don't know if you have

12 the opposition.  May I approach?

13        THE COURT:  I do.  I have a copy of it.

14        MR. SANDLER:  Okay.  So if you looks at Exhibit B,

15 it's that simple one-sentence e-mail which you can see at four

16 oh -- you can see both.  You can see the letter they sent us at

17 3:26.

18        THE COURT:  Right.  I don't have a copy of the letter,

19 though.

20        MR. SANDLER:  Yes, just the e-mail.  I'm sorry, your

21 Honor.  So the letter was their letter to us.  And the only

22 really relevant -- asking for the categories of information.

23 That was sent at 3:24.  You see in the bottom part of the page.

24 And my partner, Ms. Hletko, responded at 4:01 with what's on

25 the top.

1    THE COURT:  No.  I understand.  I want a copy of the

2    letter.

3    MR. SANDLER:  Oh.  We can give you a copy of that

4    letter.  May I approach?

5    THE COURT:  You may.

6    MR. SANDLER:  And, if it would be helpful to your

7    Honor, I have the letter we sent the day before that included

8    those 73 fields.

9    THE COURT:  I think I have those.

10   MR. SANDLER:  Okay.

11   (Brief pause.)

12   THE COURT:  All right.  So you sent them this letter

13   after the meet and confer, which took place on May 3.

14   MR. DAILEY:  The day before the filing, the motion to

15   compel, was due.

16   THE COURT:  And that's really not my fault.

17   So then you sent them this letter identifying the

18   areas that you thought that you needed.  And did you expect

19   that they would be able to get back to you within 24 hours on

20   all the information that you're seeking?

21   MR. DAILEY:  No, sir.  To be clear, that -- the May 3

22   was the first time we received any fields from them.

23   THE COURT:  So the 72 fields.

24   MR. DAILEY:  Right.  So we didn't have anything to go

25   on until May 3.  And there wasn't enough time, No. 1, and we

1    mentioned that, said that, during the meet and confer process.

2         But what's most -- what's most disturbing about this

3    entire matter is, if you look at the county's exhibit, I want

4    to say the letter from defendants to us, after -- on April 26,

5    the day before our status.  We had a huge issue with what

6    servicing data was.  And we came into court.  And all of a

7    sudden defendants were able to -- to explain what we were

8    talking about that they knew.

9         And as a result, the county automatically had to

10   understand the defendants were playing a game, what looked --

11   what appeared to be, excuse me, a game of, well, you got to

12   tell us what you want, and then we'll go back and get it, when

13   we actually asked for in RFP 1 sufficient documents to identify

14   all of these fields.

15        The day before the motion to compel is due is not

16   enough time.  Nor --

17        THE COURT:  I get it, counsel.

18        So how are you able -- you meaning defendants.  How

19   are you able to determine what the fields are that are

20   available within all of the databases that you discussed?

21        MR. SANDLER:  What we have to do is go back and do a

22   series of searches.  You know, it's easier on the active

23   systems, maybe more difficult on the inactive systems.  And

24   come up with an aggregate list of the data fields.  Now, my

25   colleagues were able to -- because we're confronted with a

10

1    motion to compel that says, give us all the data, I have to

2    go -- I have to be able to tell the Judge how many data points

3    there are.  And they were able to get -- they were able to

4    figure out that there are over 17,000 data points.

5         THE COURT:  Hold on for a second.  So that 17,000 data

6    points, do you mean data fields like categories of data?  Or

7    does that mean just actual pieces of data?

8         MR. SANDLER:  No, no.  That's different categories --

9    different elements of data.  So in other words, we produced

10   70 -- when we say we're going to produce 73 fields -- and we've

11   already, by the way, produced a lot of it.  You know, each

12   field -- some fields could be hundreds and hundreds of pages.

13   Some fields will be a very small amount of data.  But it's

14   not -- we're not saying there are 17,000 pieces of data.  We're

15   saying there are 17,000 fields of data.

16        And just an observation on -- so your Honor said,

17   well, look, if you guys are unable to work things out and you

18   need to file a motion to compel, do that.  Well, we're not

19   completely satisfied that we have worked things out in terms of

20   our demands.  But when they came back to us after the meet and

21   confer and said, we're willing to continue to talk to you about

22   some of your needs, and we're willing to compromise some.  Do

23   we really trust that?  Probably not.

24        But as officers of the court, we were -- we were

25   required to follow the rules.  And the rules say, until and --

1    unless and until there is a clear impasse, it is not
2    appropriate to file a motion to compel.

3           Do we think at some point we may have to come back to
4    your Honor with a motion to compel?  Yes.  But we did not read
5    your Honor as saying, thou shall file motions to compel on
6    May 4, unless you have worked everything out.  We read your
7    order as saying, to the extent that the issues that we
8    discussed on April 27 you are not making progress towards a
9    resolution and you're at impasse, then to keep this case moving
10   I expect the parties to come back with a motion to compel.

11          If you look at the correspondence and the
12   communications, that was not appropriate to file a motion to
13   compel under these circumstances.

14          THE COURT:  All right.  So let's get beyond the
15   procedural issue, for the moment.

16          MR. SANDLER:  Sure.

17          THE COURT:  So you have the 17,000 data parameters,
18   let's call for lack of a better word.  And so how do you know?
19   Does a particular system -- this will be probably hopefully too
20   much.  Does each system come with, say, an index of the fields,
21   the field names, and what is to be captured in that field?

22          MR. SANDLER:  So the systems vary greatly.  And I
23   think your Honor, having done mortgage litigation yourself as
24   you pointed out on April 27, probably has a pretty good sense
25   of that.

1   There are some systems, more recent systems, that are
2   pretty good in terms of establishing indexing.  There are other
3   systems that are not.  When you have three entities that no
4   longer exist, Decision One, Beneficial, Household Finance, and
5   over time those systems get closed down.  To try to start them
6   up again is very difficult, sometimes impossible.  But we're
7   not saying impossible because we're not telling you that we've
8   gone and done the forensics and hired consultants and tried to
9   do it.  So there is great variability.
10  But what we really tried to do here is say, here are
11  the seven -- here is the -- we know what you need to do to
12  prove a discrimination case.  Here are the 73 fields that we
13  think get you there.  Interestingly, when they came back with
14  their categories, much of what they asked for saying, this
15  isn't enough; we need more, are already covered by those 73
16  fields.
17  But I'm certainly not here saying, they are only
18  entitled to what we think they are entitled to.  But what we
19  said, and I think was reasonable, look, study this information,
20  not in 24 hours.  Study it.  Have conversations with us about
21  it.  If there are categories of information that you really
22  think you need that aren't covered in these fields, we are
23  willing to talk about that.  And unless we think you are being
24  unreasonable, we'll go back, figure out what these fields are,
25  and we'll get them to you.  And I just don't know any other way

1    to reasonably do this.

2          Now, unfortunately in the Bank of America case, the

3    Court threw up their -- it was impossible to do that with this

4    group of plaintiffs' counsel.  And the Magistrate, as I think I

5    understand happened, they would know better than me, has spent

6    days going field by field, hearing argument about why it should

7    be included or why it should not be included.

8          I would hope we don't have to get there here.  And

9    we're open to that conversation.  We have one simple question

10   for the plaintiff's counsel:  Look at the 73 data fields.  To

11   the extent you think there is not information you need, let us

12   try to explain to you why we think it's within the 73 fields.

13   And if we -- if it's not in the 73 fields, let us describe to

14   you, you know, what it is that we could give you that we think

15   will satisfy those concerns.  Don't think that's an

16   unreasonable approach.

17         THE COURT:  With regard to the systems that are

18   active --

19         MR. SANDLER:  Yes.

20         THE COURT:  -- the more recent systems, are there

21   documents that would set forth the various data fields along

22   with a description of what information is supposed to be

23   captured within those fields?

24         MR. SANDLER:  What your Honor is asking, is there some

25   kind of real index, here is what's included in this database.

1    And the answer to your question is, there are indices of that

2    nature.  I won't make a representation of how good or bad they

3    are.  But does that kind of thing exist?  Yes.  Is that the

4    kind of thing for the active systems we could get our hands on

5    pretty quickly, hand to the plaintiffs so that they can go

6    through it and say, hey, we really like, you know, these ten,

7    12, 15 additional fields?  Yes, we certainly could do that.

8         Candidly, I expect that that was going to be our next

9    conversation when we got slapped with a motion to compel to

10   provide all data, something that your Honor had been very clear

11   on April 27 was -- agreeing with us, was just infeasible and

12   not reasonable -- infeasible and not reasonable.

13        But certainly we could pull together on the active

14   systems whatever indices there -- there are.  We can make those

15   available to them.  To the extent they need explanation to be a

16   little more user friendly, we would not intend to hide the

17   ball.  We try to help them understand it.

18        MR. DAILEY:  This is appalling.  Request No. 1 asked

19   for that specific document.  And now they come before this

20   Court and say to this Court, that is relatively easy to get my

21   hands on.

22        Not one time in these letters did they offer, hey, we

23   will give you the indices of the active fields.  Instead they

24   say, quote -- unquote, excuse me, this is not a game let's see

25   whether or not we want -- we can tell you what we think is

1    best.  That's ridiculous.

2           If you have the indices, why wasn't that presented to

3    us if it's relatively easy to get your hands on?  And --

4           THE COURT:  I will give you a chance to respond.  Go

5    ahead.

6           MR. DAILEY:  And, your Honor, putting aside any other

7    case, because this case is before this Court.  We asked for

8    specific categories.  This isn't new.  Just because some of the

9    data points that they presented on May 3 are included in this

10   topical list doesn't mean that they all were.  And that's why

11   we had to file a motion to compel because we believe the Court

12   asked us to file the motion to compel.

13          THE COURT:  All right.  No, I understand.

14          So what about plaintiff's argument that those

15   documents would fall within the scope of request No. 1 and

16   should have been produced a while back?

17          MR. SANDLER:  So request No. 1 requests documents.

18   These are materials that have to be created.  So they are not

19   -- you know, they are not documents.

20          THE COURT:  So you don't have -- as you stand here

21   today, what you are saying is that your client, they do not

22   have free-standing -- like a free-standing manual or index or

23   some document that would set forth the various fields in a

24   tablet format or some sort of format.

25          MR. SANDLER:  Your Honor, that is my understanding.

1    But in order to make sure I am being accurate with the Court,

2    may I ask if any of my colleagues know that to be inaccurate?

3              MS. HLETKO:  That is correct.  We could create --

4              THE COURT:  Do you want to state your -- why don't you

5    step up.  State your name for the record.

6              MS. HLETKO:  Sorry, your Honor.  Valerie Hletko for

7    defendants.

8              THE COURT:  What is your last name?

9              MS. HLETKO:  Hletko, H-l-e-t-k-o.

10             That is correct.  We could compile and create that

11   information.  But the request was for documents.  And first of

12   all, I want to be clear to -- Mr. Dailey is not correct that we

13   refused to provide anything.  We said that we would search and

14   produce document.

15             THE COURT:  Just you have to respond to my question.

16             MS. HLETKO:  Yes, sir.  It is -- we can create that

17   information.  We can compile it.  But it is -- there is no

18   free-standing, to use your Honor's word, document that we can

19   pull and produce.  But we can create it.

20             MR. SANDLER:  So I am now more confident that my

21   representation was accurate, your Honor.

22             THE COURT:  Okay.  Did plaintiffs provide sort of an

23   interrogatory request asking them to describe all the fields?

24             MR. DAILEY:  No, sir.  We only serve RFPs to be

25   specific.  We wanted to make sure before we went any further in

1    this discovery, we kept it extremely simple because we saw what

2    defendants in another case let get out of hand.  We wanted it

3    to be strictly, give us the -- give us the documents to show

4    what fields you have.  We know what fields we need.  We have

5    categories in here that we described.  And we'll choose it.

6    We'll let you know.

7                 THE COURT:  Ms. Hletko is it?

8                 MS. HLETKO:  Yes, your Honor.

9                 THE COURT:  Step up and remain standing.

10                So it seems like you have been kind of to some extent

11   the person that's been assisting in kind of spearheading this

12   document retrieval process.

13                MS. HLETKO:  I have, your Honor.

14                THE COURT:  So let me ask you this:  With regard to

15   the -- I understand there might be some difficulties with

16   regard to let's call the inactive legacy programs.  But with

17   regard to the seven active programs, how long would it take you

18   to -- you meaning the capital You, you and people assisting

19   you -- to come up with a list of the fields?  And the seven

20   active, are they all currently active?

21                MS. HLETKO:  They are.

22                THE COURT:  Along with a short description of what

23   that field would have, much like the list that you gave that is

24   attached to your opposition?

25                MS. HLETKO:  Your Honor, I am reasonably confident

1   that we could create and produce a list like that by the end of

2   next week.

3          THE COURT:  Okay.  That's fairly soon.  That's much

4   more ambitious than I had anticipated.  So your folks are

5   working really hard, I take it.

6          Let's do this.  I think that that list would go a long

7   way to furthering these discussions.  Because I understand

8   plaintiff's hesitancy to basically in the face of rather just

9   monolithic industry to kind of say, okay, well, this is kind of

10  what I need, why don't you go and let me know what you might

11  have that fits into this.

12         I think that that is certainly a possible avenue and

13  something that should be still explored.  But I can understand

14  how they might also want the safety net of trying to see what

15  the parameters are.

16         And I guess to plaintiffs, my supposition is that

17  those fields will be much like whatever other fields would be

18  available in the inactive systems, since they all pretty much

19  try to capture the same type of information.

20         MR. DAILEY:  Okay.

21         THE COURT:  Okay?  And, you know, with regard to the

22  motion that was filed, you know, frankly, with regard to --

23  basically I understand how plaintiff may have thought, you

24  know, we should file it no matter where we are in these

25  discussions because that is the deadline I set.  And I can see

1    defendants' standpoint of, well, we're supposed to continue
2    discussions.

3          I hope actually that the parties would have made a bit
4    more progress as May 4 approached than they had.  But in any
5    event, so perhaps that's my nice way of saying, a pox on both
6    your houses with regard to that issue.  Okay?

7          But be that as it may, to get this issue moving
8    forward, what I would like defendants to do is, I would like
9    defendants to provide such a list of the parameters for the
10   seven active systems for now.  Okay?  And by the way, if there
11   are particular -- let me ask you this:  Are there particular
12   systems that are easier to access amongst the seven as opposed
13   to not?  Or are they all, since they are all pretty much active
14   now --

15         MS. HLETKO:  There is one that is -- now I am going to
16   look at my colleague.  There is one that is the most easy to
17   access.  That's sort of the --

18         THE COURT:  Why don't you go ahead and step up.  Put
19   your name on the record.

20         MR. SANDLER:  Apologies, your Honor.  But we're
21   really -- we're trying to get our hands around a very
22   complicated situation.  And we brought all the resources into
23   the courtroom so we can answer any question.

24         THE COURT:  No, I am absolutely glad you did, and no
25   apologies necessary.  And as a general matter, you know, if you

1    have done -- we are also trying to find different ways of

2    encouraging, shall we say, not in any pejorative, more junior

3    attorneys to have an opportunity to step up and address the

4    Court, any questions that the Court may have, with regard to

5    areas that they are particularly engaged with.

6           So you want to state your name for the record?

7           MR. ROONEY:  Sure, Mark Rooney for the HSBC

8    defendants.

9           THE COURT:  All right.  So you want to do follow-up on

10   my question with regard to whether or not there are particular

11   active systems that are more difficult than others?

12          MR. ROONEY:  Right.  I think they're all, your Honor,

13   fairly equally accessible.  And I think, as my co-counsel

14   mentioned, they are reasonably gettable within that timeframe.

15   I will mention that three of the systems are controlled by a

16   subservicer.  These are systems that relate to the mortgage

17   servicing data governing loans that are serviced by some of the

18   defendants.  Those may be a little bit harder to get.  But

19   we've understood from our client so far that they have fairly

20   easy access to them.

21          But because we have not actually gone through the

22   process of trying to obtain those lists from those sub-

23   servicers, I anticipate that might be where we may find a

24   hiccup.  But otherwise, other than those three, I think they

25   should be pretty straightforward.

```
 1              THE COURT:  Okay.  That's useful.  Thank you.

 2              So what I want is, with regard to the -- putting the

 3    subserver system to the side.  I'll give you a little bit more

 4    time for that.  But with regard to the other active systems, I

 5    want that list provided to plaintiff's counsel by next Friday,

 6    May 27.  Okay?  With regard to the other systems, I will give

 7    you seven additional days, so by June 3.  Okay?  You can

 8    provide that list.

 9              In the meantime, as soon as, counsel, you get the

10    first list, you should start looking at them.  Go ahead and

11    start continuing to meet and confer.  If you need particular

12    descriptions or what have you, talk to them about it.  And

13    we'll see where we are.

14              If we have to, we will sit down and go through all of

15    the fields one by one.  I trust that that won't be necessary.

16    Because at this point I foresee myself doing that.  Okay?  But

17    with regard to -- so why don't you go ahead and do that.  I

18    will give the parties some time to have that discussion.

19              With regard to the motion, I am going to deny the

20    motion with leave to refile.  So let's go ahead and set this

21    case for further status.

22              Let's set this case for status the last week in June.

23    Carmen, give me a date.

24              THE CLERK:  June 28 at 9:00 o'clock.

25              THE COURT:  Actually, let's set it for some time where
```

1    I can have a bit more time.

2              THE CLERK:  June 28 at 11:00 o'clock?

3              THE COURT:  Now, counsel, are you all from out of

4    town?

5              MR. SANDLER:  We are, your Honor.  We are Washington,

6    D.C.  So to the extent that the Court is comfortable with any

7    of these discovery issues being addressed by telephone, we much

8    appreciate it.  To the extent you need us here, we will be

9    here.

10             THE COURT:  Okay.  I think telephone is fine.  I

11   would, however, like whatever team has been working on these

12   issues together in that call.  Okay?  So that you don't have to

13   go out and follow up with other people.

14             MR. SANDLER:  And our colleague, Mr. Natarelli, is

15   here in Chicago.  So he can be in the courtroom.  And if I may,

16   I will assemble the rest of the team on the telephone.

17             THE COURT:  That will be fine.  And we will see if

18   that works.  Generally it works fine.  And if not, then I will

19   just ask you to appear.  But typically we can do things by

20   telephone conference.

21             So does everyone know where we are at this point, what

22   they need to do?

23             MR. DAILEY:  Yes.

24             MS. HLETKO:  Yes, your Honor.

25             THE COURT:  All right.  And with regard to the data in

1    the loan information, okay, as you go through it, make sure you

2    have a sufficient understanding so you can make the calls on

3    which ones you think are relevant, which ones aren't relevant.

4    All right?

5           Furthermore, with regard to future motions to compel,

6    I am going to award costs against the losing side with regard

7    to motions to compel, attorneys' fees and costs.  So keep that

8    in mind.  To the extent it's reasonable.  If it's some issues

9    and others, then I will have to make that determination going

10   forward.

11          MR. SANDLER:  Much appreciated, your Honor.

12          MR. DAILEY:  Thank you.

13          THE COURT:  Very good.  Thank you.

14          MR. ROONEY:  Thank you.

15          MS. HLETKO:  Thank you, your Honor.

16          THE COURT:  One last thing, counsel.  To the extent

17   you are comfortable, I leave it completely up to you, but to

18   the extent you are comfortable, the more you will allow the

19   more junior members of your team to participate in these calls

20   and what have you, I think it's really better for the

21   profession as a whole.

22          MR. SANDLER:  I so appreciate that invitation, your

23   Honor, because I share that view with you.

24          THE COURT:  And I understand that, you know, you have

25   your clients to deal with, and you have those considerations.

1   So I am not going to blame you or think less of you if you

2   don't.  But you might want to tell your client that that's

3   something the Judge has encouraged.

4           MR. SANDLER:  I appreciate the opportunity to do that

5   as I do have my 10,000 hours in, your Honor.  And it's time for

6   others to get that opportunity.

7           THE COURT:  Very good.

8           MR. DAILEY:  Just to make sure I am clear, you said,

9   going forward.  This was denied.  But this won't be assessed

10  cost.  Going forward if there is a motion to --

11          THE COURT:  Yes.  Thank you.

12          MS. HLETKO:  Thank you very much, your Honor.

13      (Which were all the proceedings had at the hearing of the

14       within cause on the day and date hereof.)

15                          CERTIFICATE

16          I HEREBY CERTIFY that the foregoing is a true, correct

17  and complete transcript of the proceedings had at the hearing

18  of the aforementioned cause on the day and date hereof.

19

20  /s/Alexandra Roth                        7/21/2016
    _____      _____
21  Official Court Reporter                    Date
    U.S. District Court
22  Northern District of Illinois
    Eastern Division
23

24

25